FILED

UNITED STATES DISTRICT COURT    2003 NOV 12  P 5: 40

DISTRICT OF CONNECTICUT    US DISTRICT COURT
BRIDGEPORT CT

|  |  | PRISONER |
|---|---|---|
| RAMON LOPEZ | : | CIVIL NO. 3:02CV1020 (RNC)(DFM) |
| v. | : | |
| JAMES SMILEY, ET AL. | : | NOVEMBER /0 , 2003 |

## DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFF'S MEMORANDUM RE: RULING AND ORDER DATED OCTOBER 27, 2003

By pleading dated October 27, 2003, and titled "Plaintiff Memorandum Re: Ruling and Order", the plaintiff pro se inmate in the above case asks the court to change its ruling in part. Plaintiff contends that the court erred in dismissing the claims against the defendant Young, and in dismissing his claims regarding the Disciplinary Report (DR) of September 5, 2001, for failure to exhaust his prison appellate remedy. His effort should be denied.

First, considering this effort to be a Motion for Reconsideration, it is too late. Such motions must be filed within 10 days of the filing of the order. Rule 7(c), Local Rules of the United States District Court. The order in this case was filed on September 22, 2003. See Ruling, Docket No. 39, Court file, copy attached in Attachment A. Plaintiff's Brief is dated October 27, 2003.

Moreover, the challenges lack merit. They are discussed seriatim:

## Defendant Young

With regard to the defendant Young, plaintiff alleged that Officer Young made a false statement in his report of September 5, 2001, to cover up the incident where plaintiff received a DR for spitting on the defendant Smiley. Amended Complaint, para. 58. Plaintiff complains

that the court erred in dismissing this claim because Young was personally involved. Plaintiff's Brief, p. 2. The court did not dismiss the case against Young for lack of personal participation. It dismissed it because plaintiff failed to exhaust administrative remedies. See Ruling, p. 6.

Also, plaintiff's claims lack merit. The defendant Young reported that he heard the defendant Smiley state that the plaintiff spat on him. See Young Statement, attached to Plaintiff's Brief, Exhibit A. The plaintiff admitted that he spat on the Smiley. Amended Complaint, para. 50. There is no false statement or cover up.

**Failure to Exhaust**

Plaintiff also asks the court to reconsider its decision dismissing complaints about the September 5, 2001, DR for failure to exhaust the appellate remedy available under DOC Administrative Directive 9.5, Sec. 40. Ruling, p. 6. See Directive attached in Attachment B. Plaintiff contends that he did appeal the DR and attaches a letter in Exhibit B of his Brief as proof thereof. The offer does not show an appeal of the subject DR. To the contrary, records of the Department of Correction show he did not appeal the subject DR. See Record, Attachment C.

Plaintiff also supplies a variety of papers in Exhibit C of his brief, purportedly filed with the DOC in 2003, to satisfy any exhaustion requirement. These do not satisfy the requirement. Grievances must be filed within 30 days of the event. DOC Directive 9.6, Sec. 10(G), Attachment D. Where a plaintiff fails to exhaust an administrative remedy while it is available, the case should be dismissed with prejudice. Berry v. Kerik, 345 F.3d 126 (2nd Cir. 2003). Also, this lawsuit was docketed in 2002. See Court file. Plaintiff's papers are dated 2003. Plaintiff

must exhaust administrative remedies before he files suit, not after.  Hosendove v. Myers, 2003

U.S. Dist. LEXIS 16683 (D. Conn. 2003).

For all of the above stated reasons, we urge the court to deny plaintiff's effort.

DEFENDANTS
James Smiley, et al.


RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Robert F. Vacchelli
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Federal Bar #ct05222
E-Mail:  robert.vacchelli@po.state.ct.us
Tel: (860) 808-5450
Fax: (860) 808-5591


**CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 10ᵗʰ day

of November 2003:

Ramon Lopez #261685
Northern Correctional Institution
P.O. Box 665
Somers, CT  06071


_____
Robert F. Vacchelli
Assistant Attorney General

3

# ATTACHMENT A

39

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

03 GCP 22 P 3 41

RAMON LOPEZ,                          :

        Plaintiff,                    :

                                      :            PRISONER
        v.                            :    CASE NO. 3:02CV1020 (RNC)
                                      :
JAMES SMILEY, ET AL.[1]               :
                                      :
        Defendants.                   :


                    RULING AND ORDER

    Plaintiff Ramon Lopez ("Lopez"), a Connecticut inmate

proceeding pro se, brings this action pursuant to 42 U.S.C. §§

1981, 1983, 1985, 1986 and 1988 against officials and employees

of the Connecticut Department of Corrections (DOC), charging them

with excessive force and deliberate indifference in violation of

the Eighth Amendment, interfering with his right to petition the

government, violating his right to due process, and various

violations of state law, in connection with two incidents in

which Lopez allegedly was assaulted by defendant James Smiley, a

correctional officer.  Defendants have moved to dismiss the

complaint and Lopez has moved for permission to file an amended

_____

        [1] The named defendants are Commissioner John Armstrong,
Deputy Commissioner Jack Tokarz, Deputy Commissioner Peter Matos,
Deputy Commissioner Dennis Coyle, Warden Larry Myers, Major
Christine Whidden, Major Thomas Coates, Major Michael Lajoie,
Captain William Faneuff, Captain Michael Zacharewicz, Lieutenant
Dennis Oglesby, Lieutenant Scott Salius, Correctional Officer
James Smiley, Correctional Officer Winston Farley, Correctional
Officer Ron Young, Correctional Officer Dan Stewart, Correctional
Officer John Galinsky, Grievance Coordinator John Oulette,
Medical Supervisor Patricia Wollenhaupt, Nurse Lynn Nordell, and
Nurse Saundra Katz-Feinberg.

memorandum in opposition to the motion to dismiss. Lopez's
motion is granted. In his motion, Lopez seeks to withdraw his
claims against Tokarz, Zacharewicz, Coates, Lajoie and Whidden.
Accordingly, the claims against these five defendants are
dismissed without prejudice. Defendants' motion to dismiss is
granted in part and denied in part for the reasons set forth
below.

I.    FACTS

    For the purpose of ruling on the motion to dismiss, the
following facts are accepted as true.

    On August 31, 2001, Smiley accused Lopez and his cellmate of
flooding the tier. Smiley entered Lopez's cell, handcuffed him,
then struck him in the face with a flashlight. Smiley issued
false disciplinary and incident reports to cover-up the assault.

    Prison staff initially ignored Lopez's request for medical
attention. After Lopez handed a grievance to Faneuff regarding
the incident, Faneuff arranged for Nordell to treat his injuries.
Faneuff issued a false disciplinary report about Lopez's conduct,
and Nordell falsified information in the medical incident report.

    On September 5, 2001, Farley took Lopez into the a cell with
no surveillance camera. Smiley entered, hit and choked Lopez,
and threatened him with retaliation if he took any action
regarding the prior incident. Lopez then spat in Smiley's face.
In response, Smiley bashed Lopez's head into the wall. Farley,
Salius, Galinsky and Stewart failed to intervene to protect
Lopez, and they, along with Young and Coates, deliberately

2

falsified or omitted evidence in their reports about the incident. After treating Lopez for his injuries, Katz-Feinberg and Wollenhaupt falsified the medical incident report by minimizing the injuries.

Lopez filed a grievance concerning the September 5, 2001 assault, which Myers denied. Lopez appealed, but Oulette denied receiving the appeal and told Lopez it was too late to resubmit one. Lopez notified Matos about the appeal and Armstrong about the assault, but neither of them took any action.

Lopez was issued a disciplinary report for spitting on Smiley. Myers refused to allow Lopez to attend the hearing on the matter. The disciplinary hearing officer found Lopez guilty and sanctioned him to a loss of various privileges and thirty days in segregation.

