| DIRECTIVE NO. 9.5 | EFFECTIVE DATE February 16, 1998 | PAGE OF 6    19 |
|---|---|---|

TLE

## Code of Penal Discipline

resulting from an offense committed during the time of a previously suspended sentence cannot be suspended.

G. **Additional Sanctions Related to Security Risk Groups.**

1. **Security Risk Group Affiliation Violation.** When an inmate is found guilty of Security Risk Group Affiliation the inmate shall without further hearing be designated as a Security Risk Group Member and, in addition to any applicable sanctions, shall be subject to the provisions of Administrative Directive 6.14, Security Risk Groups.

2. **Security Risk Group Safety Threat Violation.** When an inmate is found guilty of Security Risk Group Safety Threat the inmate shall without further hearing be designated as a Security Risk Group Safety Threat Member and, in addition to any applicable sanctions, shall be subject to the provisions of Administrative Directive 6.14, Security Risk Groups.

3. **Additional Violations.** An inmate who has been verified as a Security Risk Group Member in accordance with Administrative Directive 6.14, Security Risk Groups, shall without further hearing be designated as a Security Risk Group Safety Threat Member if found guilty of any of the following disciplinary violations:

   a. Assault; (Section 12(C))
   b. Assault on a Department of Correction Employee; (Section 12(D))
   c. Contraband, Class A (Possessing a Dangerous Instrument); (Section 12(F))
   d. Creating a Disturbance; (Section 12(G))
   e. Fighting; (Section 12(K))
   f. Impeding Order; (Section 12(O)) and/or
   g. Security Risk Group Safety Threat; (Section 12(V)).

   In addition to any applicable sanctions, the inmate shall be subject to the provisions of Administrative Directive 6.14, Security Risk Groups.

H. **Degree.** The sanctions imposed shall be proportionate to the seriousness of the offense and the inmate's disciplinary record and shall be administered to regulate an inmate's future behavior.

11. **Attempt, Conspiracy and Accessory.** When supported by the evidence the offenses of Attempt, Accessory and Conspiracy shall be deemed to be included in the substantive offense without having to be separately charged. Attempt, Accessory and Conspiracy shall be punishable in the same degree as if the substantive offense was committed.

| DIRECTIVE NO.<br>9.5 | EFFECTIVE DATE<br>**February 16, 1998** | PAGE OF<br>7     19 |
| --- | --- | --- |

| 'TLE |
| --- |
| Code of Penal Discipline |

12. **Class A Offenses.**

A. **Alteration of a Specimen.** Adulterating, substituting, mislabeling or disposing of a required specimen.

B. **Arson.** Starting a fire or causing an explosion.

C. **Assault.** Physically attacking another person with or without the use of an object or substance.

D. **Assault on a Department of Correction Employee.** Intentionally striking or attacking a Department of Correction Employee with or without the use of an object or substance or behaving in such a reckless manner that one's actions causes a strike of a Department of Correction Employee.

E. **Bribery.** Giving or agreeing to give to any person a benefit intended to influence that person's action or decision.

F. **Contraband, Class A.** Making, transferring or possessing: a dangerous instrument; any item of use in making, attempting or aiding an escape; unauthorized currency; drugs or drug paraphernalia; an intoxicating substance; unauthorized medication; or a tattoo machine or equipment.

G. **Creating a Disturbance.** Causing or participating in a general disturbance which involves any of the following Level 1 incidents in accordance with Administrative Directive 6.6, Reporting of Incidents: group disturbance; inmate work stoppage; organized disobedience, major destruction/disablement of state property; or any other incident which causes the alert of the Department's Correctional Emergency Response Team(s).

H. **Destruction of Property, Class A.** Damaging property with actual or replacement value of one hundred dollars ($100) or more.

I. **Escape.** Leaving a correctional facility without authorization; leaving escorted custody without permission; exceeding assigned limits of community release without permission; or failing to properly return from furlough.

J. **Felonious Misconduct.** Committing an act that would be a felony under the Connecticut General Statutes that is not a classified offense under this Code. Charging under this section requires the authorization of the Unit Administrator or designee and a specific statutory citation.

K. **Fighting.** Engaging in physical combat with another person.

L. **Flagrant Disobedience.** Disobeying a clearly stated order in a way that conveys a deliberate challenge to authority and jeopardizes the safety, security and orderly operation of the facility.

M. **Hostage Holding.** Taking, detaining or holding another person against the other person's will.

N. **Hostage Holding of a Department of Correction Employee.** Taking, detaining or holding of a Department of Correction employee against the employee's will.

O. **Impeding Order.** Impeding the order or security of the unit by intentionally or recklessly causing a grave risk of alarm, unauthorized assembly or engaging in disorderly conduct which severely interferes with the unit's normal operations.

P. **Interfering with Safety or Security.** Interfering with, resisting or obstructing the execution of a staff member's official duties.

Q. **Intoxication.** Being under the influence of alcohol or any intoxicating substance, or a drug other than a drug officially

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF | |
|---|---|---|---|
| 9.5 | February 16, 1998 | 8 | 19 |

| 'TLE |
|---|
| Code of Penal Discipline |

prescribed or issued by staff; or when the presence of any of these substances in the body is established by an approved scientific method of analysis.

R. **Refusal to Give a Specimen.** Refusing a direct order to provide a blood or urine specimen within three (3) hours.

S. **Riot.** Inciting or participating in a general disturbance which results in a loss of control of all or a portion of a unit, serious injury, serious property damage or other organized disobedience to the rules of the unit. A charge of riot may be used only when the Commissioner declares that a riot has occurred and authorizes use of the charge.

T. **Secreting Identity.** Presenting false identification or wearing a hood or other garment for the purpose of concealing identity.

U. **Security Risk Group Affiliation.** Possessing or displaying any materials, symbols, colors or pictures of any identified security risk group; or behaviors uniquely or clearly associated with a security risk group.

V. **Security Risk Group Safety Threat.** Activity, behavior, status as a recognized Security Risk Group Leader or involvement in an event associated with a Security Risk Group which jeopardizes the safety of the public, staff or other inmate(s) and/or the security and order of the facility.

W. **Security Tampering.** Tampering with locking, security or safety devices, or any unauthorized or fraudulent use of the phone or mail system.

X. **Self-Mutilation.** Intentionally inflicting bodily injury to oneself including tattooing and ear/nose piercing.

Y. **Sexual Misconduct.** Touching the sexual or other intimate parts of another, including kissing, for the purpose of gratifying the sexual desire of either party.

Z. **Theft, Class A.** Stealing or possessing stolen property with actual or replacement value equal to or in excess of one hundred dollars ($100).

AA. **Threats.** Making verbal or written statements, or engaging in physical conduct causing fear in another person.

