United States District Court
District of Connecticut

FILED

| Ramón López | Prisoner |
| vs. | Civil No.: 3:02 CV-1020 (RNC)(DFM) |
| James Smiley, Et. Al. | November 16, 2003 |

2003 NOV 24 P 3:29
US DISTRICT COURT

## Motion To Converse With Legal Counsel Who Is A Fellow Prisoner

The Pro se, Plaintiff in the above mentioned civil matter hereby respectfully moves this honorable Court pursuant to the Due process clause, the equal protection clause, the First Amendment, and the privileges and immunities clause of Article IV, of the Constitution, to issue a Bonafide court order allowing the Plaintiff to converse with counsel who is a fellow prisoner, to help and assist the Plaintiff with his lawsuit, because the Plaintiff is an in-experienced pro-se litigant.

The Plaintiff moves to make this motion for the following reasons:

1) The Plaintiff has no access to a law library or adequate legal assistance.

(1)

2) The current Inmates Legal Assistance program contracted by the Commissioner of Corrections to serve the inmate population is a parody of what legal assistance is suppose to be, when it can only provide limited legal assistance.

3) The Plaintiff attaches as exhibit A - an excerpt of Connecticut Superior Court reports, that is two pages - But on the second page the Plaintiff will reitterate what the Plaintiff wants to articulate;

"The commissioner of Corrections has established a procedure pursuant to a contract with Inmates legal assistance program which permits inmates to communicate indirectly with other inmates. Inmate's legal assistance program, monitors the mail it receives from inmates to insure that it truly relates to legal matters, and then funnels it to the other inmates."

Upon reading this the Plaintiff attempted to utilize this service to substitute what Inmate's legal assistance program cannot help out with. Sadly what the Plaintiff got in response was a letter from one of the staff attorney's at Inmates legal assistance program, stating the following: "This office cannot act as conduit for exchanges of material, legal or otherwise, between —

(2)

– inmates. Materials belonging to one inmate that are in the possession of another inmate are considered contraband."
–See letter attached as Exhibit B–.

The Plaintiff desperately seeking help from someone that could help the Plaintiff, attempted to contact the legal counsel who is a fellow prisoner, by means of a third party via mail, only to be issued a disciplinary report for "security-tampering" for an innocent act, at trying to obtain legal help from a fellow prisoner.
–See attached copy of Disciplinary report attached as exhibit C–.

4) Rather than to have inmate's legal assistance program, perform the act of forwarding the mail, which can take up to ninety days, and to resolve prison officials duty to maintain safety and security by making sure that the materials truly pertains to legal materials, it would be more efficient to have a counselor at the facility, be the middle person, which would be more time efficient in less, alot more less time than ninety days.

5) Said inmate who is a fellow prisoner, is at the same institution is a known jailhouse lawyer in which D.O.C. employee's have gone out of there –

(3)

— way, to keep the Plaintiff separated from his fellow prisoner, because and only because said individual is a known Jail house lawyer, who is very good at helping inmates with their legal problems and need for help. The D.O.C.'s reason for wanting to keep the Plaintiff separated in such a manner is because said fellow prisoner has about (9) nine lawsuit's pending with a potential to be awarded substantially high monetary award, surely to make controversial head lines. Said legal counsel who is a fellow prisoner is inmate Duane Ziemba, inmate number # 128963 incarcerated at the same institution.

6) The Plaintiff has recently submitted a second motion for the appointment of counsel, after surviving the state's motion to dismiss. If said motion for appointment of counsel is granted, this motion would then become moot.

7) The Assistant Attorney General has recently written a letter to the Plaintiff making a counter offer to the Plaintiff. Ignoring the distasteful counter offer proposed by the Defendant's, counsel, it is clear to the Plaintiff that counsel for the defendant's, is taking advantage of the fact that the Plaintiff is inexperienced in civil litigation and settlement negotiations, by making a counter offer so absurd it —

(4)

— should be unethical. The Plaintiff would better wish for a trial and get some type of justice even if the Plaintiff walked out of court with nominal damages of one dollar. At least the Plaintiff would feel alot better at having brought the corrupt, criminal minded individuals who beat and tortured the Plaintiff while in secured cell handcuffed from the back.

Wherefore for the foregoing reasons the Plaintiff pray's the court grant either the motion to converse with legal counsel or the pending motion for appointment of counsel.

