UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(Hartford)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

RAMON LOPEZ                          *    3:02 CV 1020 (RNC)(DFM)
                                     *
V.                                   *
                                     *
JAMES SMILEY, ET AL                  *    MARCH 29, 2004
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MOTION TO MODIFY THE PROPOSED SECOND AMENDED THE COMPLAINT

Comes now the plaintiff, by and through counsel, who pursuant to Rule 15 (a-c) FRCP moves to amend the plaintiff's second amended complaint filed as a proposed complaint and attached to the plaintiff's Motion to Amend The Complaint on February 26, 2004. The purpose of amending the proposed Second Amended Complaint is to add the following claims to the State law claims: Article I, §§ 8, 10 and 14 of the Connecticut Constitution. Additionally, the plaintiff seeks to amend page 6's paragraph 26, page 11's paragraph 54, page 13's paragraph 70, page 15's paragraph 2 and page 16's paragraph 75 to allege injury to the plaintiff's reputation.

The proposed "modified" Second Amended Complaint is attached.

Article I, §§14 of the Connecticut Constitution is the third of Connecticut's free speech clauses that was supposed to have been included in the February 26, 2004 motion to amend the plaintiff's complaint. Additionally, Article I, §§8 and 10 are two of Connecticut's due process clauses that were supposed to have been included with the other Connecticut Constitution due process clause, i.e., Art. I§9, in the February 26, 2004 motion to amend the complaint. All of the amendments proposed by the plaintiff in the instant motion and the one of February 26th, 2004, which deals with facts and adds other legal theories of liability are allowed under Rule 15 FRCP.

All of the amendments, proposed by the plaintiff in the instant motion and the one of February 26, 2004 that change the legal theory of the plaintiff's original claims and that deal with the facts simply "amplify or restate the original pleading [and] set forth facts with greater specificity [and therefore should be permitted.]" 3 Moore's Federal Practice, §15.19[2], pg. 15-82n. 11 & 12 (Matthew Bender 3d ed. 2003).   Additionally, all of the amendments relating to the facts and legal theories are within this Court's jurisdiction and arise out of the misconduct, transaction or occurrences set forth in the original complaint, hence, leave to amend as requested should be granted.  Shane v. Connecticut, 821 F. Supp. 829, 834 (D. Conn. 1993).  Through the plaintiff's actions before the undersigned filed his appearance put all of the defendants on notice of the claims that the plaintiff is now pursuing.  For the most part, the plaintiff shall be relying upon the same kind of evidence underlying his original complaint in order to prove the claims advanced by the proposed amendments.  Given the foregoing, the defendants cannot seriously argue that unfair surprise would follow should this Court grant the plaintiff leave to amend as he has requested.  3 Moore's Federal Practice, §15.19[2], pgs. 15-83 – 15-84nn. 14-16 (Matthew Bender 3d ed. 2003).   The plaintiff's State Common law claims raised in the February 26th, 2004 amendment remain.

No new defendants are sought to be added or deleted in the instant motion.  In support of the addition of the defendants added in the February 26th, 2004 proposed amendment, the plaintiff avers that  the claims raised in the proposed amended complaint arise from the misconduct, transaction and/or occurrences advanced in the original pleading.  Further, the plaintiff submits that the new defendants received adequate notice not to be prejudiced, the new defendants knew or reasonably should have known that they would be named as defendants but for the mistake and the notice factors were satisfied within the period

2

prescribed for service of process. Hence, the plaintiff ought be given leave to amend the complaint as the addition of defendants. 3 Moore's Federal Practice, §15.19[3], pgs. 15-84 – 15-85 (Matthew Bender 3d ed. 2003).

In closing, the plaintiff adopts all of the arguments advanced in his original motion to amend the complaint coupled with its attached text of the proposed second amended complaint filed on February 26, 2004 and the plaintiff's rebuttal to the defendant's objection to the plaintiff's motion for leave to file the amended complaint filed on March 29th, 2004.

