UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAMON LOPEZ | : | NO. 3:02CV1020(RNC)(DFM) |
| | : | |
| VS. | : | |
| | : | |
| JAMES SMILEY, ET AL. | : | NOVEMBER 24, 2004 |

**MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION FOR RECONSIDERATION AND SUPPLEMENTAL MOTION**

The following is submitted in response to plaintiff's Motion for Reconsideration dated November 8, 2004, and Supplemental Motion for Reconsideration dated November 11, 2004, both aimed at requesting the court to reconsider it Ruling and Order dated October 5, 2004. The subject Ruling and Order, in part, rejected plaintiff's effort to amend his complaint to re-allege and supplement claims dismissed on September 22, 2003. In this light, plaintiff's Motions are his second attempt to add dismissed claims, and the court's third review of the matter. Motions for Reconsideration are normally required to be filed within 10 days of the decision from which relief is sought. Local Rule 7(c), Rules of the United States District Court. This is grounds enough to deny the instant Motions. Moreover, the arguments lack merit. Three issues are raised by plaintiff's motions. They are addressed seriatim:

**Did the Trial Court err in ruling that a <u>Binette v. Sabo</u> cause of action may be brought only against a defendant in his official capacity?**

Plaintiff continues to press his effort to amend his complaint to add claims against the defendants based on a variety of state constitutional provisions. Plaintiff insists that a cause of

action exists for such an effort under the case of Binette v. Sabo, 244 Conn. 23 (1998). The Court ruled against plaintiff on the grounds that, in the instant case, the defendants were being sued in their individual capacities, but that a Binette cause of action may only be brought against defendants in their official capacities. Ruling and Order of October 5, 2004 at p. 3. We urge the court to continue to deny any Binette claims in this case.

The state of the law on this point is, at best, murky. As the trial court correctly noted, in Martin v. Brady, 261 Conn. 372, (2002), the Connecticut Supreme Court clearly stated that Binette v. Sabo did not apply where the defendants were sued in their individual capacities. Martin v. Brady, supra at 374. This suggests that Binette v. Sabo applies only to official capacity lawsuits. Yet, the Martin v. Brady decision went on to dismiss the case on the grounds that the defendants were immune under Conn. Gen. Stat. § 4-165. Later, the Supreme Court suggested, in dicta, that a Binette v. Sabo case might be brought against defendants in either official or individual capacities. See State v. Brocuglio, 264 Conn. 778, 790 (2003). The debate is moot in this case. It is now beyond cavil that, under Connecticut law, an action for money damages cannot be brought against state defendants in their official capacities. Miller v. Egan, 265 Conn. 301, 325 (2003); Prigge v. Ragaglia, 265 Conn. 338, 349 (2003). And, as Martin v. Brady ruled, state defendants, in context like that presented in the instant case, sued in their individual

capacities under Martin v. Brady have Conn. Gen. Stat. § 4-165 immunity from claims of excessive force, failure to protect and battery and the like[1].

---

[1] The Connecticut Supreme Court, in Martin v. Brady, 261 Conn. 372, 802 A.2d 814 (2002), taught that where an officer's alleged conduct falls within the scope of his or her employment, and is not wanton, reckless or malicious, they are immune from suit under state law claims, including any alleged Binette v. Sabo type claims. Martin v. Brady, supra at 378 citing Conn. Gen. Stat. § 4-165.

In Martin v. Brady, the defendant police officers were accused of (1) forcibly entering the plaintiff's home without a search warrant, striking and pushing him to the floor after he submitted to arrest, (2) searching his home pursuant to a search warrant obtained pursuant to a false affidavit, and (3) during that search, smashing windows and breaking down doors. Nevertheless, the court ruled that these allegations fell within the scope of their employment or within their "granted statutory authority." Id. at 377. In this regard, the court tested the nature of the alleged conduct and its relation to the duties incidental to the employment, i.e., whether the alleged conduct was designed to advance any interest of the employer or served any legitimate state interest, as opposed to being motivated by "purely personal considerations entirely extraneous to his employer's duties." Ibid. at 378. In Martin, the court concluded, "None of these actions was arguably outside the scope of their employment as state police officers. The arrest of the plaintiff was sought for legitimate government interests … there was no allegation of misuse of governmental authority for personal gain … nor was there any allegation of extraneous manipulation of governmental authority in order to justify erroneous conduct …" Id. at 379.

