**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

RAMON LOPEZ, :
:
Plaintiff, :
: No. 3:02CV1020 (MRK)
v. :
:
JAMES SMILEY, et al., :
:
Defendants. :

**RULING AND ORDER**

Plaintiff, Ramon Lopez, a Connecticut inmate, brings this action primarily pursuant to 42 U.S.C. § 1983 against a number of correctional officers at the Northern Correctional Institution ("NCI") in Somers, Connecticut. Mr. Lopez claims that Officer James Smiley assaulted him on August 31, 2001 and again on September 5, 2001, in violation of federal and state law. Mr. Lopez further asserts that the other defendants were present during the alleged September 5, 2001 assault and that they failed to intervene to protect him, again in violation of federal and state law. Currently pending before the Court are Mr. Lopez's Motion for Reconsideration [doc. #108] and Supplemental Motion for Reconsideration [doc. #109], which pertain to Chief Judge Robert N. Chatigny's Ruling and Order of October 5, 2004 [doc. #104]. Also pending is Mr. Lopez's Motion to Amend the Second Amended Complaint [doc. #147], which raises many of the same issues as the motions for reconsideration.

For the following reasons, Mr. Lopez's motions for reconsideration [docs. #108 & #109] are GRANTED, and Mr. Lopez's Motion to Amend the Second Amended Complaint [doc. #147] is DENIED.

**I.**

On January 31, 2005, this case was transferred to the undersigned from Chief Judge Chatigny. Chief Judge Chatigny's Ruling and Order of October 5, 2004 [doc. #104] (the "October 5 Ruling") granted in part and denied in part Mr. Lopez's motion to modify his amended complaint [doc. #68] and denied Mr. Lopez's motion to substitute a party [doc. #83] as moot. Familiarity with the October 5 Ruling and the underlying facts of this case is presumed.

Over one month after issuance of the ruling, Mr. Lopez filed a motion for reconsideration [doc. #108] and a supplemental motion for reconsideration [doc. #109] (on November 10, 2004 and November 15, 2004, respectively). The Court notes – as correctly observed by Defendants in their Memorandum in Response to Plaintiff's Motion for Reconsideration [doc. #114] at 1 – that under Local Rule 7(c)(1) of the District of Connecticut, "[m]otions for reconsideration shall be filed and served within ten (10) days of the filing of the decision or order from which such relief is sought." D. Conn. L. Civ. R. 7(c)(1). Ordinarily, a failure to timely file a motion for reconsideration constitutes sufficient grounds for denying the motion. However, in this case, the Court will exercise its discretion to address Mr. Lopez's untimely motions for reconsideration, in view of the issues raised in the motions and since Defendants do not claim any prejudice from the delay. *See, e.g.*, *Kamasinski v. Judicial Review Council*, 843 F. Supp. 811, 812 (D. Conn. 1994) (Cabranes, J.) ("The defendants make several arguments in opposition to the plaintiff's motion for reconsideration, claiming first that it is untimely. The court, however, declines to deny the plaintiff's motion in such summary fashion."); *cf. Transaero, Inc. v. La Fuerza Aerea Boliviana*, 99 F.3d 538, 541 (2d Cir. 1996) ("[A] district court is vested with the power to revisit its decisions before the entry of final judgment and is free from the constraints of Rule 60 in so doing

. . . .").

**II.**

The standard for granting a motion for reconsideration is strict. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "Such a motion generally will be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* A "motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." *Horsehead Resource Dev. Co., Inc. v. B.U.S. Envtl. Serv., Inc.*, 928 F. Supp. 287, 289 (S.D.N.Y. 1996) (internal citations and quotations omitted). Furthermore, a "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

Mr. Lopez seeks reconsideration on the following grounds: (1) the October 5 Ruling misconstrued the Connecticut Supreme Court's holdings in *Binette v. Sabo*, 244 Conn. 23 (1998), and *Martin v. Brady*, 261 Conn. 372 (2002), and therefore Mr. Lopez should be allowed to press his claims for money damages and declaratory and injunctive relief based on violations of Article First, §§ 4, 5, 7, 8, 9, 10 and 14 of the Connecticut Constitution, (2) the October 5 Ruling does not take into account the Second Circuit's recent guidance in *Ziemba v. Wezner*, 366 F.3d 161 (2d Cir. 2004), regarding estoppel and exhaustion of administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, and therefore Mr. Lopez should be allowed to press his claims related to the alleged August 31, 2001 incident; and (3) the October 5 Ruling failed to consider Mr. Lopez's request to amend his complaint to bring state common law battery claims involving both the alleged August 31, 2001 incident and the alleged September 5, 2001

incident, and therefore Mr. Lopez should be allowed to press both these claims.