II.  DISCUSSION

Defendants raise the following grounds in support of their motion to dismiss: (1) the damages claims against them in their official capacities are barred by the Eleventh Amendment; (2) Lopez failed to exhaust administrative remedies before filing suit; (3) Lopez has failed to state a claim upon which relief may be granted; (4) Lopez has failed to allege facts demonstrating personal involvement on the part of Coyle, Myers, Armstrong, and Oglesby; and (5) defendants are entitled to qualified immunity.[2]

---

[2]  Defendants also argue that Lopez's request for injunctive relief is speculative. Of the four requests for injunctive relief, two remain after the disposition of this motion--
(continued...)

A.    Eleventh Amendment

Generally, a suit for money damages may not be maintained against a state, or against any agency or department of a state, unless the state waives its sovereign immunity under the Eleventh Amendment.  This immunity also covers state officials sued for damages in their official capacities.  Kentucky v. Graham, 473 U.S. 159, 169 (1985).

Lopez's complaint requests money damages, as well as declaratory and injunctive relief.  Therefore, the motion to dismiss is granted as to all damages claims against the defendants in their official capacities.

B.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a),[3] requires that prisoners exhaust administrative remedies before filing a suit in federal court concerning prison conditions.  This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  The

---

[2](...continued)
ordering that Lopez be transferred to another correctional facility and that surveillance cameras be installed.  Based on the facts alleged, I conclude that it is premature to dismiss Lopez's requests for injunctive relief.

[3]   42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

exhaustion requirement applies even if the inmate may not obtain the specific relief he desires through the administrative process.  See Booth v. Churner, 532 U.S. 731, 741 (2001).

The DOC has established a three tier administrative process for handling inmate grievances.  Under § 6(A)(5) of DOC's Administrative Directive 9.6, "matter[s] relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the [DOC]" are grievable.

Lopez has not exhausted his administrative remedies with respect to the claims arising from the alleged assault of August 31, 2001.  He alleges that he handed a grievance to Faneuff (Pl's Compl. ¶ 38), but he does not allege that he filed a stage two appeal from either the denial of the grievance or the failure of prison officials to respond to the grievance.

Lopez has adequately alleged exhaustion of administrative remedies with respect to some of the claims arising from the alleged assault of September 5, 2001.  Exhibits attached to his complaint demonstrate that he filed a grievance regarding the assault and failure to protect, inquired about his appeal from Myers' denial of the grievance, was told no appeal had been received, and was advised that the time to resubmit one had expired.  Lopez further alleges that he sent a letter to Armstrong concerning the incident.  This is sufficient to demonstrate exhaustion of administrative remedies as to the claims of excessive force and failure to protect in the incident

5

of September 5.

Administrative remedies regarding his other claims arising
from the September 5 incident do not appear to have been
exhausted.  He does not allege that he filed grievances regarding
the falsified incident or medical reports or inadequate medical
care related to the September 5 incident.  Nor does he allege
that he appealed from the guilty finding at his disciplinary
hearing, although Administrative Directive 9.5, § 40 provides for
appeal.

Accordingly, defendants' motion to dismiss for failure to
exhaust administrative remedies is granted as to all claims
related to the August 31, 2001, incident and the claims
addressing the incident reports, medical reports, medical care
and disciplinary hearing related to the September 5, 2001
incident.  As a result of this ruling, the case must be dismissed
as to Ogelsby, Faneuff, Young, Nordell, Katz-Feinberg and
Wollenhaupt.[4]

C.  Failure to State a Claim

An essential element of a cause of action under §§ 1981,
1985 (3) and 1986 is the requirement that defendants' conduct was
motivated by race or otherwise "class-based, invidious
discriminatory animus."  Mian v. Donaldson, Lufkin & Jenrette
Securities Corp., 7 F.3d 1085, 1087-88 (2d Cir. 1993).

---

[4]  This leaves Lopez's first, third, fourth, eighth and
ninth causes of action, but only as they pertain to the incident
of September 5, 2001.