BB. **Violation of Program Provisions.** Failing to comply with the procedures or restrictions of community release, furlough or other special program.

13. **Class B Offenses.**

A. **Bartering.** Conducting any unauthorized transaction for which payment of any kind is made, promised or expected.

B. **Causing a Disruption.** Inciting others or engaging in disruptive behavior which interferes with normal operations, for example: setting nuisance fires, harassing others by taunts, name calling or pushing, rattling bars, banging utensils or other objects or in any other manner creating loud or disturbing noises.

C. **Contraband, Class B.** Being in possession of unauthorized items; or of inmate personal property, state issue, or commissary items in excess of authorized amounts; or displaying nude or sexually explicit pictures.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 9.5 | February 16, 1998 | 9 | 19 |

TLE

### Code of Penal Discipline

D. **Destruction of Property, Class B.** Damaging any property with actual or replacement value less than one hundred dollars ($100).

E. **Disobeying a Direct Order.** Failing to comply expeditiously with an instruction of a staff member or failing to comply with any disciplinary sanction imposed.

F. **Gambling.** Betting for money, personal gain, or anything of value.

G. **Giving False Information.** Intentionally misleading staff in the course of official duties.

H. **Insulting Language or Behavior.** Using abusive or obscene language or making an obscene gesture.

I. **Misdemeanant Misconduct.** Committing an act that would be a misdemeanor under the Connecticut General Statutes that is not a classified offense under this Code. Charging under this section requires the authorization of the Unit Administrator or designee and a specific statutory citation.

J. **Out of Place.** Being present in an area without authorization, loitering or being in a location longer than necessary to accomplish an authorized purpose.

K. **Public Indecency.** Lewdly exposing one's body to the public or fondling/caressing one's intimate body parts before the public.

L. **Theft Class B.** Stealing or possessing stolen property with actual or replacement value of less than one hundred dollars ($100).

14. **Class C Offenses.**

A. **Disorderly Conduct.** Any nuisance or annoying behavior which interferes with the unit's order.

B. **Malingering.** Failing to carry out instructions or assignments, in a timely manner.

C. **Sanitary/Housing Violation.** Failing to maintain proper sanitary condition in personal hygiene, toilets, housing, or dining areas.

D. **Violation of Unit Rules.** Failing to abide by a published unit rule.

15. **Performance Failure Citation.** An inmate assigned to Community Release may be issued a Performance Failure Citation (PFC), at the discretion of a supervisor, for failure to meet a treatment plan objective or program requirement. In such case, the supervisor shall use a Performance Failure Citation Form, CN 9501, (Attachment A). A copy shall be given to the inmate, and the inmate shall be afforded an opportunity to contest the factual accuracy of the Citation in writing to the Community Services Unit Administrator. No administrative action other than penalties under Section 10(D) or additional supervision or program requirements may result from a Citation. Following disposition, the original shall be included in the inmate's unit file. If an inmate refuses to accept the Citation, a Disciplinary Report shall be issued on the charge of Violation of Program Provisions by a Department employee. An unjustified Citation is a basis for finding the accused not guilty on the Disciplinary Report.

16. **Disciplinary Coordinator.** Each Facility Administrator shall appoint a managerial employee as a Disciplinary Coordinator who shall coordinate the disciplinary functions of the facility and who shall ensure that the facility complies with the policies and procedures of the Code. The Disciplinary Coordinator shall be responsible for the processing and

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 9.5 | February 16, 1998 | 10 | 19 |

TLE

## Code of Penal Discipline

distribution of all records and reports under this Code unless responsibility is expressly delegated to another.

In addition to the administrative duties, the Disciplinary Coordinator shall have authority to: (1) substitute a charge on a Disciplinary Report in accordance with the provisions of Section 32 of the Code; (2) defer prosecution of a Disciplinary Report in accordance with the provisions of Section 33 of the Code; and (3) dismiss a Disciplinary Report, prior to hearing, that does not serve the disciplinary interests of the facility.  If a Disciplinary Report is deferred, dismissed or the charge substituted under this Section, the Disciplinary Coordinator shall send a copy of the Report and a memorandum of explanation to the Reporting Employee and the Facility Administrator, which the Facility Administrator shall retain on file a minimum of six (6) months.  A back up Disciplinary Coordinator shall be appointed by each Unit Administrator to act in the absence of the Disciplinary Coordinator. Each Community Services Unit Administrator shall also appoint a Disciplinary Coordinator in accordance with this Section.

17. **Informal Disposition.**  Violations of rules and regulations may be disposed through Informal Disposition when Informal Disposition is deemed sufficient to regulate an inmate's behavior.

A. **Initiation.**  Informal Disposition may be initiated (1) by the Reporting Employee or (2) by a Shift Commander or Unit Manager as an alternative to a Disciplinary Report.

1. When initiated by the Reporting Employee the Informal Disposition Report Form, CN 9502, (Attachment B) shall be completed, including the recommended penalty(s), and shall be appropriately signed.  The completed form shall be received by the Shift Commander or Unit Manager not later than eight (8) hours from the alleged misconduct.

2. When a Shift Commander or Unit Manager initiates Informal Disposition based on a disciplinary report, they shall prepare form CN 9502 and inform the Reporting Employee of the action.

B. **Review.**  Not later than 24 hours of receipt of an Informal Disposition initiated by the reporting staff member, the Shift Commander or Unit Manager shall: (1) deny use of Informal Disposition; (2) approve Informal Disposition and the recommended penalty(s); or (3) approve Informal Disposition and impose an alternative penalty(s).  The reporting employee may confine an inmate to quarters pending review of the informal disposition.  In such case an incident report shall be completed, an entry made in the Station Log, and the Shift Commander or Unit Manager notified immediately.  The Shift Commander, Unit Manager or higher authority may intervene in this placement.

C. **Disposition.**  Penalties shall be consistent with Section 10(D) of the Code with the exception of restitution, which shall not be authorized under Informal Disposition.  No more than three (3) penalties may be imposed and the duration of any penalty imposed shall not exceed one (1) week.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF | |
|---|---|---|---|
| 9.5 | February 16, 1998 | 11 | 19 |

| TLE | |
|---|---|
| | Code of Penal Discipline |

D. **Notification.** Upon completion of review by the Shift Commander or Unit Manager, the inmate and the Reporting Employee shall be notified of the Informal Disposition. Notification to the inmate shall include a space for the inmate to sign acknowledging of the disposition.

E. **Refusal.** If the acknowledgment of Informal Disposition is not signed it shall constitute a refusal and a Disciplinary Report shall be initiated.