Respectfully Submitted,

*Ramón A. López*

Pro-Se Plaintiff- Ramón A. López
Northern Corr. Inst.
P.O. Box 665
Somers, C.T. 06071

(5)

## Certification

I Ramón López, certify that a copy of the foregoing motion to Converse with legal counsel who is a fellow prisoner, was mailed to A.A.G. Robert F. Vachelli, 110 Sherman St. Hartford, C.T. 06105

By the Plaintiff,

Ramón A. López
Northern Corr. Inst.
P.O. Box 665
Somers, C.T. 06071

(6)

Exhibit A

## BUSINESS LAW

A claim for tortious interference with a business expectancy is stricken because it fails to state whether the business expectancy is contractual, whether wrongful conduct such as fraud, misrepresentation, intimidation or molestation occurred and whether the defendant acted solely for his own interests, not for the benefit of the corporation.

*Hackett v. Marquardt & Roche/Meditz & Hackett Inc.* • Stamford-Norwalk J.D., at Stamford (Doc. No. X05CV99-0173681S) • October 6, 2000.

### Memorandum of Decision of Motion to Strike Dated June 7, 2000 (#114)

*Tierney, J.* The parties agreed that the Motion to Strike addressed to the Sixth Count of the Revised Complaint dated February 14, 2000, can be applied to the Sixth Count of the Amended Complaint dated September 15, 2000. The Sixth Count alleges that the defendant, Howard Meditz, as a corporate officer, director and shareholder of the defendant corporation (MR/MH) tortiously interfered with the "business expectancy" of the plaintiff in "that he would continue as an officer and director of MR/MH for a number of years after the buyout. ..."

**FULL TEXT**

"This court has long recognized a cause of action for tortious interference with contract rights or other business relations." *Blake v. Levy*, 191 Conn. 257, 260 (1983). The elements of tortious interference with a business relationship are the existence of a contractual or beneficial relationship, the defendants' knowledge of that relationship, the intent to interfere with it, and the consequent actual loss suffered by the plaintiff. *Hart, Nininger & Campbell Associates, Inc. v. Rogers*, 16 Conn. App. 619 (1988).

In order to sustain a cause of action for tortious interference with contractual relations, the plaintiff must plead and prove that the defendant acted with an improper motive. *Robert S. Weiss Associates, Inc. v. Wiederlight*, 208 Conn. 525, 536 (1988). "This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation, or molestation ... or that the defendant acted maliciously." (Citations omitted, internal quotation marks omitted.) *Robert S. Weiss Associates, Inc. v. Wiederlight*, supra, 208 Conn. 536.

An officer or director of a corporation acting within the scope of his authority and on behalf of the corporation may not be held liable for interference with a contract of the corporation although there are circumstances under which personal liability may attach. ... In order to deprive a corporate employee of his immunity, the plaintiff must establish that he acted solely for his own benefit and benefit to the corporation played no role therein. Such a defendant is insulated from liability even if his actions were motivated in part by self-interest, provided he believed he was serving the corporate defendant.

*Resurrection Espinosa v. Connecticut College and Doris Meyer*, Superior Court, judicial district of New London at New London, Docket Number 522872, (June 27, 1994, Leuba, J.) (1994 Ct. Sup. 6436).

The plaintiffs' complaint has inadequately alleged: (1) whether the "business expectancy" is contractual in nature; (2) sufficient facts supporting wrongful conduct such as fraud, misrepresentation, intimidation or molestation; and (3) that the defendant, Meditz, acted solely for his own interests and not for the benefit of the corporation.

The motion to strike is Granted.

## CRIMINAL PRACTICE

Noting the availability of the inmates' legal assistance program, the court grants the respondent warden's request to vacate a prior decision permitting a prisoner who is serving two consecutive life sentences for murder (one of them for strangling a cell mate) to "converse" with a prisoner he claims is his "legal counsel."

*Barletta v. Myers (Warden E.)* • Hartford J.D. at Hartford (Doc. No. CV00-0596675-S) • October 27, 2000.

### Memorandum of Decision on Respondent's Request to Vacate the Court's Decision of September 19, 2000 on the Petitioner's Motion to Converse with Legal Counsel Who is a Fellow Prisoner

*Rittenband, J.* On September 19, 2000 this Court granted, ex parte, the Petitioner's Motion to "Converse with Legal Counsel who is a Fellow Prisoner" as follows:

**FULL TEXT**

"Granted to permit inter-prison mail only with Michael Scatena. ILAP does not totally deny assistance. See next-to-last paragraph on page 2 of ILAP letter."

By motion dated September 29, 2000 the Respondent has requested that the Court vacate said decision. A hearing was held on the Respondent's motion on October 23, 2000 at Superior Court in the Judicial District of Tolland at Rockville with the Petitioner, who is currently incarcerated in Wallen's Ridge Prison in Virginia, communicating with the Court and the Respondent and the witnesses by video conferencing.