RESPECTFULLY SUBMITTED,

RAMON LOPEZ
THE PLAINTIFF

BY: _____

ATTY. ERSKINE D. McINTOSH
FEDERAL BAR NO. CT 09743
THE LAW OFFICES OF ERSKINE D. McINTOSH, P.C.
3129 WHITNEY AVENUE, SECOND FLOOR
HAMDEN, CT 06518-2364
(203) 787-9994
FAX (203) 848-1213

COUNSEL FOR THE PLAINTIFF

## C E R T I F I C A T I O N

This is to certify that a copy of the foregoing was sent by first-class mail, postage prepaid on this the 3/__ day of March, 2004 to:

Atty. Robert F. Vacchelli
Assistant Attorney General
110 Sherman Street
Hartford, Conn. 06105

_____
ATTY. ERSKINE D. McINTOSH

19 MOTION-AMEND COMPLAINT-LOPEZ

3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(Hartford)

```
************************************
RAMON LOPEZ                     *        3:02 CV 1020 (RNC)(DFM)
                               *
       VS.                     *
                               *
JAMES SMILEY, ET AL            *        MARCH 30, 2004
************************************
```

## SECOND AMENDED COMPLAINT

COUNT ONE
FEDERAL LAW CLAIMS

### JURISDICTION

1.      This action is brought pursuant to sections 1983, 1986 and 1988 of Title 42 of

the United States Code and the First, Fourth, Fifth and Fourteenth Amendments to the U.S.

Constitution.  Jurisdiction is founded on 28 U. S .C. §1331 and §1343 (1)(2)(3)(4) and the

aforementioned statutory and Constitutional provisions.  Plaintiff further invokes the pendent

jurisdiction of this Court to prosecute causes of action arising under State law sounding in

State Constitutional tort and common law tort pursuant to 28 U. S. C. §1367(a).

2.      This action is further brought by the Plaintiff as authorized by 28 U. S. §§2283

and 2284 and FRCP Rule 65b seeking injunctive relief.

### THE PARTIES

3.      During all times mentioned in this Complaint, the plaintiff, a Hispanic man,

was, and he still is, an adult citizen of the United States.  He was a pre-trial detainee and

detained at Northern Correctional Institution (NCI), Somers, Connecticut at the time of the

1

events described herein, and now resides at that same location.

4.     During all times mentioned in this Complaint, the defendants, C.O. James

Smiley (Smiley), C.O. Winston Farley (Farley), Dennis Oglesby (Oglesby), Captain William

Faneuff (Faneuff), grievance coordinator John Oulette (Oulette), C.O. John Galinsky

(Galinsky), C.O. Dan Stewart (Stewart), Nurse Lynn Nordell (Nordell), C.O. Ron Young

(Young), Warden Larry Myers (Myers), Major Thomas Coates (Coates), Lt. Scott Salius

(Salius), Major Michael Lajoie (Lajoie), Deputy Commissioner Peter Matos (Matos), Nurse

Practioner Saundra Katz-Feinberg (Katz), Medical Supervisor Patricia Wollenhaupt

(Wollenhaupt), and Captain Michael Zacharewicz (Zacharewicz), were duly appointed

employees of the Department of Corrections for the State of Connecticut action in their official

capacities. Each Defendant is sued only in his individual capacity.

5.     During all times mentioned in this Complaint, the defendants, C.O. Smiley,

C.O. Farley, C.O. Oglesby, Captain William Faneuff, Oulette, C.O. Galinsky, C.O. Stewart,

Nurse Nordell, C.O. Young, Warden Myers, Major Coates, Lt. Salius, Major Lajoie, Deputy

Commissioner Matos, Nurse Practioner Katz, Medical Supervisor Wollenhaupt, acted under

color of law, that is under color of the Constitution, statutes, laws rules, regulations, customs

and usages of the State of Connecticut and the United States.

6.     At all times mentioned in this Complaint, the defendants acted willfully, jointly,

in conspiracy and in concert with each other. Each defendant had the duty and the opportunity

to protect the plaintiff from the unlawful actions of the other defendant but each defendant

failed and refused to perform such duty, thereby proximately causing the plaintiff's injuries.