Similarly, with regard to the inquiry as to whether the defendants' conduct in Martin v. Brady was "wanton, reckless or malicious", the court held it was not, employing the following test:

In order to establish that the defendants' conduct was wanton, reckless, willful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's action …[Such conduct] is more than negligence, more than gross negligence …[I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them …It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action …[in sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."

Martin v. Brady, supra at 379 (Citations an internal quotations omitted).

The court found no reason to infer, from these allegations, that the defendants' conduct was indicative of such a state of mind that the conduct rose to the level of egregiousness necessary to be considered wanton, reckless or malicious. Similarly, in the instant case, the complaint alleges an event involving the use of force between officers and an inmate which the court has already found states a cause of action for excessive force and failure to protect, regardless of the merits or truth of the claim. Officers are authorized to use force on inmates inside prisons

Moreover, as we argued earlier, no <u>Binette v. Sabo</u> claim exists under the facts in this case.

In particular, plaintiff proposes to allege that the incidents of August 31 and September 5, 2001, violated his free speech and liberty due process rights under the Connecticut Constitution citing Conn. Const. Art. I, Secs. $4^2, 5^3, 7^4$ and $9^5$, entitling him to money damages. <u>See</u> proposed Amended Complaint of February 25, 2004 at p. 15, paras. 2 and 74 and at p. 16, para. 75. He claims a right to money damages pursuant to <u>Binette v. Sabo</u>, 244 Conn. 23, 41-51, 710 A.2d 688 (1998) and <u>Ward v. Housatonic</u>, 154 F.Supp.2d 339, 356 (D.Conn. 2001). These provisions do not give plaintiff a cause of action for money damages in this case.

<u>Binette v. Sabo</u> did not sanction lawsuits for money damages under all provisions of the Connecticut Constitution. To the contrary, that case specifically, and narrowly, created a cause

---

for a variety of lawful purposes. Conn. Gen. Stat. § 53-18(2). That plaintiff may be able to allege a tort does not bring the case outside of the defendants' immunity. <u>Shay v. Rossi</u>, 253 Conn. 134, 170-72, 749 A.2d 1147 (2000).

Accordingly, the plaintiff's proffered <u>Binette v. Sabo</u> claim does not state a claim upon which relief can be granted.

[2] Conn. Const. Art I, Sec. 4 provides:
   Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty.

[3] Conn. Const. Art. I, Sec. 5 provides:
   No law shall ever be passed to curtail or restrain the liberty of speech or of the press.

[4] Conn. Const. Art. I, Sec. 7 provides:
   The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; an no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation.

[5] Conn. Const. Art. I, Sec. 9 provides:
   No person shall be arrested, detained or punished, except in cases clearly warranted by law.

of action where local police enter a private home without a warrant and engage in egregious conduct.  See, ACT Partnership v. Town of Windham, 251 Conn. 597, 613, 741 A.2d 305 (1999).  The Binette case set forth several factors to be considered, on a case-by-case basis, in determining whether, in the future, any other causes of action for money damages would be recognized under the Connecticut Constitution:

> The factors to be considered include: the nature of the constitutional provision at issue; the nature of the purported unconstitutional conduct; the nature of the harm; separation of powers considerations and other factors articulated in Bivens and its progeny; the concerns expressed in Kelley Property Development, Inc.; and any other pertinent factors brought to light by further litigation.

Binette v. Sabo, supra at 48.

The Connecticut Supreme Court has rejected arguments that there should exist a cause of action for money damages under the Connecticut Constitution for due process violations.  Kelley Property Development, Inc. v. Town of Lebanon, 226 Conn. 314, 627 A.2d 909 (1993), or for intentional abuse of eminent domain powers.  ACT v. Town of Windham, supra.  To our knowledge, the Connecticut Supreme Court has never created a cause of action for money damages under the Connecticut Constitution for Connecticut inmates on any of fact circumstances described in plaintiff's proposed Amended Complaint.[6]  Consequently, plaintiff's proposal fails to state a claim upon which relief can be granted on these points.