The Court will address each ground for reconsideration in turn.

**A.**

Mr. Lopez first asserts that the October 5 Ruling improperly interpreted *Binette v. Sabo* and *Martin v. Brady*, *supra*, as allowing Connecticut constitutional tort claims only when they are asserted against state employees in their official capacities. According to the Connecticut Supreme Court, "for some circumstances, [*Binette*] created a private cause of action for violations of article first, §§ 7 and 9, of the Connecticut constitution." *ATC P'ship v. Town of Windham*, 251 Conn. 597, 602-03 (1999). The October 5 Ruling stated that a "*Binette* cause of action may be brought against a person in his official capacity only." Ruling and Order of October 5, 2004 [doc. #104] at 3 (citing *Martin*, 261 Conn. at 374). The October 5 Ruling then denied Mr. Lopez's motion to add a *Binette* cause of action because Mr. Lopez was suing Defendants in their individual capacities, not in their official capacities. *See* Ruling and Order of October 5, 2004 [doc. #104] at 3.

As Defendants concede, however, "the state of the law on this point is, at best, murky." Defs.' Mem. in Resp. [doc. #114] at 2. For example, in *Martin*, the Connecticut Supreme Court stated that "at oral argument before this court the defendants conceded that, in the plaintiff's complaint, properly construed, he sued them in their individual, rather than their official, capacities, and that, therefore, *Binette v. Sabo*, was inapplicable." *Martin*, 261 Conn. at 374 (internal citation omitted).[1] However, as Defendants acknowledge, the Supreme Court in *Martin*

---

[1] The Court presumes that this quoted language is the portion of *Martin* cited in the October 5 Ruling. *See* Ruling and Order of October 5, 2004 [doc. #104] at 3.

dismissed the case on the ground that the defendants in that case were immune from suit under section 4-165 of the Connecticut General Statutes, which states in relevant part that "[n]o state officer or employee shall be *personally liable* for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment." Conn. Gen. Stat. § 4-165 (emphasis added); *see* Defs.' Mem. in Resp. [doc. #114] at 2. Furthermore, Defendants recognize that under Connecticut law, an action for money damages cannot be brought against state defendants in their official capacities. Defs.' Mem. in Resp. [doc. #114] at 2*; see Prigge v. Ragaglia*, 265 Conn. 338, 349 (2003) ("[T]he exception to the doctrine of sovereign immunity for actions by state officers in excess of their statutory authority applies only to actions seeking declaratory or injunctive relief, not to actions for money damages. When a plaintiff brings an action for money damages against the state, he must proceed through the office of the claims commissioner pursuant to chapter 53 of the General Statutes, §§ 4-141 through 4-165. Otherwise, the action must be dismissed for lack of subject matter jurisdiction under the doctrine of sovereign immunity.") (citing *Miller v. Egan*, 265 Conn. 301, 313 (2003)). Finally, as Defendants also concede, the Connecticut Supreme Court in *State v. Brocuglio*, 264 Conn. 778 (2003), explicitly stated (albeit in dicta) that "a victim of an illegal entry properly may file a civil action seeking a declaratory judgment, injunctive relief or, in certain circumstances, damages against the officers in their official or *individual capacity*." *Id.* at 790 (emphasis added); *see* Defs.' Mem. in Resp. [doc. #114] at 2. In view of the foregoing, Defendants all but admit that there are "controlling decisions or data that the court overlooked [in its October 5 Ruling] – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.