6

Plaintiff's complaint alleges no facts regarding any class-based discriminatory motive. Accordingly, these claims are dismissed without prejudice.[5]

Defendants challenge the legal sufficiency of Lopez's failure to protect claim based on the incident of September 5, 2001. Lopez alleges that Farley and Salius saw Smiley viciously assault him to the point where he was nearly rendered unconscious yet failed to intervene. (Pl' Compl. ¶¶ 45-51) He also alleges that "other correctional officers" used excessive force to re-apply his leg irons and specifically alleges that Galinsky and Stewart failed to stop Smiley from re-entering the cell to continue the assault. (Pl' Compl. ¶¶ 53, 57) These allegations are sufficient to state a claim for failure to protect.

Defendants also challenge the sufficiency of Lopez's claim that Matos and Oulette interfered with his appeal of the denial of his grievance regarding the September 5 incident in order to deny him access to the courts. Intentional obstruction of the right to petition for redress of grievances is actionable under § 1983. <u>Graham v. Henderson</u>, 89 F.3d 75, 80 (1996). However, to be actionable, the obstruction must cause "actual injury." <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 349 (1996). Lopez will have an opportunity to litigate his claims based on the September 5 incident. Accordingly, the motion to dismiss is granted as to

---

[5] Although defendants did not seek dismissal of these claims, the court has an independent obligation under 28 U.S.C. § 1915(d) to review the complaint for claims without merit.

7

Lopez's claim against Oulette and Matos.

D.    Personal Involvement of Armstrong, Coyle, and Myers

To state a § 1983 claim against Armstrong, Coyle or Meyers, Lopez must allege that they were personally involved in the alleged wrongdoing or contributed in some way to causing Lopez's alleged injuries.    See Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).    His allegations do not satisfy this test.    He alleges no facts concerning Coyle and his allegations concerning Armstrong and Myers merely allege that they received notice of the September 5 incident after it occurred.    (Pl's Compl. ¶¶ 65, 69; Pl's Ex. Q) Accordingly, the claims against these defendants must be dismissed.

E.    Qualified Immunity

Defendants' motion to dismiss based on the affirmative defense of qualified immunity is denied without prejudice.    In September 2001, it was clearly established that using force maliciously or sadistically for the purpose of causing harm violates the Eighth Amendment.    See Hudson v. McMillian, 503 U.S. 1, 8-9 (1992); Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir. 1999).    It was also clearly established that prison officials may violate the Eighth Amendment by failing to protect inmates from a serious risk of harm.    See Farmer, 511 U.S. 825, 833 (1994). Crediting Lopez's allegations, no reasonable officer could think that Smiley's conduct in assaulting Lopez to the point of semi-consciousness was lawful or that the other defendants had no duty

8

to intervene to protect Lopez against the assault.

III.   CONCLUSION

Accordingly, defendants' motion to dismiss is granted with regard to all claims against defendants Tokarz, Zacharewicz, Coates, Lajoie, Whidden, Ogelsby, Faneuff, Young, Nordell, Katz-Feinberg, Wollenhaupt, Oulette, Matos, Coyle, Armstrong and Myers; all claims against all defendants under 42 U.S.C. §§ 1981, 1985, and 1986; and all claims under § 1983 seeking money damages against defendants in their official capacities.  The motion is denied with regard to the remaining claims under § 1983 and state law based on the incident of September 5, 2001.

So ordered.

Entered in Hartford, Connecticut, this 22nd day of September 2003.