F. **Records and Reporting.** No record of an Informal Disposition shall be kept in an inmate's Master File or automated file. A record of all Informal Dispositions shall be maintained at the unit to allow for record keeping and reporting under Section 41.

18. **Initiation of Disciplinary Report.** A Disciplinary Report Form, CN 9503, (Attachment C) shall be prepared by a staff member, the Reporting Employee, upon detection of an act which gives cause for formal disciplinary action. A separate Disciplinary Report shall be prepared for each offense charged. Only the most serious possible charge relating to an offense shall be charged to a single act. When additional charges are justified as a result of sequential behaviors during an incident charges may be filed separately.

A. **Facility Procedure.** The Disciplinary Report shall be delivered to a Custody Supervisor or Unit Manager. Provision shall be made to provide the Reporting Employee, upon request, with a copy of page one of the Disciplinary Report before the end of the shift.

B. **Community Release Procedure.** The Disciplinary Report shall be referred to the appropriate Unit Administrator or managerial designee.

19. **Custody Supervisor/Unit Manager.** A Custody Supervisor or Unit Manager shall be responsible to:

A. Manage disciplinary functions during the shift.

B. Review the Disciplinary Report to ensure that it is complete and that, on its face, the evidence supports the charge.

C. Sign the report.

D. Initiate delivery of the Report to the accused and forward the original copy to the Disciplinary Investigator.

20. **Administrative Detention.** The Shift Commander may remove an inmate from population, in accordance with Administrative Directive 9.4, Restrictive Status, pending a disciplinary disposition when justified for reasons of security or order. If an inmate is removed from population, the Unit Administrator shall review the case within 72 hours of placement in Administrative Detention to determine whether continued confinement in the status is necessary. The date and time of placement in Administrative Detention shall be recorded on the Disciplinary Report. If punitive segregation is subsequently imposed any time spent in Administrative Detention shall be credited toward the sentence on a day-for-day basis.

| DIRECTIVE NO. 9.5 | EFFECTIVE DATE **February 16, 1998** | PAGE OF 12    19 |
|---|---|---|

| TLE | Code of Penal Discipline |
|---|---|

21. <u>Notice of Disciplinary Proceedings</u>. A complete and legible copy of the Disciplinary Report shall be delivered to the inmate within 24 hours of the discovery of the inmate's alleged misconduct.

22. <u>Disciplinary Investigator</u>. Upon receipt of a disciplinary report, the Investigator shall assign a report number in accordance with Section 41 of the Code. An Investigator shall conduct investigations into the allegations of misconduct of each Disciplinary Report that goes to hearing and shall have authority to dispose a Disciplinary Report prior to the hearing pursuant to Section 23 of the Code. Investigators shall be appointed by the Unit Administrator and must be certified by the Center for Training and Staff Development prior to assuming their duties.

23. <u>Disciplinary Investigator Disposition</u>. The Investigator shall interview the accused inmate. If the inmate chooses to plead guilty prior to a Disciplinary Hearing, the Investigator may accept the plea and dispose the Disciplinary Report unless the inmate has been charged with Assault on a Department of Correction Employee, Creating a Disturbance, Escape, Felonious Misconduct, Hostage Holding of a Department of Correction Employee or Riot, or Security Risk Group Safety Threat. If the Investigator elects to dispose the Disciplinary Report, the Investigator shall impose sanctions consistent with Section 10 of this Code up to half the maximum allowed under Sections 10(B) and 10(C). If the Investigator disposes the Disciplinary Report, no appeal shall be permitted. Before accepting a guilty plea, the Investigator shall ensure that the inmate understands that a guilty plea precludes an appeal. The inmate must sign the statement on the Disciplinary Report that a guilty plea is made voluntarily and with the knowledge that no appeal is permitted. A Disciplinary Process Summary, CN 9504, (Attachment D) shall be prepared by the Investigator when an inmate pleads guilty pursuant to this section. Investigator dispositions shall be consistent with the Unit's disciplinary policy and interests.

24. <u>Pre-hearing Investigation</u>. If the Investigator does not dispose the Disciplinary Report, the Investigator shall inform the inmate about the process of investigation and hearing and ensure the inmate receives a copy of the Disciplinary Report at least 24 hours prior to any Disciplinary Hearing. The Investigator shall determine if the accused inmate desires an Advocate and shall inform the inmate of the available Advocates. The Investigator shall indicate the inmate's decision on the Disciplinary Investigator Report, CN 9505 (Attachment E), and if an Advocate is selected, shall promptly notify the Advocate. The Disciplinary Investigator shall determine if the accused inmate desires a witness(es) and shall list the name and number of each appropriate inmate witness and the name and position of any staff witness. If an inmate declines an Advocate or identifies no witnesses, the decision(s) shall be recorded on the Disciplinary Investigator Report, which must be signed by the inmate. Any failure to obtain signatures shall be for good cause as determined by the Hearing Officer and documented on the Disciplinary Process Summary. The Investigator shall conduct an investigation into the circumstances of each Disciplinary Report that goes to hearing and gather all information deemed relevant to the

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 9.5 | February 16, 1998 | 13 | 19 |

'TLE

### Code of Penal Discipline

Disciplinary Report. The investigation shall be initiated within the next business day following the time the Disciplinary Report is issued. The Investigator shall report the results of the investigation on the Disciplinary Investigation Report.

The Investigator shall prepare a hearing docket and ensure that a Report is brought to hearing in accordance with the time frames established in Section 31(A) of the Code and shall ensure that the inmate, any witnesses, the Advocate and evidence along with appropriate forms are available at the scheduled hearing.

25. <u>Advocate</u>. An Advocate shall meet with the inmate at least 24 hours prior to the hearing, conduct a thorough investigation independently of the Investigator, and make a report of the investigation using the Advocate Investigation Report CN 9509 (Attachment J). The Advocate shall assist the inmate in preparing a defense, and appear at and assist in making a presentation at a formal disciplinary hearing. If the advocate selected cannot appear at the hearing, another Advocate may be appointed to assist the inmate. The accused inmate may, in writing, withdraw a request for an Advocate at the time of the hearing.

Each Unit Administrator shall appoint a minimum of three (3) staff members, including both custodial and treatment personnel, to serve as Advocates. The names of the Advocates shall be made known to all staff and inmates through appropriate notice.

26. <u>Defense Preparation</u>. An accused inmate shall be allowed a minimum of 24 hours, from notice to hearing, to prepare a defense.

   A. <u>Waiver</u>. An inmate may waive the 24 hour period by executing a written waiver.

   B. <u>Exception</u>. When an inmate's release is imminent or a transfer is necessitated, an expedited disposition may be conducted in accordance with Section 29 of the Code which may cause the 24 hour period to be constricted.