This Court previously denied the Petitioner's request to order the Respondent to provide the Petitioner with the copy of the "White Man's Bible" which had been sent to him, based upon the inflammatory nature of the document which prison officials claimed was sufficiently inflammatory to endanger security at the institution in which the Petitioner was incarcerated. The Court also ordered the Respondent to redact inflammatory portions of other materials from the Church of the Creator that were deemed to be inflammatory. The Respondent, after a review of the materials, claimed that such redaction would result in only ten percent of the document surviving. The Court then vacated its prior ruling thereby relieving the Respondent of the necessity of redacting the documents and permitting the Respondent to use his judgment as to whether or not these documents should be provided to the Petitioner based upon security concerns.

The Petitioner can easily be called a violent individual. He is presently serving two consecutive life sentences for murder, the second murder occurring in his cell when he strangled his cellmate to death. When the Respondent denied the Petitioner the White Man's

Bible prior to the Petitioner seeking relief from this Court, the Petitioner used an object to slash the Respondent's face. Therefore, it is understandable that the Respondent has concerns for security regarding the Petitioner.

At the hearing on this matter on October 23, 2000, testimony was received from Major Thomas Coates of Northern Correctional Institution in Somers, Connecticut, a maximum-security facility in which the Petitioner had been confined prior to his transfer to Virginia. The Court found Major Coates to be a credible, knowledgeable and honest witness. The Court believes his testimony that allowing the Petitioner to communicate by mail with Michael Scatena would have a serious negative effect on the security of the Northern Correctional Institution. The following items were admitted into evidence during the hearing:

1. Respondent's Exhibit A which is a letter dated September 8, 2000 to the Petitioner's mother in which the Petitioner says that he was cut off by the Church of the Creator because he claims that it is a non-violent religious group and by slashing the Respondent he violated its rules.

2. Respondent's Exhibit B contains an incident report dated August 8, 2000, five days after the Petitioner attacked the Respondent, reporting that prison authorities had confiscated from the Petitioner material that they thought might be related to the assault. These items included three cartoons attached hereto as Schedule A which were racist and anti-Semitic particularly against Warden Myers one of which shows the Petitioner choking Warden Myers.

3. Respondent's Exhibit C is a letter to "Reverend" Hale of the Church of the Creator in which the Petitioner criticizes the Respondent for being Jewish, the Christian Reverend as being a "Nigger" and another individual as being a "Catholic Deacon." He ends his letter with the code "RAHOWA!!" which is an acronym for "Racial Holy War."

From the Petition for Habeas Corpus of Michael Scatena the Court is aware that he is also a member of the Church of the Creator and espouses anti-Semitic, anti-black and anti-Catholic principles of the Church of the Creator. The Petitioner claims that Michael Scatena is his "legal counsel." Mr. Scatena is not a member of the Bar of any state and cannot act as legal counsel to the Petitioner. There was also testimony from Major Coates that when Mr. Scatena was being transferred for an interview, he provided prison officials with a copy of the White Man's Bible.

The Court finds from the totality of the evidence that communication between the Petitioner and Michael Scatena would be detrimental to the security of the correctional institutions involved. Prohibiting such communication is related to legitimate penological objectives, namely, maintaining security at the correctional institutions. This Court cannot micromanage the Respondent's actions in determining what are legitimate security concerns. It can determine, as it does here, that such communication between the Petitioner and Michael Scatena for the reasons stated are detrimental to the security of the institutions.

This prohibition of inmate-to-inmate communication is reasonably related to legitimate penological interests and is, under *Turner v. Safely*, 482 U.S. 78 (1987), not a violation of constitutional rights. Major Coates' testimony and the exhibits mentioned clearly established that prohibiting direct inmate-to-inmate communication is required for inmate safety and institutional security which is a legitimate penclogical interest and goal.

Further, in order for the Petitioner to prevail, he must show that no reasonable method exists for him to have contact with legal counsel. As previously noted in prior decisions regarding this Petitioner, the Court has reviewed the June 9, 2000 letter from Inmates' Legal Assistance Program to the Petitioner in which it is stated:

"If you want assistance from ILAP in your case, please provide copies of your complaint and the defendants' responses, along with any other materials related to your claim for review. This office will evaluate your claims and then will advise you accordingly."