2

7.    During all times mentioned in this Complaint, the defendants and each of them separately and in concert acted jointly, willfully and in conspiracy with each other and each defendant aided and abetted the others in carrying out the acts and omissions described herein, and thereby deprived the plaintiff of his rights, secured to him by the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States and the laws of the United States and the State of Connecticut.

8.    During all times mentioned in this Complaint, and upon information and belief, all defendants were on duty.

## FACTS

9.    On August 31, 2001, at I east unit, third Shift, Cell 216 Defendant C.O. Smiley stopped at the cell door to cell 216, looked at the air vent area above the sink with his flash light, looked at the plaintiff and his cell mate Mr. Michael Nedweden (Nedweden) #251292, and stated to the plaintiff and Nedweden "Cut it out." When the plaintiff and Nedweden asked defendant Smiley what he meant by "Cut it out", defendant Smiley stated "If I have to come in there you'll know what I'm talking about" and left the area.

10.    A short while later defendant C.O. Smiley returned and ordered the plaintiff and Nedweden to submit to handcuffing and they complied.

11.    Defendant C.O. Smiley told another C.O. to open the plaintiff's cell and after the cell door was opened, C.O. Smiley entered the plaintiff's cell alone, i.e., without another C.O. being present, without notifying the shift supervisor and without notifying the acting lieutenant in complete violation of D. O. C. policy and protocol for Northern C. I.

3

12.     Once defendant C.O. Smiley was inside cell 216 he immediately struck Nedweden with the flashlight on the left side of his face while taunting him and threatening him, while Mr. Nedweden was handcuffed.

13.     Then defendant C.O. Smiley hit the plaintiff on the right side of his face with his hand and flashlight while the plaintiff was handcuffed.

14.     After assaulting the plaintiff and his cellmate, defendant C.O. Smiley threatened both gentlemen by stating, "IF you two aren't sleeping when I come around again, it's not going to be pleasant."

15.     After the assault on the plaintiff and his cellmate, defendant C.O. Smiley then notified his superior, co-defendant Lt. Oglesby, wherein, the two defendants turned off the water to cell 216 depriving the plaintiff and his cellmate of the use of a fully functional toilet.

16.     Subsequent to the assault of the plaintiff by C.O. Smiley, as he made his tours during the third shift, C.O. Smiley would stop by the plaintiff's cell and just stare at the plaintiff and Nedweden, upon information and belief because he knew the plaintiff and Nedweden had told Lt Oglesby about our beating by Smiley and/or because Nedweden would make racially derogatory comments towards C.O. Smiley, a black man.

17.     Thereafter, defendant C.O. Smiley stated in a menacing tone to both the plaintiff and his cellmate the following:  **"I'll be seeing one of you in the A/P room."**

18.     Defendant C.O. Smiley exhibited consciousness of guilt by falsifying a disciplinary report and incident report by intentionally omitting the fact that, in violation of

4

DOC and NCI policy, he entered the plaintiff's cell alone or without having notified his superior officer before entering the cell.

19.    Co-defendant C.O. Smiley further claimed to have gone to the plaintiff's cell to mop up the water that was poured into the vent in cell 216, however, a videotape showed that defendant C.O. Smiley had no mop but only a flashlight in his hand and there was in fact, no water in cell 216, the plaintiff's cell.

20.    The plaintiff being fully aware of defendants C.O. Smiley and Oglesby efforts to cover up the assault waited until first shift to bring the matter to co-defendant Captain Faneuff's attention.

21.    On August 31, 2001, the plaintiff and his cellmate repeatedly requested medical attention from staff to evaluate and document injuries inflicted by defendant C.O. Smiley. Staff ignored and deliberately denied the plaintiff medical attention.  As a result of said denial, the plaintiff covered the window to his cell door in order to draw attention to their plight.

22.    Co-Defendant Capt. Faneuff came to the cell and ordered the plaintiff and Nedweden to uncover the window or he would mace the cell.  The plaintiff complied and explained the events that occurred with defendant C.O. Smiley and Oglesby.  We told defendant Faneuff to review the surveillance camera videotape to substantiate our claims.