---

[6] Plaintiff cites Ward v. Housatonic, 154 F.Supp.2d 339 (D.Conn. 2001) as sanctioning a private right of action for money damages under Connecticut Constitution Art. I, Secs. 3 through 5 and 14.  Id at 356.  However, the case

Plaintiff also seeks to allege a cause of action for money damages for violation of his free speech and due process liberty interests under Conn. Const. Art I, Sec. 8[7], 10[8] and 14[9], and to allege injury to his reputation.

With regard to the Connecticut Constitutional claims, as pointed out above, the Connecticut Supreme Court has not created any cause of action for money damages for inmates under the factual circumstance alleged in this case under the Connecticut Constitution to our knowledge. To the contrary, it has found no cause of action for money damages for due process violations. See, Kelley Property Development, Inc. v. Town of Lebanon, supra.

With regard to injury to reputation, it is apparently plaintiff's intent to allege that his reputation was injured when an unspecified person told him they had no grievance or grievance appeal from him on a certain points. See proposed, modified Amended Complaint of March 30, 2004 at p. 6, para. 26; p. 13 at para 68. He also proposes to claim that his reputation was injured when he received a copy of an incident report containing redactions for security reasons. Id. at p.

---

relied upon by Ward, Connecticut v. Linares, 232 Conn. 345, 655 A.2d 737 (1995), did not create a cause of action for money damages.

[7] Conn. Const. Art. I, Sec. 8 provides, in pertinent part, as follows:
   No person shall be compelled to give evidence against himself, nor be deprived of live, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed.

[8] Conn. Const. Art. I, Sec. 10 provides:
   All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay.

[9] Conn. Const. Art. I, Sec. 14 provides:
   The citizens have a right, in a peaceable manner, to assemble for their common good, and to apply those invested with the powers of government, for redress of grievances, or other proper purposes, by petition, address or remonstrance.

10, para. 54.  These proposed allegations do not state a claim upon which relief can be granted.  Any claim of harm to reputation depends upon the existence of a false and defamatory statement.  3 Restatement (Second) Torts § 558.  There must be a "stigma" imposed on plaintiff.  Schwartz v. Thompson, 497 F.2d 430 (2nd cir. 1974)  If the alleged defamatory words could not reasonably be considered defamatory in any sense, the matter becomes an issue of law for the court.  Charles Parker Co. v. Silver City Crystal Co., 142 Conn. 605, 612, 116 A. 2d 440 (1955) accord, Valmonte v. Bane, 18 F.3d 992, 999-1000 (2nd Cir. 1994).  The alleged statements in this case cannot reasonably be characterized as defamatory.

Moreover, damage to reputation by itself is not actionable under 42 U.S.C. § 1983.  Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).  Loss of reputation, to be actionable, must be coupled with some other legal right or legally protected status known as "stigma plus".  See, Neu v. Corcoran, 869 F.2d 662, 667 (2nd Cir. 1989); Van de velde v. Wearing, 2004 U.S. Dist. LEXIS 4295 (D.Conn. 2004).  In the instant proposal, the alleged defamation occurred in the course of plaintiff's requests for information from the agency, which was supplied.  The connection of the statements to any tangible deprivation or loss allegedly sustained by plaintiff is "too attenuated" to be actionable.  See, e.g., Nicholas v. O'Connor, 2000 U.S. App. LEXIS 3470 (2nd Cir. 2000).

For all of the foregoing reasons, we urge the Court to deny plaintiff's Motion to Reconsideration on his proposed Binette v. Sabo claims.

**Should plaintiff be allowed to amend his complaint to allege battery as to both the August 31, 2001 and September 5, 2001 incidents?**

The Trial Court has now twice ruled that plaintiff failed to exhaust his prison administrative remedies under the Prisoner Litigation Reform Act with regard to the August 31, 2001, incident, yet plaintiff asks the court to allow a battery claim under state law for both incidents. In deciding whether to allow a state law claim, the court is asked to exercise its supplemental jurisdiction. 28 U.S.C. § 1367.