It is appropriate, therefore, for the Court to reconsider the October 5 Ruling in this regard. Upon reconsideration, the Court concludes that Mr. Lopez's request to amend his complaint to add claims arising from Defendants' alleged violations of Mr. Lopez's rights under Article First, §§ 4, 5, 7, 8, 9, 10, and 14 of the Connecticut Constitution is not barred by the mere fact that Mr. Lopez sued Defendants in their individual, as opposed to official, capacities. *See Martin*, 261 Conn. at 374; *Brocuglio*, 264 Conn. at 790; *Prigge*, 265 Conn. at 349. Having reconsidered the October 5 Ruling, however, the Court nonetheless denies Mr. Lopez's request to amend his complaint to assert a panoply of Connecticut constitutional claims for money damages. The Court reaches this conclusion because it is clear that Mr. Lopez is seeking to extend the narrow holding of *Binette v. Sabo*, *supra*, well beyond the limits established by the Connecticut Supreme Court in that case, and any decision to so substantially extend Connecticut constitutional law in this manner should be made in the first instance by the courts of Connecticut, not a federal court.

*Binette* created a narrow cause of action for money damages under the Article First, §§ 7 and 9 of the Connecticut Constitution for illegal searches and seizures of private homes by police officers, a cause of action that is equivalent to the federal *Bivens* action under the Fourth Amendment to the United States Constitution. *See Binette*, 244 Conn. at 47; *see also Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971) (A violation of a person's Fourth Amendment right to be free from unreasonable searches and seizures "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct."). In issuing that holding, the Connecticut Supreme Court "emphasize[d] that [its] decision to recognize a *Bivens*-type remedy in this case *does not mean that a constitutional cause of action exists for every violation of our*

*state constitution*." *Binette*, 244 Conn. at 47 (emphasis added).

It remains to be seen, therefore, whether and to what extent Connecticut courts will build upon *Binette*, though this Court is certain that by embracing *Bivens*, the Connecticut Supreme Court did not intend broadly to sanction lawsuits for money damages under every provision of the Connecticut Constitution and in every circumstance. *Cf. Hudson Valley Black Press v. IRS*, --- F.3d --- , 2005 WL 1253410 (2d Cir. May 27, 2005) (refusing to extend *Bivens* to a private cause of action for damages under the First Amendment); *Dotson v. Griesa*, 398 F.3d 156, 166 (2d Cir. 2005) ("Because a *Bivens* action is a judicially created remedy, however, courts proceed cautiously in extending such implied relief."). To the contrary, the Connecticut Supreme Court explained in *Binette* that

> [w]hether to recognize a cause of action for alleged violations of other state constitutional provisions in the future must be determined on a case-by-case basis. As in the present case, that determination will be based upon a multifactor analysis. The factors to be considered include: the nature of the constitutional provision at issue; the nature of the purported unconstitutional conduct; the nature of the harm; separation of powers considerations and the other factors articulated in *Bivens* and its progeny; the concerns expressed in *Kelley Property Development, Inc.* [*v. Town of Lebanon*, 226 Conn. 314 (1993)]; and any other pertinent factors brought to light by future litigation.

*Binette*, 244 Conn. at 48.

In the teeth of this clear guidance in *Binette*, Mr. Lopez asks this Court to recognize a broad array of novel (and to this Court's reading, questionable) causes of action for money damages based on numerous provisions of the Connecticut Constitution, but without citing a single Connecticut case in the prison litigation context in which courts have undertaken the multi-factor analysis described in *Binette* and implied the causes of action Mr. Lopez seeks to pursue in

this action.[2] In fact, outside of the prison litigation context, the Connecticut Supreme Court has expressly rejected many of the state constitutional tort claims that Mr. Lopez seeks to assert in this action. *See, e.g.*, *ATC P'ship*, 251 Conn. at 612-17 (no private cause of action for damages under Article First § 8); *Binette*, 244 Conn. at 31-32 (no private cause of action for damages under Article First § 10). *See also Ward v. Housatonic Area Reg'l Transit Dist.*, 154 F. Supp. 2d 339, 356 (D. Conn. 2001) ("The court finds that there is no private cause of action for monetary damages under the equal protection and due process provisions [Art. First, §§ 1, 8 and 20] of the Connecticut Constitution. In addition, the court could find no precedent supporting a private