_____
Robert N. Chatigny
United States District Judge

# ATTACHMENT B

| State of Connecticut<br>Department of Correction | DIRECTIVE NUMBER | EFFECTIVE DATE | PAGE 1 OF |
|---|---|---|---|
| | 9.5 | March 15, 1999 | 19 |
| **ADMINISTRATIVE<br>DIRECTIVE** | SUPERSEDES:<br>Code of Penal Discipline – 2/16/98 | | |
| APPROVED BY<br>2/23/99 | TITLE:<br>Code of Penal Discipline | | |

1. **Policy.** Inmates shall be held to the same level of individual responsibility as a member of the free public. As such, all privileges shall be earned and retained through positive performance and respect for rules, order and authority. Consistent with this policy, the Department of Correction shall provide for the orderly conduct of inmates by establishing rules of conduct and procedures to address misconduct. The Code of Penal Discipline shall establish acts of misconduct, the process for judging allegations of misconduct, and sanctions for violations. Disciplinary action shall be based on credible evidence of misconduct, and shall be timely, impartial and consistent. Sanctions shall be proportionate to the seriousness of the offense and the inmate's disciplinary record, and the disciplinary action shall serve to teach the offender the consequence of the misconduct and to enforce staff authority.

2. **Authority and Reference.**

    A. Connecticut General Statutes, Sections 18-7, 18-7a, 18-81, 18-98b through 18-98d.
    B. Connecticut General Assembly, Public Act 98-38.
    C. American Correctional Association Standards for the Administration of Correctional Agencies, June 1979, Standard 39.
    D. American Correctional Association, Standards for the Administration of Adult Correctional Institutions, Third Edition, January 1990, Standards 3-4214 through 3-4236, 3-4240 and 3-4243.
    E. American Correctional Association, Standards for Adult Local Detention Facilities, Third Edition, March 1991, Standards 3-ALDF-3C-01 through 3-ALDF-3C-22.
    F. Administrative Directives 1.3, Administrative Directives, Manuals, Forms Management and Post Orders; 6.6, Reporting of Incidents; 6.14, Security Risk Groups; and 9.4, Restrictive Status.

3. **Definitions.** For the purposes stated herein, the following definitions apply:

    A. **Accessory.** Assisting a person to commit an act prohibited under this Code.
    B. **Attempt.** Conduct which is likely to result in an act prohibited by this Code.
    C. **Conspiracy.** Agreeing with one or more persons to participate in an act prohibited by this Code and any one of those persons acts in furtherance of the conspiracy.
    D. **Continuance.** Adjournment of a hearing until another time.
    E. **Contraband.** Anything not authorized to be in an inmate's possession or anything used in an unauthorized or prohibited manner.
    F. **Dangerous Instrument.** A weapon, or any other unauthorized object or substance, which may cause physical injury or death, under the circumstances in which it is possessed, used or attempted or threatened to be used, or is capable of being used.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 9.5 | March 15, 1999 | 2 | 19 |

| TITLE |
|---|
| Code of Penal Discipline |

G.  **Deferred Prosecution**. Deferral of the prosecution of a Disciplinary Report for a specific period of time.

H.  **Possess**. Having physical possession or exercising control over an object.

I.  **Privilege**. A benefit bestowed upon an individual to which a person has no right or legal entitlement.

J.  **Responsibility**. An individual's personal obligation or accountability for performance.

K.  **Security Risk Group**. A group of inmates, specifically designated by the Commissioner, which poses a threat to the safety of staff, the unit or other inmates.

L.  **Self Defense**. Protection of oneself from an unprovoked attack which cannot be avoided.

M.  **Serious Physical Injury**. Any injury which requires the individual to receive immediate medical treatment by a health care professional before the individual can continue normal activity.

N.  **Suspended Sentence**. The postponement of a disciplinary sentence for a specified period of time.

4.  **Notification**. This Code shall be disseminated as specified below. The Code shall be published in English and Spanish.

A.  **Employees**. Each direct contact employee shall receive a copy of the Code. Direct contact employees shall receive instruction on the Code during pre-service orientation training.

B.  **Inmates**. Each newly admitted inmate shall receive a copy of the Code and instruction on the Code within two (2) weeks of admission to the Department of Correction. Each inmate shall acknowledge receipt of the Code by signing a receipt which shall be placed in the inmate's file. Unit Directives shall provide a process to provide information about the Code to any inmate who is illiterate, impaired, handicapped or does not speak English or Spanish.