27. <u>Witnesses</u>. An accused inmate shall have an opportunity to present witness testimony at a disciplinary hearing. Witness testimony must be truthful, relevant, freely given and not redundant. To appear at a disciplinary hearing, an individual must be present at the unit and pose no threat to an orderly disciplinary hearing or to personal safety. If an otherwise qualified witness is unable to appear, written testimony may be submitted.

   A. <u>Identification</u>. The Investigator shall ascertain whether the inmate wants to call witnesses. If so, the Investigator shall record the names on the Disciplinary Investigation Report. The inmate's failure to identify witnesses to the Investigator shall make any subsequent request for a witness subject to the Hearing Officer's discretion.

   B. <u>Testimony</u>. The Investigator shall interview prospective witnesses; list the witnesses and the nature of the testimony on the Disciplinary Investigation Report; and schedule the admissible

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 9.5 | February 16, 1998 | 14 | 19 |

TLE

### Code of Penal Discipline

witnesses for the disciplinary hearing. No inmate witness shall be compelled to testify. The inmate shall be responsible for providing written testimony for any community witnesses.

C. **Staff Witness.** A staff member, called upon for testimony, shall submit such testimony in writing or in person at the discretion of Hearing Officer.

28. **Hearing Officer.** A Hearing Officer shall preside over any formal disciplinary hearing, serve as the trier of fact, and adjudicate any referred Disciplinary Report. The Complex Warden shall appoint and assign an adequate number of Hearing Officers, and acting Hearing Officers, to meet the needs of the Complex. Hearing Officers and acting Hearing Officers shall be certified by the Center for Training and Staff Development prior to assuming duty. The Hearing Officer shall have authority to include any person as a witness, may limit the testimony of any witness which is redundant or irrelevant and may order the presentation of any documents or evidence necessary for the conduct of a disciplinary hearing. The Hearing Officer may exclude or eject from the disciplinary hearing any person whose behavior poses a threat to an orderly hearing or jeopardizes the safety of any person. The Hearing Officer shall determine the hearing requirements to ensure a professional proceeding.

29. **Expedited Disposition.** The disciplinary process may be expedited when an accused inmate's release is imminent or when circumstances require that the inmate be urgently transferred and it is impracticable to conduct a hearing at the receiving facility. In such case, an inmate must receive the Disciplinary Report, must be afforded a chance to prepare a defense including nominating witnesses, must receive the services of an Advocate if desired, and any hearing must be in accordance with Section 31 of the Code.

30. **Transferred Inmate's Disciplinary Process.** If an inmate is transferred prior to disposition of a Disciplinary Report, the Report shall be disposed at the receiving unit. The Disciplinary Coordinators of the sending and receiving unit shall coordinate the process. The receiving unit shall pick up the process at the point where the sending unit left off and assume all duties for disposing the Report except the investigation. A copy of the Disciplinary Report shall be delivered to the inmate at the time of transfer if it has been reviewed in accordance with Section 19 and the Report shall be sent with the inmate. If the Report is not sent with the inmate, the sending unit shall be responsible for notifying the receiving unit by telecommunications that a Report is pending and for expeditiously forwarding the Report. The sending unit shall conduct an investigation, shall inform the receiving unit of the results of its investigation and of what procedural steps have been taken and shall respond to all inquires from the receiving unit or the Hearing Officer. The inmate may select an Advocate at the receiving unit and the receiving unit may request an investigation by an Advocate of the sending unit.

Interviews may be conducted by telephone including the taking of testimony for the disciplinary hearing.

| DIRECTIVE NO. 9.5 | EFFECTIVE DATE February 16, 1998 | PAGE OF 15   19 |
|---|---|---|
| TLE | | |

### Code of Penal Discipline

31. <u>Hearing</u>.

A.   <u>Time Frames</u>.  A disciplinary hearing shall be convened as soon as possible but not later than seven (7) business days of the date of the Disciplinary Report except in the event of a transfer a hearing shall be convened within 10 days business days.

B.   <u>Appearance of the Accused</u>.  An accused inmate shall be present at the disciplinary hearing: (1) unless the inmate declines to appear; (2) unless the inmate's behavior gives cause for exclusion or removal; and (3) except when confidential information is presented as described in subsection (G) below.  The absence of the accused inmate shall be documented on the Disciplinary Process Summary.  The Hearing Officer may recess the hearing for deliberation outside the presence of the inmate.

C.   <u>Continuance</u>.  For good cause shown, a disciplinary hearing may be continued to a later hearing date not to exceed ten (10) business days.  The Hearing Officer shall record the reason for any continuance on the Disciplinary Process Summary.  Not more than two (2) continuances may be granted to the Investigator or the accused for any Report.

D.   <u>Plea</u>.  The charge as it appears on the Disciplinary Report shall be read and the inmate shall be asked to plea.  If the inmate desires to plead guilty to the charge, the inmate shall so state. A plea of not guilty shall be entered by the Hearing Officer if the inmate refuses to plead or is not present.  Before accepting a guilty plea, the Hearing Officer shall ensure that the inmate understands that a guilty plea precludes an appeal.  The inmate must sign a statement on the Disciplinary Report that the guilty plea is made voluntarily and with the knowledge that no appeal is permitted.  If the inmate is unable to sign the report the Hearing Officer shall make an appropriate notation including the reasons for the inmate's inability to sign.

E.   <u>Evidence</u>.  Evidence may be physical evidence, a written statement or a document, or oral testimony.  A copy or listing of any physical evidence shall be given or made available to the inmate or the inmate's Advocate by the Investigator at least 24 hours prior to the hearing.

Physical evidence shall be presented at the hearing, as determined by the Investigator, whenever practicable.  Otherwise, a sample, photograph, laboratory test, or a written description of the evidence shall be presented.

F.   <u>Presentation of the Case</u>.  An Investigator shall present the case against the inmate.  The Investigator presenting the case need not be the Investigator who conducted the investigation.  The Investigator shall read the Statement of Charge on the Disciplinary Report, explain the results of the investigation and submit a written investigative report.  If the inmate is found guilty the Investigator shall present the Unit recommendation for sanction and reasons for them in the presence of the accused.  The Investigator shall respond to questions from the Hearing Officer.

| DIRECTIVE NO. 9.5 | EFFECTIVE DATE February 16, 1998 | PAGE 16 | OF 19 |
|---|---|---|---|
| TLE | Code of Penal Discipline | | |

G. **Confidential Information.** Information which is material to the allegation of misconduct may be exempted from disclosure if it places another person in jeopardy or compromises the unit's security. If the Investigator believes that documentary or testimonial information should be exempted from disclosure, the Investigator shall present the information and an assessment of its credibility to the Hearing Officer outside the presence of the inmate and the inmate's Advocate. The Hearing Officer shall decide if the information should be exempt from disclosure and, if so, shall inform the inmate that there is exempted information. If the inmate is found guilty of the offense, the Hearing Officer shall state, in writing, a summary of the information, an assessment of its reliability and why it was exempted. This statement shall be maintained in a file which is not accessible to any inmate. If the Hearing Officer determines information is not confidential, the Hearing Officer may proceed with the hearing or may continue the hearing to permit the inmate time to prepare a defense.