The letter also indicates that it is doubtful that the Petitioner's claims are valid for basically the same reasons stated in this decision. However, the ILAP showed that it was still open to reviewing Petitioner's materials in order to determine whether it should assist the Petitioner. Therefore, the Petitioner is not without an alternative for legal assistance. The Commissioner of Corrections has established a procedure pursuant to a contract with ILAP which permits inmates to communicate indirectly with other inmates. ILAP monitors the mail it receives from inmates to insure that it truly relates to legal matters, and then funnels it to other inmates. Outgoing mail to ILAP is treated as privileged. This protocol substantially permits the communications that the Petitioner seeks while also addressing the security concerns of the Commissioner of Corrections to his satisfaction. This alternative arrangement is available to the Petitioner, and, therefore, he has failed to meet his burden of showing no alternative relief available to him. See *Turner v. Safely*, supra.

For the foregoing reasons, the Respondent's request that this Court vacate its decision on the Petitioner's "Motion to Converse with Legal Counsel who is a Fellow Prisoner" is granted, and the decision of September 19, 2000 is hereby vacated.

### CRIMINAL PRACTICE

The court recognizes the World Church of the Creator as a "religion" that forbids the eating of kosher foods and refuses to issue a temporary injunction to prevent kosher food from being served to the petitioner, a convert from the Mormon faith to the WCC who may supplement his diet with food from the commissary until his release in June 2001.

*Scatena v. Rowland* • Hartford J.D., at Hartford (Doc. No. CV-00-0599020S) • November 2, 2000.

**Memorandum of Decision on Plaintiff's Motion for Temporary Injunction Dated July 24, 2000**
*Rittenband, JTR.* Plaintiff is incarcerated in the Northern Correctional Institution in Somers, Connecticut, a maximum-security prison. He was transferred to that institution because when he entered the Walker Reception Center he was found to have contraband consisting of a stinger which was hidden in his crutch. The stinger has been described by Major Thomas Coates (hereinafter "Coates") who is, among other things, in Correctional Ins trical type objec trical system i Michael Scaten tiff") has receiv Connecticut pri this injunction a defendants (add Northern Correc said prison) to food and liquid gious kosher fo to provide to Sc of a vegetarian of the Creator temporary injur Jewish nor doe religious custor food and liquic "along with th Department of violate his relig and as a forme Court for a hea plaintiff appear defendants pris represented b Alexandre.

The Court he Deveau (herei Services for th Anthony J. Br Religion at NC tion is aforeme

As a prelin refused to issu the plaintiff, b namely Carnel Anderson. The said witnesses Attorney Gene would create a NCI. They ar chronic discipl at some future men as witnes teleconferencii presence is ur cede that thes American, wil a threat to the mony irrelev the motic

Exhibit B

# LAW OFFICES
# OF
# SYDNEY T. SCHULMAN

Administrative Director
Sydney T. Schulman, Esq.

Managing Attorney
Jane Starkowski

## INMATES' LEGAL ASSISTANCE PROGRAM

Staff Attorneys
Richard P. Cahill
Peter Downs
Jessica J. York
Michael A. Rubino, Jr.
Kenneth J. Speyer
Foye A. Smith
Jenna M. Edmundson

July 3, 2003

Ramon Lopez
Inmate # 261685
Northern Correctional Institution
287 Bilton Road
Somers, CT 06071

Dear Mr. Lopez:

    This is in response to your letter dated June 12, 2003, that was received by Inmates' Legal Assistance Program on June 16, 2003. In your letter you requested that I forward legal material to a fellow inmate at Northern Correctional Institution.

    Unfortunately, I cannot do as you requested.. This office cannot act as a conduit for exchanges of material, legal or otherwise, between inmates. Materials belonging to one inmate that are in the possession of another inmate are considered contraband.

    I am returning the material you sent to this office. I have placed a copy of the papers in your file maintained in this office.

    In the future, if you require legal assistance in any other civil matters, please write to this office at the address listed below.

Sincerely,

Peter Downs
Attorney

Enclosure

6-12-03

Ramón López #261685
Northern Corr. Inst.
P.O. Box 665
Somers, C.T. 06071

I.L.A.P.
Peter Downs – Staff Attorney
78 Oak St
Hartford, C.T. 06106

Dear Attorney Downs,
  Please forward the enclosed legal documents to Inmate, Duane Ziemba #128965, here at Northern. I'm in need of some of his assistance, and Northern staff refuse to pass legal materials for us.
Thank you very kindly. It's a yellow manilla envelope accompaning this letter.