23.    Defendant Capt. Faneuff said he reviewed the videotape after coming back to cell 216 after getting co-defendant Nurse Nordell to give the plaintiff and Nedweden a medical evaluation.

24.   At that time the plaintiff handed his grievance to co-defendant Capt. Faneuff. This co-defendant then stated that he was going to document the incident and state that the plaintiff's injuries were a result of "Horse playing" in the cell.

25.   Co-defendant Capt. Faneuff stated in his report that no injuries were observed on the plaintiff's face then contradicted himself by stating later, that minor injuries were observed on the plaintiff.

26.   The plaintiff was told that the grievance he personally gave to Capt. Faneuff did not exist and consequently did not make it to the appropriate authorities; all of which designed to harm the plaintiff's reputation for truthfully reporting DOC employee physical abuse.

27.   Co-defendant Nordell substantiated the injuries inflicted on the plaintiff by defendant C.O. Smiley, however, in conspiracy with one or more co-defendants, Nordell falsified the medical incident report by stating, "altercation between cellmates R/U malingered/Feigned assault."

28.   Upon information and belief, Co-defendant Major Lajoie a superior officer and supervisor of co-defendants Faneuff and C.O. Smiley illegally allowed them to attempt to cover up the August 31, 2001 incident by permitting Faneuff and C.O. Smiley to file reports that were inconsistent with the facts, even though he knew it and did not punish or discipline them for so doing.

29.   On September 5, 2001, the plaintiff received a call via the cell intercom by defendant C.O. Smiley who ordered him to get ready to go to Court on the case for which he was being held in lieu of the payment of a bond.

6

30.     The Plaintiff was then escorted shortly after said call from 1 East unit cell 216 by co-defendant C.O. Farley.

31.     The plaintiff was escorted to the A/P room fully restrained, i.e., leg irons and handcuffs connected with a tethered chain.

32.     Upon arriving in the A/P room, the plaintiff was placed in the cell number four which is famous for being the place were confined people like the plaintiff were subjected to assaults by guards because this cell was and is without a surveillance camera trained on it like cells one (1) through three (3).  Upon information and belief, the cells with the video cameras trained upon them could have accommodated the plaintiff.

33.     Co-defendant C.O. Farley told the plaintiff to kneel on the bench facing the wall, with the plaintiff's back to the cell door, which is proper procedure, so that he could remove the leg irons and tethered chain.

34.     As the plaintiff was kneeling facing the wall, he heard another person enter the cell and immediately felt a huge debilitating slap to his right ear and facial area, causing extreme pain.

35.     The plaintiff was then choked by defendant C.O. Smiley who stated to the plaintiff, "Who's the nigger now; huh?" "Who's the nigger now—you punk motherfucker. You do or say anything about what I did to you and your punk-ass celly, (referring to the August 31st, 2001 incident) I'm going to make your life miserable.  Don't you know I can get away with murder if I wanted to."  Thereafter, defendant Smiley spat in the face of the

plaintiff while still choking the plaintiff and slapped the back of the plaintiff's head extremely forcefully.

36.    Co-defendant C.O. Farley just watched and did nothing to intervene to assist the plaintiff, but instead operated as a look out for co-defendant C.O. Smiley in an effort to assist C.O. Smiley.

37.    At this time, the plaintiff is still handcuffed in the back and thus defenseless.

38.    As plaintiff remained in the kneeling position on the bench as co-defendant C.O. Smiley repeatedly spat in the plaintiff's face while choking him.

39.    Co-defendant C.O. Farley was present not more than 10 feet away from this assault and he simply watched and did nothing to intervene to protect me.

40.    Thereafter, the co-defendant C.O. Smiley, after forcefully slapping the plaintiff in the back of the head, choking him, spitting on the plaintiff and threatening him, C.O. Farley exited the cell at or around 08:24:42 hours and at or around 08:25:56 hours leaving the plaintiff in the kneeling position with spittle on his face and in pain from his ear, facial area and throat.  Once the cell door closed and the plaintiff was alone in the cell, he got up.