The decision whether to exercise supplemental jurisdiction is within the discretion of the Court. Purgess v. Sharrock, 33 F.3d 134, 138 (2nd Cir. 1994); Kidder, Peabody & Co. v. Maxus Energy Corp. 925 F.2d 556, 563 (2nd Cir 1991) cert. denied 501 U.S. 1218 (1991). Supplemental jurisdiction applies "whenever the federal-law claims and state-law claims in the case derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349 (1988). (citations and quotation omitted).

In the instant case, the remaining federal claims consist of an incident occurring on September 5, 2001 in the AP room at Northern Correctional Institution when officers encountered plaintiff spitting at Officer Smiley. The first battery claim plaintiff wishes to add involves an incident on August 31, 2001 in his cell, that was dismissed by the Court. The events do no derive from the same common nucleus of operative fact, and the Court was correct in not allowing supplemental jurisdiction over a battery claim, and should not be added now.

Defendants deposed plaintiff on November 2, 2004, as to the events on September 5, 2001 only. If claims are added as to the August 31, 20001 incidents, discovery would need to be reopened.

On the other hand, a battery claim relating to the September 5, 2001 incident does derive from the same set of facts. Nevertheless, supplemental jurisdiction is a matter of discretion, not right. The court weighs the values of judicial economy, convenience, fairness and comity in deciding whether to allow the state law claim. <u>Carnegie-Mellon Univ</u>., <u>supra.</u>

Jury confusion is reason enough to deny supplemental jurisdiction. <u>In re Acquaculture Found. v. Hamel</u>, 183 F.R.D. 64, 67 (D. Conn. 1998). In the instant case, the duplicate instruction necessary for a battery claims, involving different vocabulary and definitions, over the same facts, would no doubt just complicate an otherwise straightforward claim and add nothing to plaintiff's remedy. Even if plaintiff prevails, he cannot be compensated twice for the same injury. Accordingly, the Court was correct in not allowing a battery claim with regard to the September 5, 2001 incident.

Finally, plaintiff argues that the Court should allow a battery claim in both incidents, just as it has allowed an intentional infliction of emotion distress claim in both incidents. Plaintiff's Motion for Reconsideration, p. 4. This is not an accurate description of the Court's Ruling of October 5, 2004. The Court allowed an intentional infliction of emotional distress claim only as to the September 5, 2001 incident, which involved the remaining defendants Smiley, Farley, Salinas, Galinsky and Stewart. <u>See</u> Ruling and Order at p. 4. The analogy fails.

**Did the plaintiff exhaust his prison administrative remedies with respect to the August 31, 2004, incident?**

In his Supplemental Motion for Reconsideration dated Novemeber 11, 2004, plaintiff asks the Court, for the third time, to find that he exhausted his prison administrative remedies, or be excused therfrom. The effort was denied twice before, and plaintiff's arguments have not grown more persuasive. To the contrary, his latest offerings are self-serving, post facto and unrelated to the claims in the case. Accordingly, his request should be denied, again.

For all of the foregoing reasons, we urge the Court to deny plaintiff's motions.

                                          DEFENDANTS,
                                          James Smiley, et al.

                                          RICHARD BLUMENTHAL
                                          ATTORNEY GENERAL

                                          BY:_____/s/_____
                                          Robert F. Vacchelli
                                          Assistant Attorney General
                                          Federal Bar No. ct05222
                                          110 Sherman Street
                                          Hartford, CT  06105
                                          Telephone No. (860) 808-5450
                                          Fax No. (860) 808-5591
                                          E-Mail: robert.vacchelli@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 24th day of November, 2004:

Erskine D. McIntosh, Esq.
Law Office of Erskine D. McIntosh, P.C.
3129 Whitney Ave., Second Floor
Hamden, CT 06518-2364

                                                       _____/s/_____
                                                       Robert F. Vacchelli
                                                       Assistant Attorney General