[2] Though his state constitutional claims for money damages under Article First, §§ 7 and 9 are brought under the same constitutional provisions as asserted in *Binette*, Mr. Lopez could point to no Connecticut case that allowed a *prisoner* to seek monetary damages under *Binette* for alleged physical abuses while in prison. In fact, the only reported Connecticut state court decision concerning a prisoner's constitutional tort claims against his guards narrowly construed *Binette* and declined to recognize a prisoner's damages action under Article First, § 9 because of the availability of an alternative remedy crafted by the state legislature. *See Torres v. Armstrong*, No. CV990427057S, 2001 WL 1178581, at *7 ("The plaintiff may bring a claim for money damages against the state under General Statutes §§ 4-141 through 4-165b by filing his claims with the claims commissioner. . . . This court, therefore, declines to recognize [a] damages action[] under the Connecticut . . . constitution[] under the circumstances of this case."). *Cf. Washington v. Meachum*, 238 Conn. 692, 719-20 (1996) ("The text of article first, § 7, contains no indication that the framers of our constitution intended it to provide greater protection of inmate privacy rights than the fourth amendment to the federal constitution. The texts of the two provisions are virtually identical. There is nothing in the text of article first, § 7, that warrants an expansive view of its protection when applied to prison inmates."). As for Mr. Lopez's free speech claims brought under Article First, §§ 4, 5 and 14, the Court notes that while the Connecticut Supreme Court has recognized a private cause of action seeking declaratory or injunctive relief under these provisions, *see, e.g.*, *Leydon v. Town of Greenwich*, 257 Conn. 318, 333-34 (2001); *Ramos v. Vernon*, 254 Conn. 799, 811-12 (2000); *State v. Linares*, 232 Conn. 345, 379-387 (1995), Mr. Lopez has cited no case in which a Connecticut state court recognized a similar constitutional tort claim for money damages. *But see Downing v. West Haven Bd. of Educ.*, 162 F. Supp. 2d 19, 22 n.2 & 30-32 (D. Conn. 2001) (in a case where plaintiff explicitly sought only money damages, court implicitly recognized plaintiff's cause of action under Article First, §§ 4, 5 and 14 of the Connecticut Constitution for money damages, yet granted defendants summary judgment on these claims on other grounds).

cause of action under Article First, Section 2.") (citing *Kelley Prop. Dev.*, 226 Conn. at 339); *Torres v. Armstrong*, No. CV990427057S, 2001 WL 1178581, at *5-*7 (Conn. Super. Sept. 6, 2001) (refusing to recognize prisoner plaintiff's claims for money damages and injunctive relief brought directly under, *inter alia*, Article First, §§ 1, 4, 8, 9, 14 and 20 of the Connecticut constitution).

Thus, Mr. Lopez wants this federal court to recognize an entire suite of novel Connecticut constitutional tort causes of action for state prisoners in the absence of any guidance from (and in some instances, in express defiance of) Connecticut decisional law. This Court will not entertain Mr. Lopez's request. When faced with state law claims that "raise[] novel and complex issues of state law," a district court, in its discretion, may decline to exercise supplemental jurisdiction over such claims. According to the Second Circuit, "[a]lthough the doctrine of pendent jurisdiction is one of flexibility and discretion, it is fundamental that '[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.' " *Young v. New York City Transit Auth.*, 903 F.2d 146, 163-64 (2d Cir. 1990) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)). *See also Sullivan v. Metro-North R.R. Co.*, 179 F. Supp. 2d 2, 6 (D. Conn. 2002) ("Jurisdiction is also often declined to avoid construction of a state constitutional provision.") (citing *Young*, 903 F.2d at 164). Furthermore, "[a] district court ought not 'reach out for . . . issues, thereby depriving state courts of opportunities to develop and apply state law.' " *Young*, 903 F.3d at 164 (quoting *Mayer v. Oil Field Systems Corp.*, 803 F.2d 749, 757 (2d Cir. 1986)). *See also Lajoie v. Conn. State Bd. of Labor Relations*, 871 F. Supp. 550, 554 (D. Conn. 1994) ("[I]t therefore appears that this hotly-disputed state law issue . . . is without state precedent or

direction. For this court to decide such a novel and significant, but as yet unresolved, issue of state law would amount to no more than a mere prediction of subsequent state law developments – 'a tentative answer which may be displaced tomorrow by a state adjudication.' ") (quoting *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)).