5.  **General Provisions**. All privileges must be earned. Each inmate shall be responsible to follow all rules, policies, staff direction, and satisfactorily comply with all work and program requirements to earn access to available privileges. Access to any privilege with limited admission shall be offered to inmates who have maintained positive behavior and obedience to rules, regulations and staff direction. Each facility shall develop a list of privileges available to inmates in general population. The type of privileges available shall be based on a facility's security level and shall be authorized subject to the joint approval of the Deputy Commissioner of Programs and the Deputy Commissioner of Facility Operations.

6.  **Access to Privileges**.

A.  **Newly Admitted Inmates**. Upon admission, an inmate may be afforded access to all privileges available at the admitting facility, contingent upon conformity with institutional rules and staff direction.

B.  **Restrictive Status Inmates**. Inmates placed on a restrictive status or in a close monitoring unit shall lose access to

| DIRECTIVE NO. 9.5 | EFFECTIVE DATE February 16, 1998 | PAGE OF 3    19 |
|---|---|---|

| TLE | Code of Penal Discipline |
|---|---|

privileges. The Unit Administrator of a facility containing a restrictive housing or close monitoring unit may develop procedures and time frames in which an inmate may earn access to limited privileges based upon acceptable behavior and performance in accordance with the appropriate restrictive status or close monitoring programming. The designated time frames shall be in addition to any penalty received prior to or during the placement on a restrictive status or in a close monitoring unit. In all cases, the privileges for the restrictive housing unit shall be less than those in general population.

7.    **Unit Rules.** Each unit shall establish its own written rules concerning inmate conduct. These rules shall be published in the inmate handbook required by Administrative Directive 1.3, Administrative Directives, Manuals, Forms Management and Post Orders. The rules shall be posted in inmate housing units and copies shall be placed in inmate libraries as appropriate.

8.    **Relation to Criminal Proceedings.** Proceedings under the criminal code of the State of Connecticut against an inmate shall not cause the delay of proceedings under this Code. A dismissal, nolle or not guilty verdict in criminal proceedings shall not affect action under this Code. Any serious criminal offense shall be reported to the Connecticut State Police for investigation and action.

9.    **Classes of Offenses.** There shall be three (3) classes of offenses: A, B and C. Class A offenses shall be the most serious offenses and Class C offenses the least serious.

10.   **Authorized Sanctions.** An inmate who is in violation of the Code shall be sanctioned in accordance with the provisions of this Section.

   A.    **Limits.** Except as specifically provided in the Code the following punishment limits shall be observed:

      1.    for Class A offenses: punitive segregation; forfeiture of good time; and two (2) different penalties;
      2.    for Class B offenses: punitive segregation; forfeiture of good time; and one (1) penalty; and
      3.    for Class C offenses: forfeiture of good time and one (1) penalty.

   B.    **Punitive Segregation.** Any commitment to punitive segregation shall be for a definite period of time, the maximum of which shall be:

      1.    for conviction of offenses Section 12(D) (Assault on a Department of Correction Employee), Section 12(N) (Hostage Holding of a Department of Correction Employee), or Section 12(S) (Riot); up to 30 days. Any inmate found guilty of these offenses shall be reviewed for placement in Administrative Segregation prior to the completion of the punitive segregation sanction;
      2.    for any class A offense committed by an inmate who is a verified member of a security risk group in accordance with

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF |
|---|---|---|
| 9.5 | February 16, 1998 | 4    19 |

| TITLE |
|---|
| Code of Penal Discipline |

> Administrative Directive 6.14, Security Risk Group; up to 20 days;
>
> 3.  for all other Class A offenses: up to 15 days;
> 4.  for Class B offense: up to 10 days; and
> 5.  for Class C offense: punitive segregation may not be imposed except when the criteria of Section 10(E) are met.

When punitive segregation is imposed for multiple offenses arising from a single incident, it may be applied concurrently or consecutively. The maximum cumulative sentence to punitive segregation for offenses arising from a single incident shall not exceed the accumulation of two (2) consecutive sanctions.