H. **Rebuttal.** The accused inmate or the Advocate may be allowed to question witnesses or to rebut evidence and information presented at the disciplinary hearing subject to constraints imposed by the Hearing Officer. The Hearing Officer shall constrain the rebuttal if it is irrelevant, redundant, or disrupts an orderly hearing.

I. **Defense.** The inmate shall be given an opportunity to present the inmate's version of the offense, orally and/or in writing. The inmate shall be given an opportunity to present witness testimony subject to the provisions of Section 27 of the Code. Witnesses may be questioned by the Hearing Officer. Defense information shall be recorded on the Disciplinary Process Summary.

32. **Substitute Charge.** A charge may be substituted if it becomes apparent that the original charge was inappropriate.

A. **During Prehearing Investigation.** A Disciplinary Coordinator may substitute a charge during prehearing investigation by altering the original Disciplinary Report and initialing it. A copy of the Report containing the substituted charge shall be delivered to the inmate at least 24 hours prior to a hearing.

B. **During Hearing.** A Hearing Officer may substitute a charge during hearing by informing the inmate of the substitute charge and taking a plea. A substitute charge renders the original charge dismissed. If the inmate pleads not guilty to the substituted charge, a continuance may be granted upon request of either the Investigator or the accused inmate to allow for further investigation or for defense preparation.

33. **Deferred Prosecution.** A Class A Disciplinary Report shall not be deferred. The Disciplinary Coordinator or the Hearing Officer may defer prosecution of a Class B or C Disciplinary Report for up to 60 days when the inmate's disciplinary record has been positive and the alleged offense appears to be incidental. If during the 60 day period, the inmate commits a classified disciplinary offense, the deferred Report

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF | |
|---|---|---|---|
| 9.5 | February 16, 1998 | 17 | 19 |

TLE

Code of Penal Discipline

shall be processed to disposition. Only one (1) charge may be deferred in any 60 day period, no record shall be maintained of the Report. Deferred prosecution authorized by the Disciplinary Coordinator shall be noted on the Disciplinary Report, signed and dated, and countersigned by the inmate. Any inmate who refuses to work during an inmate disturbance or inmate work stoppage, and has been issued a Disciplinary Report for Disobeying a Direct Order, shall not have the Disciplinary Report deferred.

34. **Self-Defense**. A decision that the inmate acted in self-defense may mitigate the severity of the sanction(s) imposed.

35. **Decision**. The Hearing Officer shall decide the case on the basis of the hearing record. A finding of guilty shall be based on evidence that the accused inmate committed the offense. The Hearing Officer shall immediately report the decision orally to the inmate and, if guilty, the sanction imposed.

36. **Disciplinary Process Summary**. The Hearing Officer shall produce the Disciplinary Process Summary Form, CN 9504, within 24 hours of the hearing excluding weekends and holidays. When a Disciplinary Report has been disposed by an Investigator in accordance with Section 23 of the Code, the Disciplinary Investigator shall complete the Disciplinary Process Summary Form. The Summary shall include the offense charged, the plea of the accused inmate, the disposition of witnesses, a summary of witness testimony, the finding and the reasons for it, the sanction(s) imposed and the reasons for it and any other noteworthy information about the hearing. A copy shall be forwarded to the Unit Administrator. A copy of this Summary shall be provided to the Investigator, the Reporting Employee and the inmate. Any testimony which might jeopardize an inmate's safety shall not be disclosed.

37. **Review by Unit Administrator**. The Unit Administrator shall receive a copy of the Disciplinary Process Summary within two (2) business days of the disposition of the Disciplinary Report. With the exception of Section 40 below, the Unit Administrator shall not modify the finding or the formal record but may discontinue any punishment imposed if additional punishment serves no correctional purposes or for administrative reasons.

38. **Parole**. Any inmate that has been voted to Parole and is convicted of a Class A or B disciplinary offense shall be referred to the Parole Board Chairman for reconsideration.

39. **Good Time Restoration**. Good time that is forfeited through the disciplinary process may be restored subject to the discretion of the Complex Warden. There are two types of good time that may be restored: statutory good time and presentence good time. O.M.P.A. that is forfeited shall not be restored, but may be earned anew. At a minimum the inmate shall meet the following requirements in order to be considered for statutory good time restoration.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 9.5 | February 16, 1998 | 18 | 19 |

TLE

### Code of Penal Discipline

A.   No conviction for a Class A misconduct within 60 months; Class B misconduct within 48 months; and Class C misconduct within 36 months prior to application.

B.   Continuous work assignment with favorable work evaluations 36 months prior to application.

C.   Fully successful participation in an assigned program, other than work, for 24 months prior to application.

D.   No increase in classification risk level within last 60 months.

E.   Consistent with Administrative Directive 6.14, Security Risk Groups, shall not be designated as a Security Risk Group Safety Threat Member.

The Unit Administrator may recommend that the Complex Warden award jail credit good time that was not awarded because of a misconduct, if the inmate meets all the above statutory good time requirements.

An inmate who does not qualify for restoration as a result of insufficient time served, may apply to the Commissioner through the same procedures noted above, when the inmate is within 12 months of discharge. Such inmate must have demonstrated excellent performance and be discipline free for the 12 months prior to application.

40.   Appeals. An inmate may appeal a disciplinary action by completing the Disciplinary Hearing Appeal form CN 9507, Attachment G. Each unit shall provide Disciplinary Hearing Appeal forms, and a mail box clearly marked "Disciplinary Appeals", for inmates to submit a disciplinary appeal. The Disciplinary Coordinator shall remove and immediately forward all appeals, along with any other appropriate documents used in the adjudication of the Disciplinary Report, to the Unit Administrator, as appropriate, who shall not delegate the authority to respond to disciplinary appeals. Disciplinary action resulting from a guilty plea shall not be subject to an appeal. The appeal must be submitted within 15 days of the receipt of the Disciplinary Process Summary by the inmate. The appropriate Unit Administrator shall respond to any appeal within 30 business days of the receipt of the appeal.

The appellate authority may alter disciplinary action in any way that serves the State's correctional objectives. The action of the Unit Administrator shall be final and not subject to further appeal.