Sincerely,
Mr. López

c: Ziemba
   Hunnicutt
   Scatana
   Lopez

Exhibit C



# Disciplinary Report – Page 1
## Connecticut Department of Correction

CN 9503
1-10-94

| | | | |
|---|---|---|---|
| Unit N.C.I | Report date 10-28-03 | Report no. | |
| Inmate name Ramon Lopez | I.D. no. 261685 | Housing 3E 224 | |
| Location Intelligence Office | Incident date 10-28-03 | Time 10:30 ☒ a.m. ☐ p.m. | |
| Charge Security Tampering | | Class A | |

**Description of violation:**

On the above date and time while I was conducting the mail review as per Administrative Directive 10.7. An incoming letter from a Mrs. Dennis Berrios to I/M Ziemba was reviewed. In the letter 2 written pages were found and 8 pages of a District court case were also found. At the top of the written letter I/M Lopez wrote his name, number and location. Lopez also dated the letter Monday, 10-20-03. I/M Lopez actions were to avoid detection by using a third party Dennis Berrios. Mrs. Berrios is under I/M Lopez visiting list and is described as his sister. I/M Lopez actions were to avoid detection by tampering with security. This is clearly a violation of Administrative Directive 9.5 (Code of penal discipline).

**Witness(es):**

**Physical evidence:** Copy of the envelope and 2 page letter written by Lopez. RT85, RT86

Reporting employee [signature]   Employee requests copy ☒ yes ☐ no
Title C/O   Date 10/28/03   Time 11:00 ☒ a.m. ☐ p.m.

## CUSTODY SUPERVISOR / UNIT MANAGER REVIEW

☐ Administrative detention   Date ____   Time ____ ☐ a.m. ☐ p.m.
☐ Interview accused   ☐ Informal disposition
Custody supervisor / unit manager signature [signature]
Title ____   Date 10/28/03   Time 11:55 ☒ a.m. ☐ p.m.

## INMATE NOTICE

Delivered by [signature]
Title C/O   Date 10-28-03   Time 12:00 ☐ a.m. ☒ p.m.

# Disciplinary Report - Page 2
## Connecticut Department of Correction

CN9503
1-14-94

| Investigator | Receipt date | Time | ☐ a.m. ☐ p.m. |
|---|---|---|---|

**Attempt, accessory and conspiracy:** When supported by the evidence, the offenses of attempt, accessory and Conspiracy shall be deemed to be included in the substantive offense with out having to be separately charged. Attempt, accessory and conspiracy shall be punishable in the same degree as if the substantive offense were committed.

## CLASS A

- Alteration of a specimen
- Arson
- Assault
- Assault on a DOC employee
- Bribery
- Contraband (dangerous instrument, escape item, unauthorized currency, drug paraphernalia, intoxicating substance, tattoo equipment)
- Creating a disturbance
- Destruction of property ($100 or more)
- Escape
- Felonious misconduct
- Fighting
- Flagrant disobedience
- Hostage holding
- Hostage holding a DOC employee
- Impeding order
- Interfering with safety or security
- Intoxication
- Refusal to give a specimen
- Riot (requires declaration by DOC Commissioner)
- Secreting identity
- Security risk group affiliation
- Security tampering
- Self-mutilation
- Sexual misconduct
- Theft ($100 or more)
- Threats
- Violation of program provisions

## CLASS B

- Bartering
- Causing a disruption
- Contraband (unauthorized items, items in excess of authorized amounts, displaying nude or sexually explicit pictures)
- Destruction of property (under $100)
- Disobeying a direct order
- Gambling
- Giving false information
- Insulting language or behavior
- Misdemeanant misconduct
- Out of place
- Public indecency
- Theft (under $100)

## CLASS C

Disorderly conduct   Malingering   Sanitary / housing violation   Violation of unit rules

| Inmate signature | Date |
|---|---|
| Witness signature | Date |

**Waiver of 24-hour notice:** I hereby waive my right to a 24-hour notice of hearing And request that a hearing be held at the earliest convenience of the hearing officer.

| Inmate signature | Date |
|---|---|
| Witness signature | Date |

**Waiver of appearance:** I hereby waive my appearance at the disciplinary hearing. This does not constitute a guilty plea.

| Inmate signature | Date |
|---|---|
| Witness signature | Date |

**Guilty plea:** I hereby plead guilty to the charge contained in this disciplinary report. I voluntarily enter this plea and understand that my plea bars an appeal.

| Inmate signature | Date |
|---|---|
| Investigator/hearing officer signature | Date |
| ☐ Prosecution deferred by disciplinary coordinator | Through date |
| Disciplinary coordinator signature | Date |
| Inmate signature | Date |