41.    The plaintiff then went to the cell door to have the handcuffs removed were co-defendant C.O. Smiley was located awaiting the plaintiff to remove the handcuffs.  The handcuffs were never removed.

42.    The plaintiff approached the cell door and noticed defendant Lt. Salius standing behind defendant C.O. Smiley.

8

43.    Upon information and belief, co-defendant Lt. Salius watched the entire incident and did nothing to intervene and protect the plaintiff and/or discipline co-defendants Smiley and Farley, his subordinates.

44.    The plaintiff, thereupon informed defendant Lt. Salius of C.O. Smiley's attack upon him and Lt. Salius ignored the plaintiff's complaint and his demand for medical attention.

45.    From the locked cell door, the plaintiff, still handcuffed behind his back, spat in defendant C.O. Smiley's face.

46.    Thereafter, co-defendant Lt. Salius in complete dereliction of his duty, allowed defendant C.O. Smiley to reenter the cell and violently lunge at the plaintiff, then bang the handcuffed plaintiff's head into the wall while repeatedly punching his body and head as the plaintiff was taken to the floor, picked up off of the floor and while being placed on a cell bench.

47.    All the while, the plaintiff yelled for Lt. Salius to help him as defendant C.O. Smiley jammed his knee into the handcuffed plaintiff's back, while ramming his fingers into the plaintiff's neck and throat not in a manner, which was not consistent with a good faith attempt to maintain or restore discipline.

48.    Defendant Lt. Salius covered up the incident as if the plaintiff's life meant nothing by falsely reporting the incident.

49.    Lt. Salius falsely stated in his report that he never saw defendant C.O. Smiley assault the plaintiff.

9

50.    Defendant C.O.'s Smiley, Farley, Galinsky and/or Stewart who allegedly witnessed the plaintiff spit on defendant C.O. Smiley, failed to notify defendant Lt. Salius, nor did C.O. Smiley seek immediate medical treatment.

51.    Defendant Salius did not relieve C.O. Smiley immediately to obtain medical treatment nor did he stop C.O. Smiley from reentering the cell to further assault the plaintiff, who suffered injuries.

52.    Co-defendant Lt. Salius falsely reports that the plaintiff spat in defendant C.O. Smiley's face in retribution for the August 31, in his attempt to cover up the assault which C.O. Smiley perpetrated upon the plaintiff that occurred in cell four.

53.    Upon information and belief, co-defendant Major Coates prior to and/or on August 1, 2002, conspired and combined with other defendants in an attempt to minimize C.O. Smiley's exposure to liability for this incident.

54.    On September 5, 2001 Lt. Salius authored a report which concluded with the following paragraph: "Officer C.O. Smiley did unsecure, and acting on his own accord without direction entered the cell without first notifying this supervisor. Had he notified this supervisor a planned use of force reaction to incident could have been implemented. This supervisor recommends further review of this incident." When the plaintiff first got this report the aforementioned paragraph was deliberately covered to hide the incriminating evidence. On July 29, 2002, the plaintiff wrote Major Coates about the fact that the report he had had been redacted. On August 1, 2002, Maj. Coates falsely replied in writing that, "Items may be redacted for safety and security reasons." This false answer was simply an attempt to thwart

10

the plaintiff's constitutional rights to fully publish and protest his grievances consistent with his free speech rights and harm his reputation for reporting DOC employee abuse of prisoners.

55.    Defendants Galinsky and Stewart both provided falsified statements that they watched the plaintiff spit in defendant C.O. Smiley's face.

56.    Further, both co-defendants C.O. Galinsky and Stewart failed to stop defendant C.O. Smiley from reentering the cell to assault the plaintiff and failed to notify their superior, co-defendant Lt. Salius, who was in the A/P room that he should intervene.

57.    Defendant Young also submitted a false statement to cover up the incident in violation of the above.

58.    Defendant Capt. Zacharewicz who was not in the A/P room at the time of the assaults upon the plaintiff, submitted a false report of the incident in an effort to illegally assist the co-defendants with whom he was in conspiracy.