Mr. Lopez's state constitutional claims are clearly novel, they are complex, and they are not well developed under Connecticut law. In light of the Connecticut Supreme Court's explicit statement in *Binette* that the Supreme Court did not intend to create a cause of action for money damages for every alleged violation of the Connecticut state constitution, *see Binette*, 244 Conn. at 47, and the fact that federalism and comity concerns strongly suggest that recognition of new state constitutional torts should be determined on a case-by-case basis by *Connecticut courts* in the first instance, this Court will refrain from exercising supplemental jurisdiction over all of Mr. Lopez's Connecticut constitutional claims (both those seeking monetary damages and those seeking injunctive or declaratory relief). As the United States Supreme Court observed over two decades ago in *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984),

> [a] federal court's grant of relief against state officials on the basis of state law . . . does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

*Id.* at 106; *see Smith v. Carrasco*, 334 F. Supp. 2d 1094, 1099 (N.D. Ind. 2004) ("[Plaintiff] is asserting state constitutional claims as they apply to convicted prisoners, on which there is apparently no state created precedent. Retaining this claim may require the Court to embark on an interpretation of Indiana's Constitution virtually unguided by state court precedent. As a matter of

comity whether the acts in question violate Indiana's Constitution are best left to the province of Indiana's state court judges. Pursuant to 28 U.S.C. § 1367(c)(1), this court will decline to exercise supplemental jurisdiction over [Plaintiff's] Indiana constitutional claims, and will dismiss those claims without prejudice to his right to bring them in state court.") (internal quotations and citations omitted).

Accordingly, while the Court has reconsidered the October 5 Ruling, the Court nonetheless denies Mr. Lopez's request to amend his complaint to assert his state constitutional claims, without prejudice to his right to bring these claims in state court. In a supplementary brief, Mr. Lopez suggested that this Court certify the question of whether Connecticut courts would recognize his Connecticut constitutional claims for money damages. *See* Pl.'s Third Supplementary Rebuttal [doc. #95] at 1. Under Connecticut's Uniform Certification of Questions of Law Act, a district court may certify a question to the Connecticut Supreme Court where a question of Connecticut law is determinative of an issue in the pending litigation and there is no controlling precedent. *See* Conn. Gen. Stat. § 51-199b; *Israel v. State Farm Mut. Auto. Ins. Co.*, 239 F.3d 127, 135 (2d Cir. 2000) ("Connecticut law allows for the certification of questions of state law by the federal courts directly to the Connecticut Supreme Court."). However, the decision to certify a question of law to the Connecticut's highest court is within this Court's discretion. *See, e.g.*, *Minn. Mut. Life Ins. Co. v. Ricciardello*, No. 3:96CV2387 (AHN), 1998 WL 241216, at *2 (D. Conn. May 4, 1998); *Hume v. Hertz Corp.*, 628 F. Supp. 763, 767 (D. Conn. 1986). The Court declines to exercise its discretion to certify these issues to the Connecticut Supreme Court in light of the fact that in this case, the better course is to allow these novel state constitutional claims to run their orderly course in the state courts by declining to

exercise supplemental jurisdiction over them. *Cf. Bethphage Lutheran Service, Inc. v. Weicker*, 965 F.2d 1239, 1246-47 (2d Cir. 1992) ("[W]e think [the certification] procedure is best used for obtaining an authoritative state law ruling that affects the merits of a federal law suit, and should be used sparingly, if at all, merely to resolve a threshold issue that concerns only whether the suit must proceed in federal court. Rather than submit the challenge . . . directly to the Connecticut Supreme Court, we think the sounder procedure is to . . . permit the litigation to run its orderly course in the state courts . . . .").

**B.**

Mr. Lopez's second ground for reconsideration is that the October 5 Ruling failed to follow the Second Circuit's recent guidance regarding exhaustion of administrative remedies under the PLRA. The Court notes at the outset that the dispute over whether Mr. Lopez exhausted his administrative remedies regarding the alleged August 31, 2001 incident is well-tread ground in this case, having been addressed by Chief Judge Chatigny both in his Ruling and Order dated September 22, 2003 [doc. #39] and in his October 5 Ruling [doc. #104]. Normally, therefore, there would be no basis for this Court to re-litigate this issue on a motion for reconsideration. *See Shrader*, 70 F.3d at 257. However, the legal landscape in the Second Circuit surrounding the exhaustion requirements under the PLRA has shifted quite considerably in recent months, and there are controlling decisions which might reasonably be expected to alter the conclusion reached previously. *See id.* Therefore, the Court will reconsider the exhaustion issue.