C.  <u>Forfeiture of Good Time</u>. Forfeiture of good time shall be imposed in accordance with provisions of this section.

1.  <u>Type</u>. There shall be three (3) types of good time subject to forfeiture:

a.  <u>Statutory Good Time</u>. An inmate may forfeit any or all statutory good time earned on the present sentence. In the event an inmate has not yet earned sufficient good time to satisfy a forfeiture, such good time shall be deducted from any statutory good time earned during the course of the current sentenced incarceration.

b.  <u>Presentence Good Time</u>. Presentence good time shall not be awarded at the time of sentence computation if an order to withhold credit has been issued in the disposition in a disciplinary report during presentence confinement. The amount of credit ordered to be withheld shall be proportionate with the seriousness of the offense and the inmate's disciplinary record. The actual credit withheld shall not exceed the amount earned during presentence confinement. Presentence good time shall not be subject to forfeiture for misconduct that occurs after the sentence commences.

c.  <u>Outstanding Meritorious Good Time</u>. Outstanding Meritorious Good Time shall be subject to forfeiture in the amount earned on the date of the offense subject to the discretion of the Investigator or the Hearing Officer, and the Warden's designee.

2.  <u>Amount</u>. The maximum amount of good time which an inmate may forfeit shall be: (a) 90 days for a Class A offense; (b) 60 days for a Class B offense; and (c) 15 days for a Class C offense except as authorized below:

a.  The authorized forfeiture of earned good time may be doubled if the offense involves:

(1)  assault on a Department of Correction employee which is classified as a Level 2 assault as defined in Administrative Directive 6.6, Reporting of Incidents;

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 9.5 | February 16, 1998 | 5 | 19 |

TITLE

Code of Penal Discipline

    (2)    the use of a dangerous instrument against another person;

    (3)    serious physical injury of another person; or

    (4)    a member of a security risk group committing the offense.

  b.    The authorized forfeiture of earned good time may be quadrupled if the offense involves a dangerous instrument and also results in serious injury.

  c.    If the offense is one of the following the inmate shall be subject to forfeiture of all earned good time:

    (1)    Section 12(D) (Assault on a Department of Correction Employee), which is classified as a Level 1 assault as defined in Administrative Directive 6.6, Reporting of Incidents;

    (2)    Section 12(N) (Hostage Holding of a Department of Correction Employee);

    (3)    Section 12(J) (Felonious Misconduct); or

    (4)    Section 12(S) (Riot).

**D.**    **Penalties.**  The following penalties may be imposed:

  1.    Reprimand;

  2.    Loss of recreation privilege up to 30 consecutive calendar days;

  3.    Loss of telephone privileges up to 90 consecutive calendar days. The sanction may be compounded by doubling the time frame for each successive conviction of Security Tampering relating to telephone privileges;

  4.    Loss of commissary privileges up to 90 consecutive calendar days;

  5.    Loss or modification of social visiting privileges up to 60 consecutive calendar days;

  6.    Extra duty up to 24 hours which must be completed within one (1) week of disposition;

  7.    Confinement to quarters up to 30 consecutive calendar days;

  8.    Loss of social correspondence privilege up to 60 consecutive calendar days; and

  9.    Restitution for property theft or damage.

**E.**    **Increases.**  When an inmate has been found guilty for the third time in any six (6) month period arising from separate incidents, the sanction for the instant offense may be taken from those authorized for the next higher class of offense. If the instant offense is a Class A offense, then up to four (4) penalties authorized in Section 10(D) above may be imposed and up to 120 days of good time may be forfeited.

**F.**    **Suspended Sentence.**  A disciplinary sentence for a Class A offense may not be suspended. A disciplinary sentence for a Class B or C offense may be suspended for a period not to exceed 60 days. If the inmate does not commit a classified offense under this Code during the period of suspension, the suspended sentence shall not be imposed. If the inmate commits a classified offense during the period of the suspension, the suspended sentence and any sentence resulting from the new offense shall be imposed. A sentence