41.   Logbooks and Disciplinary Report Numbering System. Each Disciplinary Report submitted for disposition shall be numbered using the originating unit's initials; followed by a two (2) digit number signifying the present year; followed by a two (2) digit number signifying the present month; followed by the sequential number in which the report was submitted starting with the number one (1) for each new month. The Disciplinary Report shall be recorded in a disciplinary logbook upon submission to the Custody Supervisor or Unit Manager, in accordance with Attachment H.

42.   Records. The original of a Disciplinary Report and a copy of the Disciplinary Process Summary and the Investigators Report shall be maintained in the inmate's Master File, except as provided in Section

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 9.5 | February 16, 1998 | 19 | 19 |

| 'TLE |
|---|
| Code of Penal Discipline |

17.  Information shall include findings of guilty, not guilty, dismissal or reversal upon appeal.  Statistical information shall be included in the weekly disciplinary summary prepared by the Research and Information Systems Unit.  Confidential testimony which might jeopardize the safety of any person or the security of the unit shall not be placed in the inmate's Master File.  The Unit Administrator shall submit the Monthly Disciplinary Summary, CN 9508 (Attachment I) to the appropriate Complex Warden on a monthly basis.

43.  <u>Process Failure</u>.  A serious process failure may result in dismissal by the Hearing Officer or the appellate.  Technical mistakes in the disciplinary process, including minor discrepancies in meeting time frames, shall not be cause for the reversal or dismissal of a Disciplinary Report.

44.  <u>Exceptions</u>.  Any exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

# ATTACHMENT C

RECEIVED 12-27-01
JAN 9 2002
NORTHERN C.I.

Ramon Lopez  # 261685
1-East- 112

Major Coates,
I have not received a response to 2
disciplinary report appeals.
I for assault on D.O.C employee and I
for threatning staff.
I'm sure that it will be denied just
like every grievance, and appeal, but
would like to have a response of the
denial in writing.
Both tickets were issued on    9-5-01 and 9-6-01.

Thank you kindly,

I/M  Lopez

we received tickets on October 1st
for causing disruption, interfering
w/ safety and security — you were
sent copies of this as well on oct 2nd.
However, we have not received any
Appeal regarding an Assault on staff.
                              mr. Gomez 1/11

# ATTACHMENT D

| State of Connecticut Department of Correction | DIRECTIVE NUMBER | EFFECTIVE DATE | PAGE 1 OF |
|---|---|---|---|
| | 9.6 | January 29, 2002 | 8 |
| **ADMINISTRATIVE DIRECTIVE** | SUPERSEDES: Inmate Grievances – 8/16/99 | | |
| APPROVED BY 1/29/02 | TITLE: Inmate Grievances | | |

1.  **Policy.** The Department of Correction shall provide a means for inmates to address grievances. The Inmate Grievance Procedure shall be an administrative remedy which enables the Department to resolve legitimate grievances in a timely manner, to identify individual and systemic problems, and to facilitate the accomplishment of its mission.

2.  **Authority and Reference.**

    A.  Connecticut General Statutes, Section 18-81.
    B.  42 United States Code 1997e.
    C.  28 Code of Federal Regulations 40.
    D.  American Correctional Association, Standards for Adult Community Residential Services, Second Edition, August 1980, Standard 2-2154.
    E.  American Correctional Association, Standards for Adult Probation and Parole Field Services, Second Edition, March 1981, Standard 2-3163.
    F.  American Correctional Association, Standards for Adult Correctional Institutions, Third Edition, January 1990, Standard 3-4271.
    G.  American Correctional Association, Standards for Adult Local Detention Facilities, Third Edition, March 1991, Standard 3-ALDF-3E-11.
    H.  1990 Americans with Disabilities Act.
    I.  Administrative Directives 2.17, Employee Conduct; 6.10, Inmate Property; 6.14, Security Risk Group; 9.1, Population Management; 9.2, Inmate Classification; and 9.5, Code of Penal Discipline.

3.  **Definitions.** For the purposes stated herein, the following definitions apply:

    A.  **Emergency Grievance.** A grievance processed by expedited methods to resolve an issue which presents: (1) a threat of death or injury; (2) a threat of disruption of facility operations; or (3) a need for prompt disposition because the time is lapsing when meaningful action or decision is possible.
    B.  **Grievance.** A written complaint filed by an inmate on the inmate's own behalf in accordance with the procedures stated herein.
    C.  **Grievance Coordinator.** An employee of the unit designated to coordinate the Inmate Grievance Procedure.
    D.  **Inmate.** A person in the custody of the Department of Correction to include those confined in a facility or under community supervision.
    E.  **Unit.** An organizational component of the Department, including correctional institutions, correctional centers, detention centers, DWI units, community enforcement offices and the health services division.
    F.  **Unit Administrator.** The person in charge of a unit specified in (E) above.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 9.6 | January 29, 2002 | 2 | 8 |

| TITLE |
|---|
| Inmate Grievances |

4. **Notice.**

  A.  The Inmate Grievance Procedure shall be published in English and Spanish. Each inmate, direct contact employee and direct contact contractor shall be issued a written summary of the Inmate Grievance Procedure upon initial contact with the Department. An inmate whose primary language is Spanish shall receive a copy written in Spanish. Appropriate provision shall be made for those who do not read, speak or understand English and Spanish. Inmates who are impaired or disabled shall receive assistance as necessary.

  B.  English and Spanish copies of the Inmate Grievance Procedure shall be available in each inmate library and shall be provided to an inmate upon request.

  C.  An inmate shall receive oral instruction about the Inmate Grievance Procedure, filing of a grievance and obtaining grievance forms. This instruction shall encourage questions and take place as part of the orientation curriculum, not later than two (2) weeks after admission.

  D.  Staff shall receive oral instruction regarding the Inmate Grievance Procedure during orientation training and upon assignment to a new unit.

  E.  Upon transfer, an inmate shall be informed of the Inmate Grievance Procedure at the receiving unit.

5. **Access.** Each inmate in the Department's custody shall have access to the Inmate Grievance Procedure. Special provisions shall be made to ensure access for the impaired or disabled, illiterate or those with language barriers.

  A.  Any inmate who needs assistance in using the Inmate Grievance Procedure shall receive assistance upon request.

  B.  Access shall only be limited as a result of abuse of the Inmate Grievance Procedure in accordance with Section 19 below or failure to comply with the process.

6. **Grievable Matters.**

  A.  **Grievable.** The following matters are grievable:

    1.  The interpretation and application of policies, rules and procedures of the unit, division and Department.

    2.  The existence or substance of policies, rules and procedures of the unit, division and Department in accordance with Section 13 below.

    3.  Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.

    4.  Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure.

    5.  Any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of Correction, to include rights under the Americans with Disabilities Act, except as noted herein.