59.    Capt. Zacharewicz's report stated among other things; that a spit mask was used and justified the assault upon the plaintiff, however his report contradicted that of co-defendant Lt. Salius, who reported that no spit net/mask was available.  This, upon information and belief, illustrates co-defendant Capt. Zacharewicz's effort to combine with the other co-defendants to cover up the misconduct of the of the other correction officers and co-defendants.

60.    The plaintiff, for no justifiable reason, was beaten so severely and with such force and impact that he was left with no strength and was reduced to a state of semi-consciousness.

11

61.     Co-defendants Nurse Practioner Feinberg and Medical Supervisor Wollenhaupt failed to provide the plaintiff with adequate medical care as to both the August 31, 2001 and the September 5, 2001 incidents.

62.     Co-defendants Nurse Practioner Feinberg and Medical Supervisor Wollenhaupt falsified medical incident reports and medical charts to down play and minimize the injuries inflicted on the restrained plaintiff by defendant C.O. Smiley and staff.

63.     Pictures of the plaintiff's injuries clearly show contusions and abrasions to parts of the plaintiff's body while defendant Wollenhaupt and Feinberg fabricated their reports in conspiracy with the other co-defendants.

64.     On September 5, 2001, one or more of the co-defendant correction officers, spat and rammed their fingers into the neck and throat of the handcuffed plaintiff; while they delivered body blows upon the restrained plaintiff.

65.     The plaintiff informed co-defendant Majors Lajoie, Whidden, and Coates of C.O. Smiley's and the other co-defendant C.O.'s misconduct, however, in complete dereliction of their supervisory duties, failed to rectify the incident by ignoring the matter despite the fact that, upon information and belief, they were aware of C.O. Smiley's history of abusive misconduct toward other individuals in the custody of the Department of Corrections, such as inmate Kenneth Pladsen.

66.     Co-defendant Majors Coates, Whidden, Lajoie and Myers conspired to deny free speech rights and due process to the plaintiff and participated in an ongoing attempt to conspire to cover-up the defendants' physical abuse of the plaintiff, by not allowing the

12

plaintiff to defend himself in the disciplinary court; that is the denial of the opportunity to fight

the conspiratorially planned disciplinary action that also resulted in severe administrative

sanctions.

67.    The plaintiff filed a grievance on the September 5, 2001 beating which was

denied by co-defendant Myers in a flagrant attempt to cover up the beating.

68.    Defendant Oulette since taking over as grievance coordinator has deliberately

"lost" or denied receiving the plaintiff's level I or level II grievances submitted after being

denied by co-defendant Myers, hence, upon information and belief, Oulette conspired with the

defendants to hamper the plaintiff's efforts to exhaust his administrative remedies and illegally

suppress his rights to free speech.

69.    The plaintiff repeatedly wrote co-defendant Deputy Commissioner Matos

concerning grievance "141-01-531" that went unanswered, hence manifested an attempt

minimize and cover-up the assaults upon the plaintiff and represented an infringement of the

plaintiff's free speech rights.

70.    As a consequence of the actions of the defendants herein described, and the

omissions of the defendants, the plaintiff suffered humiliation, degradation, injury to his head,

noise, sinuses, impairment of vision, right knee, back, neck, chest, ribs, shoulders, wrists,

ankles, Achilles tendon, memory lapses, abrasions, a black eye, lacerations, bruises, swelling

to his head and to the side of his face and back, and contusions about his body, physical pain

and disability and fear for his life, creating mental and emotional anguish and distress and

injury to his reputation for the truthful reporting of DOC employee physical abuse of inmates.

13

71.    In the manner described above, the defendants, by uniting in an act which constituted a wrong to the plaintiff, and by performing it under the aforementioned circumstances which fairly charge them with the consequences which follow, incurred a joint and several liability for the acts of each and all of the joint participants.  All of the defendants actively participated in the above-described wrongful acts and misconduct by cooperation or request, and as to each act complained of, lent aid or encouragement to the wrongdoer, thus ratifying and adopting each wrongful act for their own.