"It is now well-settled in this circuit that exhaustion under the PLRA is not jurisdictional, and that it is an affirmative defense." *Ziemba*, 366 F.3d at 163 (citing *Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003); *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999)). The

Second Circuit recently issued five consolidated opinions – *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004), *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004), *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), *Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004), and *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) – which address the nature and scope of the PLRA's exhaustion requirement. These five cases together established a three-part inquiry which district courts should use to analyze whether a prisoner plaintiff – such as Mr. Lopez – has countered an affirmative defense of failure to exhaust available administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a). As stated in *Hemphill*,

> [d]epending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether "special circumstances" have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements.

*Hemphill*, 380 F.3d at 686 (internal citations and quotations omitted). *See also Abney*, 380 F.3d at 667 ("To be 'available' under the PLRA, a remedy must afford 'the possibility of some relief for the action complained of.' ") (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). Of particular relevance to this case is whether Mr. Lopez "claim[s] that estoppel bars the State's assertion of the exhaustion-defense," *Ziemba*, 366 F.3d at 163-64, and whether "special circumstances" have been plausibly alleged that would justify Mr. Lopez's failure to comply with the prison's administrative procedural requirements.

Though the record on the estoppel issue is somewhat confused, both sides appear to recognize that under *Ziemba*, "deliberate obstruction [of] access to the grievance system, if proven, can be a grounds for estoppel against the enforcement [of the exhaustion requirements] of the PLRA." Defs.' Mem. in Opp'n [doc. #149] at 6 (citing *Ziemba*, 366 F.3d at 163). *See also* Pl.'s Supplementary Rebuttal [doc. #93] at 4 ("[P]laintiff asserts that pursuant to the opinion of [*Ziemba*] . . . the defendants [should] be estopped from asserting the allegation of failure to exhaust as a defense and a jurisdictional bar."); Pl.'s Second Supplementary Rebuttal [doc. #94], at 2 ("Hence, the defendants ought to be estopped from asserting any alleged PLRA grievance deficiency consistent with [*Ziemba*]."). Both sides also appear to agree that Mr. Lopez sufficiently pleaded his estoppel claim in one or more of the many *pro se* and counseled complaints and amended complaints that he has filed in this case. *See, e.g.*, Defs.' Supplement to Mem. in Opp'n [doc. #92] at 1 ("[P]laintiff's proposed allegation – that he filed a grievance with Captain Faneuff concerning his assault and abuse on August 31, 2001, and that the existence of that grievance was later denied – . . . [is] contained in the proposed Second Amended Complaint, as modified, dated March 30, 2004 at [¶¶ 24 & 26]. Defendants submit that these same allegations were, in substance, contained in plaintiff's First Amended Complaint dated August 1, 2002 at [¶¶ 9, 19, 38, 66, 67, 69, and ¶ 4 of both the Seventh and Eighth causes of action].") (internal citations omitted); Pl.'s Supplementary Rebuttal [doc. #93] at 3 ("[T]he plaintiff's proposed second amended complaint, filed on April 1, 2004, asserts that his grievance concerning the August 31, 2001 attack upon him <u>was suppressed</u> by one or more of the defendants thereby doing him injury.") (emphasis in original).

Therefore, the estoppel issues raised by Defendants' alleged suppression of Mr. Lopez's

grievance of the alleged August 31, 2001 incident are properly before this Court. According to *Ziemba*, consideration of a prisoner's estoppel claim "will require the court to look beyond the pleadings and the documents attached to the pleadings," and thus this Court "must allow factual development and address the estoppel claim at the summary judgment stage." *Ziemba*, 366 F.3d at 164. Further, in compliance with the Second Circuit's consolidated decisions in *Ortiz*, *Abney*, *Giano*, *Hemphill*, and *Johnson*, the Court will also allow for factual development of whether any special circumstances justify Mr. Lopez's failure to comply with the administrative procedural requirements. *See Giano*, 380 F.3d at 676 ("[T]here are certain 'special circumstances' in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified."). This is not to say that Mr. Lopez will ultimately be able to present sufficient facts to survive a motion for summary judgment regarding his attempts to grieve the August 31, 2001 incident. Rather, at this stage and without a more fully developed factual record, the Court cannot say that Mr. Lopez can prove no set of facts in support of his estoppel or special circumstances claims regarding the August 31, 2001 incident.[3]