    6.  Property loss or damage.

Case 3:02-cv-01020-MRK   Document 43-2   Filed 11/12/2003   Page 20 of 25

| RECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 9.6 | January 29, 2002 | 3 | 8 |

| TITLE |
|---|
| Inmate Grievances |

B. **Non-Grievable.** The following matters are not grievable:

1. State and federal laws and regulations.
2. State and federal court decisions.
3. Actions pursuant to the Code of Penal Discipline, which are appealable through the disciplinary procedure provided in Administrative Directive 9.5., Code of Penal Discipline.
4. Classification decisions, which are appealable through the classification procedure provided in Administrative Directive 9.2, Inmate Classification.
5. The individual designation of an inmate as a Security Risk Group Member or a Security Risk Group Safety Threat Member in accordance with Administrative Directive 6.14, Security Risk Groups.
6. Health Services diagnosis or treatment.
7. Matters beyond the control of the Department, including parole decisions.

7. **Disposition and Remedy.** A grievance shall either be rejected, withdrawn, denied, resolved by compromise, or upheld. Grievances that are upheld shall be given an appropriate and meaningful remedy. Such remedies may include, but not be limited to:

A. Corrective action to rectify the matter being grieved.
B. Changes in written policy and procedures or in interpretation or application of written policies and procedures.
C. Enforcement of existing policy and procedure.
D. Development of policies and procedures pertaining to the grievance.

8. **Administrative Provisions.** Each Unit Administrator shall establish unit directives consistent with the Inmate Grievance Procedure and the type of unit, which shall include at a minimum:

A. The designation of a staff person, to be known as the Grievance Coordinator, whose scope of authority and responsibility shall be defined by the Unit Administrator.
B. Notification procedures to inmates of the name of the Grievance Coordinator.
C. Provision for adequate numbers of collection boxes at various unit locations for the deposit of grievances. Units shall provide locked boxes for depositing grievances.
D. Procedures for the regular and timely collection and appropriate logging of grievances.
E. Procedures for the prompt handling of all emergency grievances.
F. Procedures to assure that no employee or inmate shall participate in the resolution of a grievance in which the employee or inmate is allegedly involved.
G. Procedures to provide notice of and access to the Inmate Grievance Procedure for all inmates including the impaired, disabled, illiterate and those with language barriers.

Case 3:02-cv-01020-MRK   Document   Filed 11/12/2003   Page 21 of 25

TITLE | Inmate Grievances

9.    **Informal Resolution.** An inmate shall attempt to seek informal resolution, in writing, through the use of the Inmate Request Form CN 9602, prior to filing an inmate grievance. A clear statement of the problem and action requested should be written by the inmate and sent to the appropriate unit Department Head or employee. Inmate Request Forms shall be available in all units. Response to the inmate shall be made within 15 calendar days from receipt of the request. The Unit Administrator shall post in each housing unit a list of staff members to whom Inmate Requests should be addressed for each of the grievable subjects.

10.   **Filing a Grievance.** An inmate may file a grievance if Informal Resolution has not resolved the problem. The inmate shall attach the Inmate Request Form CN 9602, containing the appropriate staff member's response, to the Inmate Grievance Form which requirement may be waived for an emergency grievance. If the inmate was unable to obtain a blank Inmate Request Form, did not receive a timely response to the Inmate Request, or for a similar valid reason, the inmate shall include an explanation as to why the Inmate Request Form is not attached. A grievance shall be filed in accordance with the following provisions:

A.    A grievance must be filed, in writing, on the Inmate Grievance Form CN 9601A or CN 9601B. Grievance forms shall be readily accessible to inmates.

B.    Each grievable matter shall be submitted on a separate Inmate Grievance Form.

C.    The grievance and the action requested should be stated simply and coherently.

D.    The length of the grievance shall be restricted to the space available on the face of the grievance form and one (1) additional 8 1/2 x 11 inch page.

E.    The grievance shall be free of obscene or vulgar language or content.

F.    The grievance must be filed by an inmate who is personally affected by the grievance subject and shall not be filed by one (1) inmate on behalf of another.

G.    The grievance must be filed within 30 days of the occurrence or discovery of the cause of the grievance, except for grievances regarding property, which must be filed within one (1) year of the discovery or within three (3) years of the occurrence.

H.    A repetitive grievance may not be filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response; or when the initial grievance is still in process.

A grievance may be returned without disposition to the inmate for failure to attempt Informal Resolution, or to adequately explain why a response to the Inmate Request Form is not attached, or for failure to comply with the provisions of subsections A through E above. "Returned without disposition" means that the grievance has not been properly filed; it may be re-filed when the error is remedied.

| RECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 9.6 | January 29, 2002 | 5 | 8 |

TITLE

Inmate Grievances

11. **Rejection of Grievances.** Any grievance which does not meet the criteria specified in Sections 6(A), 10(F), 10(G) or 10(H) of the Inmate Grievance Procedure may be rejected.

12. **Appeals.** A grievance that is denied or rejected may be appealed to the next level as provided for in Sections 16 and 17. An appeal should be deposited in the Grievance Box. A grievance returned without disposition due to a failure to comply with the procedural requirements of Sections 9 and 10(A) through 10(E) may not be appealed.

With the consent of the grievant, a reviewer may extend the time limit for a response up to 15 days using the Request for Time Extension Form, CN 9603. A grievant may request a time extension of up to 15 days to file an appeal by sending a written Inmate Request Form to the Grievance Coordinator. A request by the grievant may be granted at the discretion of the reviewer to whom the appeal is to be sent.

13. **Appropriate Review.** A grievance about a matter that is beyond the authority of lower level(s) of review may be sent by the lower level reviewer directly to the appropriate level of review. In such case the time limit(s) of the lower level(s) shall be combined with the time limit of the appropriate review level and the grievant shall be notified of the review process and of the time frame for response. If the grievance is upheld, the time necessary to implement the change(s) may exceed the time limit for review.

14. **Medical Grievances.** All health care related grievances shall be placed in a box designated for health services grievances and shall be processed by the designated Health Services Grievance Coordinator.

15. **Level 1 Review.** The Level 1 review shall be made by the Unit Administrator or ranking facility Health Services Administrator/Supervisor, as appropriate. The grievance shall be reviewed for compliance with the Inmate Grievance Procedure and investigated if the grievance is accepted. The response shall be in writing within 30 calendar days and shall include a statement of the remedy for a grievance that is upheld, or of the reason a grievance is denied or rejected. The appropriate administrator shall notify the inmate of the Level 1 disposition and shall include an appeal form and directions for appealing to Level 2.