72.    In the manner described in this Complaint, the defendants and each of them, separately and in concert, deprived the plaintiff of his rights to be free from illegally inflicted physical injury, to freedom of speech, freedom to petition for redress of grievances, right to privacy, right to bodily integrity, the right to be free from the conspiracy to conceal the abuse to which the plaintiff was subjected and otherwise deprive him of his civil rights and due process of law.  All of these rights are secured to the plaintiff by the provisions of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and by Title 42 U. S. C. §1983.

73.    The misconduct attributed to each of the defendants was a misuse of his authority that was personal to him and was not primarily employer rooted or reasonably incidental to the performance of employment duties, further, said misconduct was not designed to advance any interest of his employer, the State, and did not serve any legitimate State interest, rather the defendants' misconduct was motivated by purely personal considerations entirely extraneous to the employer's interest.

14

## COUNT TWO
## STATE LAW CLAIMS

1.      Pursuant to the provisions of 28 U. S. C. §1367, the supplemental jurisdiction of this Court is invoked as to the claims of this count, which arise under the Constitution, statutes and common law of the State of Connecticut.

2.      This is an action for money damages to redress the deprivation by the defendants of rights secured to the plaintiff by the State of Connecticut.  The co-defendants with the assistance, complicity and in conspiracy with each other, subjected the plaintiff to a violation of the plaintiff's rights to freely speak, write and publish his sentiments and or grievances under Art. I, §§4, 5 & 14 of the State Constitution and his right to adequate medical care, to be free from physical abuse and injury to his reputation for reporting DOC employee prisoner abuse under Art. I, §§7, 8, 9 & 10  of the State Constitution.  Moreover, the co-defendants with the assistance, complicity and in conspiracy with each other, subjected the plaintiff to battery, the intentional infliction of emotional distress, negligent infliction of emotional distress, negligence and false imprisonment.

3-73.  Paragraphs 3 through 73 of Count One are hereby incorporated as paragraphs 3-73 of Count Two.

74.     In the manner described above, the defendants and each of them committed a violation of the plaintiff's State Constitutional rights under Art. I, §§4, 5 & 14, to free speech, in that they attempted and were successful in that attempt, by inflicting upon the plaintiff without justification or excuse a suppression of his right and obligation to grieve all of the misconduct to which he was subjected during his confinement.  The acts and omissions of the

15

defendants, as outlined above, were the proximate cause of damages to the plaintiff as set out in paragraphs 66 through 73 in Count One, above. The plaintiff is protected against such conduct by the defendants under Connecticut law, the provisions of which are invoked under this Court's supplemental jurisdiction.

75.    In the manner described above, the defendants and each of them committed a violation of the plaintiff's State Constitutional rights under Art. I, §§7, 8, 9 & 10, to be free from governmental abuse, to the right to be secure in his person and reputation as previously pleaded, and the right to adequate medical treatment. The acts and omissions of the defendants, as outlined above, were the proximate cause of damages to the plaintiff as set out in paragraphs 66 through 73 in Count One, above. The plaintiff is protected against such conduct by the defendants under Connecticut law, the provisions of which are invoked under this Court's supplemental jurisdiction.

76.    In the manner described above, the defendants and each of them committed battery, in that they attempted with force and violence to do corporeal offense to the plaintiff, and were successful in that attempt, by inflicting upon the plaintiff's person severe physical injury without justification or excuse with respect to both the August 31, 2001 and September 5, 2001 incidents. The acts and omissions of the defendants, as outlined above, were the proximate cause of damages to the plaintiff as set out in paragraphs 66 through 73 in Count One, above. The plaintiff is protected against such conduct by the defendants under Connecticut law, the provisions of which are invoked under this Court's supplemental jurisdiction.

77.    In the manner described above, the defendants further committed the tort of intentional and/or negligent infliction of emotional distress, in that they intentionally, negligently and/or recklessly caused the plaintiff severe emotional distress by their intentional, extreme and outrageous conduct, as described above. The acts and omissions of the defendants, as outlined above, were the proximate cause of damages to the plaintiff as set out in paragraphs 66 through 73 in Count One, above. Therefore, the plaintiff is entitled to relief under the laws of Connecticut, and provision of which are invoked under this Court's supplemental jurisdiction.