---

[3] In this regard, the Court notes that attached to one of Mr. Lopez's many filings is an October 25, 2001 "Inmate Request Form" from Mr. Lopez to (former) Defendant Lieutenant Manley, sent two months after the alleged August 31, 2001 incident and at least eight months before Mr. Lopez filed this lawsuit. *See* Pl.'s Second Supplementary Rebuttal to Defs.' Objection to Pl.'s April 1, 2004 Second Am. Compl. [doc. #94], at Addendum I. This Inmate Request Form, which had not been previously produced in the record before the Court, is a written complaint from Mr. Lopez to Lt. Manley, which states as follows:

> Dear Lt. Manley, I have a huge dilema [*sic*], Capt. Fanueff, Griev. Coor., and the majors, keep ignoring my letters and request on the whereabouts of the level 1 & level 2 grievances on C/O Smiley coming in my cell during 3rd shift and assaulting

Thus, having reconsidered the October 5 Ruling, the Court vacates its decision to dismiss Mr. Lopez's federal constitutional claims under § 1983 based on the alleged August 31, 2001 incident.

**C.**

Mr. Lopez's third ground for reconsideration is that the October 5 Ruling overlooked his state law tort claim of battery for both the August 31, 2001 and the September 5, 2001 incidents. Upon closer inspection, Mr. Lopez is correct that his Second Amended Complaint [doc. #68] explicitly states a common law claim for battery, *see id.* at ¶ 76, which was apparently overlooked in the October 5 Ruling. *See generally* Ruling and Order of October 5, 2004 [doc. #104] at 4-5. Therefore, the Court will reconsider Mr. Lopez's state law battery claim.

Because Mr. Lopez has sufficiently pleaded a claim for battery for both the alleged incidents on August 31, 2001 and September 5, 2001, and this tort claim is not barred by statutory immunity or the exhaustion requirements of the PLRA, the Court will allow Mr. Lopez to pursue his state law battery claims for both the August 31, 2001 and September 5, 2001 incidents if he wishes to pursue those state law claims in this Court. Furthermore, in light of the fact that Mr. Lopez's § 1983 claims based on the alleged August 31, 2001 incident have returned to this case (at least for now), the Court will also allow him to revive his state law tort claim of

---

> me and my celly on 8-31-01, and I was hoping you can help me get relief of phone sanctions, so I can call my family. Please help me!

*Id.* (emphasis in original). On November 2, 2001, Lt. Manley responded to Mr. Lopez, saying: "I understand your dilema [*sic*], you have to write Warden Myers for relief of your sanctions." *Id.* While by no means dispositive of the issue, this document highlights the need for further factual development regarding Mr. Lopez's attempts to exhaust his administrative remedies regarding the August 31, 2001 incident.

intentional infliction of emotional distress for the August 31, 2001 incident if he wishes to pursue that claim in this Court.

Thus, Mr. Lopez has two viable state law tort claims – intentional infliction of emotional distress and battery – for both the alleged August 31, 2001 incident and the alleged September 5, 2001 incident. Nevertheless, in view of the fact that Mr. Lopez will now have to bring his Connecticut constitutional tort claims in state court, the Court invites Mr. Lopez to consider whether it would be more sensible to pursue the state common law tort claims in the same state court action.

**III.**

Mr. Lopez has recently filed yet another Motion to Amend the Second Amended Complaint [doc. #147]. In part, this latest motion to amend seeks the same result as his motions for reconsideration – that is, Mr. Lopez wishes to add claims arising out of the August 31, 2001 incident. These claims were addressed at length in Part II.B, *supra*, and need not be addressed again here. Thus, Mr. Lopez's most recent motion to amend his complaint [doc. #147] is denied as moot insofar as it seeks to assert claims and add Defendants related to the August 31, 2001 incident.

However, Mr. Lopez's latest Motion to Amend [doc. #147] also seeks to add additional defendants and claims related to a new factual incident – an alleged incident of retaliation primarily stemming from a news report on January 29, 2005 regarding Mr. Lopez's conversations with Michael Ross (a former inmate on Connecticut's death row). *See id.* at ¶¶ 70-93. "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing

party." *Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Koehler v. Bank of Bermuda (New York) Ltd.*, 209 F.3d 130, 138 (2d Cir. 2000)).