16. **Level 2 Review.** An inmate may appeal a Level 1 disposition to Level 2 within five (5) calendar days of receipt of the decision. The Level 2 review shall be made in accordance with the following:

A.  A non-medical line grievance filed by an inmate confined in a correctional facility shall be reviewed by the Deputy Commissioner of Facility Operations.

B.  A medical grievance or a grievance which deals with accommodation under the Americans with Disabilities Act shall be reviewed by the Deputy Commissioner of Programs and Treatment.

C.  A grievance filed by an inmate supervised in the community shall be reviewed by the Deputy Commissioner of Field and Security Operations.

If a timely response to a Level 1 grievance is not received, an inmate may appeal to Level 2, one (1) day after the authorized time limit expires. The response shall be in writing within 30 calendar days and shall include a statement of the remedy for a grievance which is upheld, or of the reason a grievance is denied or rejected. Level 2 shall be the final level of appeal for all grievances except as provided in Section 17 below.

17.   <u>Level 3 Review</u>. Level 3 review is restricted to a grievance which challenges Department level policy; appeals for an emergency grievance which cannot be acted upon at a subordinate level; appeals which challenge the integrity of the grievance procedure; appeals for which a timely response to a Level 2 grievance is not received. If a timely response to a Level 2 grievance is not received an inmate may appeal to Level 3 one (1) day after the authorized time limit expires. An appeal to Level 3 must be submitted within five (5) calendar days of receipt of a Level 2 decision. The Level 3 review shall be made by the Commissioner. The response shall be in writing, within 30 days, and shall include a statement of the remedy for a grievance which is upheld, or of the reason a grievance is denied or rejected. Level 3 shall be the final level of appeal for all grievances.

18.   <u>Emergency Grievance</u>.

   A.   <u>Identification</u>. An inmate filing an emergency grievance must plainly mark the grievance as "Emergency".

   B.   <u>Expedited Process</u>. Each Unit Administrator shall develop unit directives for handling emergency grievances, including procedures for assessing the emergency and expediting resolution, or forwarding the grievance without delay to the decision-maker who can resolve the matter.

   C.   <u>Time Limits</u>. An emergency grievance that requires action within the unit shall receive a response within eight (8) hours followed by a written response within three (3) business days. An emergency grievance that requires substantive response beyond the unit or that is appealed to Level 2 or Level 3 shall receive a response in two (2) business days and a written response in five (5) business days. An emergency grievance that will be mooted by the passage of time specified for emergency grievances shall normally receive a verbal or other response prior to that time.

   D.   <u>Records</u>. Following notification of the Unit Administrator, the grievance shall be recorded in accordance with the provisions for other grievances except it shall be denoted as an emergency.

   E.   <u>Rejection</u>. If a grievance submitted as an emergency is ruled at any level not to be an emergency, it shall be returned to the grievant stating that the grievance is not an emergency and the reasons why. The response shall indicate that the grievance may be resubmitted as a regular grievance. No emergency grievance shall be rejected solely for failure to follow the procedures in the Inmate Grievance Procedure and any unit directives.

| 9.6 | EFFECTIVE DATE  January 29, 2002 | PAGE OF  7    8 |
| --- | --- | --- |

TITLE                         Inmate Grievances

19. **Abuse.** Abuse of the Inmate Grievance Procedure shall be determined by the Unit Administrator. An inmate may be deemed to be abusing the grievance procedure if any of the following conditions are met: (1) an inmate files more than seven (7) grievances in any 60 day calendar period; (2) an inmate files repetitive grievances addressing the same issue when sufficient time for response has not elapsed or when a valid response has been provided; (3) an inmate files harassing grievances; and (4) an inmate files an emergency grievances for a non emergency after having been warned of such a practice. A determination of abuse shall be made in writing and shall stipulate the restriction(s) imposed and its duration. Restrictions may include total denial of access to the grievance procedure except for an emergency grievance or a grievance relating to the inmate's property as specified in Administrative Directive 6.10, Inmate Property; a limitation on the number of grievances that may be filed; and a restriction as to the subject matter that may be grieved. A determination of abuse may be appealed to the next highest level of review.

20. **Records.**

   A. **Description.**

   1. **Grievance File.** A grievance file shall be maintained at each level for each grievance. The grievance file shall include a copy of the grievance, each response, and any supporting documents submitted in support of the grievance, presented during investigation, or relied upon in the decision.

   2. **Grievance Log.** The Grievance Log, CN 9604, shall be maintained at each level and shall include the name and number of the grievant, the dates of initial receipt and of the response at that level, a brief description of the problem and the disposition.

   B. **General Requirements.**

   1. Each unit shall use the grievance log format and the Inmate Grievance Form.
   2. The grievance file and the grievance log shall be systematically maintained by the Grievance Coordinator.
   3. Each grievance log shall be retained as the official record and for data collection purposes.

   C. **Retention.** A copy of each completed grievance shall be maintained at the unit for a minimum of three (3) years following final disposition of the grievance.

   D. **Restriction.** No copy of a grievance or adverse reference to any grievance shall be placed in an inmate's Master file.

   E. **Confidentiality.** The confidentiality of the contents of the grievance file, the grievance log, and any record of an inmate's participation in any grievance proceeding shall be maintained in accordance with the existing state statutes and regulations. All files shall be maintained in a locked cabinet not accessible to any person other than the Grievance Coordinator or Level 1

| VE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 9.6 | January 29, 2002 | 8 | 8 |

| TITLE | |
|---|---|
| | Inmate Grievances |

reviewer. Grievance Coordinators involved in the disposition of a grievance shall have access to records and information essential to the resolution of the grievance. This section shall not be cause for immunity from disciplinary action based on statements made in a grievance.

21. <u>Reprisal Against Staff</u>. No staff member who participates in the resolution of a grievance shall be affected negatively for participation in the solution of a grievance.

22. <u>Reprisal Against Inmates</u>. In accordance with Administrative Directive 2.17, Employee Conduct, no inmate shall suffer negative consequences such as denial or limitation of access to any privilege, service or program offered by the unit either formally or informally for good faith use or participation in the Inmate Grievance Procedure.

23. <u>Monitoring and Evaluation</u>. The Unit Administrator shall conduct an evaluation of the Inmate Grievance Procedure in November of each year. Inmates and employees shall be afforded an advisory role in the evaluation which shall include a review of both the effectiveness and credibility of the Inmate Grievance Procedure and recommendations for revision. An annual report shall be presented to the Commissioner by July 31 of each year. The report shall include the findings and recommendations of the evaluation process, statistical data regarding the number and type of grievances, types of dispositions and level of disposition, sample responses from each level, remedies granted, and evidence of compliance with time limits at each level of decision.

24. <u>Exceptions</u>. Any exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.