78.    The defendants subjected the plaintiff to the tort of negligence in the performance of their correctional duties, in that they jointly and severally owed him a duty to protect him from injury, inasmuch as he was in their custody. Therefore, insofar as each defendant allowed the plaintiff to be subjected to illegal and tortuous conduct by the others, as detailed above, they are liable for their breach of the duty owed by a correctional officer to a person in his custody. The acts and omissions of the defendants, as outlined above, were the proximate cause of damage to the plaintiff as set out in paragraphs 66 through 73 in Count One, above. Therefore, the plaintiff is entitled to relief under the laws of Connecticut, and provision of which are invoked under this Court's supplemental jurisdiction.

79.    The defendants subjected the plaintiff to false imprisonment, in that they acted in a manner designed to illegally confine the plaintiff in punitive and administrative segregation, they forced him to be aware of his segregated status; lacking legal justification for the segregation, they had no privilege to so segregate him. The plaintiff's right to be free of

17

such treatment by duly authorized correctional officers is protected by the provisions of the laws of the State of Connecticut, which are invoked under this Court's supplemental jurisdiction.

   ***WHEREFORE***, the plaintiff, claims judgment against the defendants and each of them, jointly and severally, as follows:

      A.      Compensatory damages;

      B.      Punitive damages;

      C.      Attorney fees and costs of this action;

      D.      Issue the following prospective injunctive relief, as follows:

            1.    Remove the plaintiff from NCI immediately, place him in Webster C.I. in general population with all restored privileges.

            2.    Remove all disciplinary action taken against the plaintiff for his alleged conduct stemming from the August 31st and the September 5th, 2001 incidents from his institutional record and reinstate any and all credit, privileges and/or other rights he might have lost as a result of said discipline.

            3.    Immediately install a functioning video camera in cell number 4 of the AP room of NCI no later than 4 business days from the issuance of this order.

            4.    The Department of Corrections is ordered to institute a system of recorded receipts for all grievance stages, and,

      E.      Issue Declaratory relief pursuant to 28 U.S.C §§2201 and 2202, as follows:

            1.    The August 31st and the September 5th, 2001 physical assaults upon the plaintiff by C.O. Smiley constituted a violation of the plaintiff's rights under the 1st, 4th, 5th and 14th Amendments to the U.S. Constitution, of Art. I, §§4th, 5th, 7th, 8th, 9th, 10th and 14th of the Connecticut Constitution and constituted a battery, the

18

intentional infliction of emotional distress, negligent infliction of emotional distress, negligence and false imprisonment, and

2. That the remainder of the co-defendants pleaded herein violated plaintiff's rights under the 1st, 4th, 5th and 14th Amendments to the U.S. Constitution, of Art. I, §§4th, 5th, 7th, 8th, 9th, 10th and 14th of the Connecticut Constitution and constituted a battery, the intentional infliction of emotional distress, negligent infliction of emotional distress, negligence and false imprisonment through their physical assault upon the plaintiff, their failure to protect the plaintiff, their failure to provide medical care to the plaintiff, their concerted efforts to cover up the violations of the plaintiff's rights by suppressing his grievance rights and by other means previously pled herein; and

F. Such further relief as this Court deems appropriate to award.

RAMON LOPEZ
THE PLAINTIFF

BY: _____

**ATTY. ERSKINE D. McINTOSH
FEDERAL BAR NO. CT 09743
THE LAW OFFICES OF ERSKINE D. McINTOSH, P.C.
3129 WHITNEY AVENUE, SECOND FLOOR
HAMDEN, CT 06518-2364
(203) 787-9994
FAX (203) 848-1213**

**COUNSEL FOR THE PLAINTIFF**

**C E R T I F I C A T I O N**

This is to certify that a copy of the foregoing was sent by first-class mail, postage prepaid on this the _30_ day of March, 2004 to:

Atty. Robert F. Vacchelli
Assistant Attorney General
110 Sherman Street
Hartford, Conn. 06105

_____
**ATTY. ERSKINE D. McINTOSH**

19 Complaint-Amended-Lopez

19