In considering Mr. Lopez's latest request to expand this lawsuit, the Court is influenced by the following facts: (1) these new claims are unrelated to the nucleus of facts surrounding the alleged August 31, 2001 and September 5, 2001 incidents and would only create confusion should this case eventually reach trial; (2) beginning a new round of discovery on these unrelated issues would unfairly prejudice Defendants; and (3) allowing these new claims would cause undue delay in the resolution of Mr. Lopez's original claims, which, frankly, have been delayed far too long as it is. Thus, the Court denies Mr. Lopez's motion to amend his complaint [doc. #147] to assert claims stemming from the January 29, 2005 news report, without prejudice to Mr. Lopez's right to pursue these claims in a separate action. *See, e.g.*, *Stiller v. Colangelo*, 221 F.R.D. 316, 317 (D. Conn. 2004) ("[I]f the court finds that the issues raised by the amendment are remote from the other issues in the case and might confuse or mislead the jury, leave to amend may well be denied.") (internal quotations and citation omitted). As the district court noted in *Amaker v. Haponik*, 198 F.R.D. 386 (S.D.N.Y. 2000),

> [t]o allow [prisoner-plaintiff] to amend or supplement his complaint at this point would require the defendants to devote substantial additional resources to discovery and trial preparation and significantly delay the resolution of [prisoner-plaintiff's] current claims. Thus, the [prisoner-plaintiff's] motion to amend his complaint is likely to cause undue delay and must be denied for that reason.

*Id.* at 390 (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993); *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).

**IV.**

In summary, the Court issues the following rulings and orders:

(1) Mr. Lopez's Motion for Reconsideration [doc. #108] and Supplemental Motion for Reconsideration [doc. #109] are GRANTED. Having reconsidered the October 5 Ruling [doc. #104], the Court denies Mr. Lopez's motion to amend his complaint to raise state constitutional tort claims. Mr. Lopez's federal constitutional claims under § 1983 and state tort claims of intentional infliction of emotional distress and battery regarding *both* the August 31, 2001, and September 5, 2001 incidents shall remain in the case, without prejudice to Defendants' future filing of a motion for summary judgment on any or all of these claims.

(2) The Court DENIES Mr. Lopez's Motion to Amend the Second Amended Complaint [doc. #147].

(3) The Court DENIES AS MOOT Mr. Lopez's unopposed motion for extension of time [doc. #136].

(4) The Court VACATES its Referral [doc. #133] of Defendants' Motion for Protective Order and Motion to Quash [doc. #130] to Magistrate Judge Donna F. Martinez.

The Court understands full well that its rulings affect the nature of the claims and the possible defendants, discovery, and overall schedule in this case. Furthermore, to its dismay, the Court notes that the record in this case is chaotic, in no small part due to Mr. Lopez's counsel's repeated filing of successive supplemental "mini-briefs" – a practice that this Court will not tolerate in the future. In order to try to bring this unruly case under some semblance of control, the Court hereby schedules an in-court status conference for **July 19, 2005, at 3:00 P.M.** At this conference, the parties should be prepared to discuss the filing of a new amended complaint that

reflects the Court's ruling, and the adoption of a new schedule to complete discovery (if necessary) and to expeditiously move this case towards its ultimate resolution. Mr. Lopez's counsel should be prepared to discuss whether Mr. Lopez's state tort claims would be better brought in state court alongside his state constitutional claims, in light of this Court's decision to decline to exercise supplemental jurisdiction over his state constitutional claims. Furthermore, both parties should be prepared to discuss the still-pending Defendants' Motion for Protective Order and to Quash Subpoenas [doc. #130] and Mr. Lopez's Sealed Motion [doc. #138]. In preparation for this in-court status conference, the parties are hereby ordered to file with the Court a joint written status report **by no later than July 14, 2005,** in which they shall: (1) report on the state of discovery in this case, including whether additional discovery may be needed in light of the Court's ruling, and on which specific, narrowly-drawn issues; and (2) propose a new schedule for the timely resolution of this case.

IT IS SO ORDERED.

/s/ Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: June 24, 2005.**