UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(New Haven)

*******************************************
| RAMON A. LOPEZ | * | 3:02 CV 1020 (MRK) |
| | * | |
| VS. | * | |
| | * | |
| JAMES SMILEY, ET AL | * | JULY 22, 2005 |
*******************************************

## CONFORMING COMPLAINT

**PRELIMINARY STATEMENT**

This is an action for money damages against the Correctional Officer James Smiley, Warden Myers formerly of Northern C.I., several other Correctional Officers of various ranks of Northern and employees of the infirmary unit of Northern C.I. All defendants are sued, individually, for committing acts under color of law, and depriving the plaintiff, Ramon A. Lopez, of his rights secured by the Constitution and laws of the United States as well as the laws of the State of Connecticut.

Correctional Officer (C.O.) James Smiley, while acting in his capacity as a State of Connecticut Correctional Officer on both August 31, 2001 and September 1, 2001 under color of law, with neither good reason nor justification terrorized, threatened, battered, slapped, spat upon, strangled, punched and/or kneed Mr. Ramon A. Lopez, in the following manner:

On **August 31, 2001** while the plaintiff and his cellmate were in their cell C.O. Smiley, threated them both at their cell door and left. Later, C.O. Smiley returned, alone, and without alerting any of his fellow C.O.'s or any superior officer ordered Mr. Lopez and his cell mate to submit to being handcuffed behind their backs, through an opening in the cell door and both

1

men complied. Thereafter C.O. Smiley ordered another C.O. who was in a remote location to open the plaintiff's cell door. The defendant then entered the cell and proceeded to club, batter and slug the plaintiff with his flashlight and fist about the plaintiff's head and face. C.O. Smiley simultaneously taunted and threatened both the plaintiff and his cellmate during this punching and striking of the plaintiff and the cellmate by the C.O. Smiley. Thereafter, Smiley and a Lt. Oglesby turned off the water supply to the plaintiff's cell depriving the plaintiff of toilet and sink facilities. The plaintiff and his cellmate told Lt. Oglesby about the beating and that defendant took no action against C.O. Smiley. In fact, C.O. Smiley thereafter, threatened the plaintiff with more physical violence when he gets the plaintiff in the jail's "A/P room". Thereafter, C.O. Smiley falsified a disciplinary/investigation report regarding the incident. The plaintiff gave written grievances to both Capt. Faneuff and Lt. Manley about this incident but these defendants took no action with respect to them and upon information and belief, suppressed the grievances in an effort to deny the plaintiff the opportunity to bring a 42 U.S.C. §1983 lawsuit against the offending parties.

On **September 5, 2001**, while the plaintiff was still at Northern C.I., C.O. Smiley, through the use of the jail's intercom system, called the plaintiff down to the "A/P room" in order to be transported to Court on a matter unrelated to this litigation. Co-defendant C.O. Farley escorted the plaintiff to the "A/P room" while the plaintiff was fully restrained by being handcuffed behind his back and wearing leg irons which were connected by a tether chain to the handcuffs. C.O. Farley put plaintiff in the only cell in the A/P room, which did not have a television camera in it unlike the three other cells in that area, even though upon information and belief those other cells were available.

C.O. Farley told the plaintiff to enter the cell, to turn his back to the cell door and kneel upon a bench so his restraints could be removed. The plaintiff complied whereupon C.O. Smiley entered the cell and in C.O. Farley's presence gave the restrained plaintiff an agonizing and debilitating slap to the plaintiff's right ear and face. The defendant Smiley then proceeded to violently strangle the plaintiff while repeatedly spitting in the plaintiff's face all the while calling the plaintiff a "punk mother fucker". C.O. Smiley then threatened the plaintiff with additional violence should his cellmate or he tell anyone about either of his August 31, 2001 or the present unprovoked assaults and aggression. C.O. Smiley during this incident savagely punched the plaintiff on the left and right side of his head repeatedly.

There were several C.O.'s in the immediate area that did nothing to restrain Smiley or help Mr. Lopez. Smiley then left the cell and thereafter the plaintiff told a Lieutenant of the incident who did nothing. While the plaintiff was still restrained in the locked cell, he saw C.O. Smiley walk towards the cell. As C.O. Smiley approached the front of the cell, the plaintiff spat on him. C.O. Smiley managed to reenter the locked cell whereupon he forcefully, repeatedly and violently banged the plaintiff's head against a masonry wall and repeatedly punched the plaintiff in his head and body. The plaintiff thereupon yelled for help when C.O. Smiley or one of the other co-defendants kneed the plaintiff in his back and jammed their fingers into the plaintiff's throat. All of the co-defendants present covered the incident up and those defendants who were not present falsified incident reports concerning the incident in an effort to keep the plaintiff from seeking judicial redress for the injuries suffered by him.

The aforesaid violent beatings, clubbing, strangling and other assaults caused the

plaintiff physical injuries for which he still needs treatment but such treatment was denied him. The plaintiff believes that the defendants subjected him to the above excessive force of August 31, 2001 and September 5, 2001 to intentionally inflict emotional distress upon him and to assault and batter him thereby depriving the plaintiff of liberty, due process, and his rights, privileges, immunities and equal protection as guaranteed by Article 4, Section 2 and the First and Fourteenth Amendments to the Constitution of the United States and his right to adequate medical care, to be free from physical abuse. The defendants are liable to the plaintiff for intentional infliction of emotional distress and battery under the State of Connecticut's common law.

## COUNT ONE
## FEDERAL LAW CLAIMS

### JURISDICTION

1.	This action is brought pursuant to sections 1983, 1986 and 1988 of Title 42 of the United States Code and the First, Fourth, and Fourteenth Amendments to the U.S. Constitution. Jurisdiction is founded on 28 U.S.C. §1331 and §1343 (1)(2)(3)(4) and the aforementioned statutory and Constitutional provisions. Plaintiff further invokes the pendent jurisdiction of this Court to prosecute causes of action arising under State law sounding in common law tort pursuant to 28 U.S.C. §1367(a).

2.	This action is further brought by the Plaintiff as authorized by 28 U.S. §§2283 and 2284 and FRCP Rule 65b seeking injunctive relief.

## THE PARTIES

3.   During all times mentioned in this Complaint, the plaintiff, a Hispanic man, was, and he still is, an adult citizen of the United States. He was a pre-trial detainee and detained at Northern Correctional Institution (NCI), Somers, Connecticut at the time of the events described herein, and now resides at that same location.

4.   During all times mentioned in this Complaint, the defendants, C.O. James Smiley (Smiley), C.O. Winston Farley (Farley), Dennis Oglesby (Oglesby), Captain William Faneuff (Faneuff), grievance coordinator John Oulette (Oulette), C.O. John Galinsky (Galinsky), C.O. Dan Stewart (Stewart), Nurse Lynn Nordell (Nordell), C.O. Ron Young (Young), Warden Larry Myers (Myers), Major Thomas Coates (Coates), Lt. Scott Salius (Salius), Major Michael Lajoie (Lajoie), Deputy Commissioner Peter Matos (Matos), Nurse Practioner Saundra Katz-Feinberg (Katz), Medical Supervisor Patricia Wollenhaupt (Wollenhaupt), and Captain Michael Zacharewicz (Zacharewicz), were duly appointed employees of the Department of Corrections for the State of Connecticut action in their official capacities. Each Defendant is sued only in his or her individual capacity.

5.   During all times mentioned in this Complaint, the defendants, C.O. Smiley, C.O. Farley, C.O. Oglesby, Captain William Faneuff, Oulette, C.O. Galinsky, C.O. Stewart, Nurse Nordell, C.O. Young, Warden Myers, Major Coates, Lt. Salius, Major Lajoie, Deputy Commissioner Matos, Nurse Practioner Katz, and Medical Supervisor Wollenhaupt acted under color of law, that is under color of the Constitution, statutes, laws rules, regulations, customs and usages of the State of Connecticut and the United States.

5

6. At all times mentioned in this Complaint, the defendants acted willfully, jointly, in conspiracy and in concert with each other. Each defendant had the duty and the opportunity to protect the plaintiff from the unlawful actions of the other defendant but each defendant failed and refused to perform such duty, thereby proximately causing the plaintiff's injuries.

7. During all times mentioned in this Complaint, the defendants and each of them separately and in concert acted jointly, willfully and in conspiracy with each other and each defendant aided and abetted the others in carrying out the acts and omissions described herein, and thereby deprived the plaintiff of his rights, secured to him by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States and the laws of the United States and the State of Connecticut.

8. During all times mentioned in this Complaint, and upon information and belief, all defendants were on duty.

## FACTS

9. On August 31, 2001, at I east unit, third Shift, Cell 216 Defendant C.O. Smiley stopped at the cell door to cell 216, looked at the air vent area above the sink with his flash light, looked at the plaintiff and his cell mate Mr. Michael Nedweden (Nedweden) #251292, and stated to the plaintiff and Nedweden "Cut it out." When the plaintiff and Nedweden asked defendant Smiley what he meant by "Cut it out", defendant Smiley stated "If I have to come in there you'll know what I'm talking about" and left the area.

10. A short while later defendant C.O. Smiley returned and ordered the plaintiff and Nedweden to submit to handcuffing and they complied.

6

11. Defendant C.O. Smiley told another C.O. to open the plaintiff's cell and after the cell door was opened, C.O. Smiley entered the plaintiff's cell alone, i.e., without another C.O. being present, without notifying the shift supervisor and without notifying the acting lieutenant in complete violation of D. O. C. policy and protocol for Northern C. I.

12. Once defendant C.O. Smiley was inside cell 216 he immediately struck Nedweden with the flashlight on the left side of his face while taunting him and threatening him, while Mr. Nedweden was handcuffed.

13. Then defendant C.O. Smiley hit the plaintiff on the right side of his face with his hand and flashlight while the plaintiff was handcuffed.

14. After assaulting the plaintiff and his cellmate, defendant C.O. Smiley threatened both gentlemen by stating, "IF you two aren't sleeping when I come around again, it's not going to be pleasant."

15. After the assault on the plaintiff and his cellmate, defendant C.O. Smiley then notified his superior, co-defendant Lt. Oglesby, wherein, the two defendants turned off the water to cell 216 depriving the plaintiff and his cellmate of the use of a fully functional toilet.

16. Subsequent to the assault of the plaintiff by C.O. Smiley, as he made his tours during the third shift, C.O. Smiley would stop by the plaintiff's cell and just stare at the plaintiff and Nedweden, upon information and belief because he knew the plaintiff and Nedweden had told Lt Oglesby about our beating by Smiley and/or because Nedweden would make racially derogatory comments towards C.O. Smiley, a black man.

17. Thereafter, defendant C.O. Smiley stated in a menacing tone to both the plaintiff and his cellmate the following: **"I'll be seeing one of you in the A/P room."**

7

18. Defendant C.O. Smiley exhibited consciousness of guilt by falsifying a disciplinary report and incident report by intentionally omitting the fact that, in violation of DOC and NCI policy, he entered the plaintiff's cell alone or without having notified his superior officer before entering the cell.

19. Co-defendant C.O. Smiley further claimed to have gone to the plaintiff's cell to mop up the water that was poured into the vent in cell 216, however, a videotape showed that defendant C.O. Smiley had no mop but only a flashlight in his hand and there was in fact, no water in cell 216, the plaintiff's cell.

20. The plaintiff being fully aware of defendants C.O. Smiley and Oglesby efforts to cover up the assault waited until first shift to bring the matter to co-defendant Captain Faneuff's attention.

21. On August 31, 2001, the plaintiff and his cellmate repeatedly requested medical attention from staff to evaluate and document injuries inflicted by defendant C.O. Smiley. Staff ignored and deliberately denied the plaintiff medical attention. As a result of said denial, the plaintiff covered the window to his cell door in order to draw attention to their plight.

22. Co-Defendant Capt. Faneuff came to the cell and ordered the plaintiff and Nedweden to uncover the window or he would mace the cell. The plaintiff complied and explained the events that occurred with defendant C.O. Smiley and Oglesby. We told defendant Faneuff to review the surveillance camera videotape to substantiate our claims.

23. Defendant Capt. Faneuff said he reviewed the videotape after coming back to cell 216 after getting co-defendant Nurse Nordell to give the plaintiff and Nedweden a medical evaluation.

8

24. At that time the plaintiff handed his grievance to co-defendant Capt. Faneuff. This co-defendant then stated that he was going to document the incident and state that the plaintiff's injuries were a result of "Horse playing" in the cell.

25. Co-defendant Capt. Faneuff stated in his report that no injuries were observed on the plaintiff's face then contradicted himself by stating later, that minor injuries were observed on the plaintiff.

26. The plaintiff was told that the grievance he personally gave to Capt. Faneuff did not exist and consequently did not make it to the appropriate authorities; all of which designed to harm the plaintiff's reputation for truthfully reporting DOC employee physical abuse.

27. Co-defendant Nordell substantiated the injuries inflicted on the plaintiff by defendant C.O. Smiley, however, in conspiracy with one or more co-defendants, Nordell falsified the medical incident report by stating, "altercation between cellmates R/U malingered/Feigned assault."

28. Upon information and belief, Co-defendant Major Lajoie a superior officer and supervisor of co-defendants Faneuff and C.O. Smiley illegally allowed them to attempt to cover up the August 31, 2001 incident by permitting Faneuff and C.O. Smiley to file reports that were inconsistent with the facts, even though he knew it and did not punish or discipline them for so doing.

29. On September 5, 2001, the plaintiff received a call via the cell intercom by defendant C.O. Smiley who ordered him to get ready to go to Court on the case for which he was being held in lieu of the payment of a bond.

30. The Plaintiff was then escorted shortly after said call from 1 East unit cell 216 by co-defendant C.O. Farley.

31. The plaintiff was escorted to the A/P room fully restrained, i.e., leg irons and handcuffs connected with a tethered chain.

32. Upon arriving in the A/P room, the plaintiff was placed in the cell number four which is famous for being the place were confined people like the plaintiff were subjected to assaults by guards because this cell was and is without a surveillance camera trained on it like cells one (1) through three (3). Upon information and belief, the cells with the video cameras trained upon them could have accommodated the plaintiff.

33. Co-defendant C.O. Farley told the plaintiff to kneel on the bench facing the wall, with the plaintiff's back to the cell door, which is proper procedure, so that he could remove the leg irons and tethered chain.

34. As the plaintiff was kneeling facing the wall, he heard another person enter the cell and immediately felt a huge debilitating slap to his right ear and facial area, causing extreme pain.

35. The plaintiff was then choked by defendant C.O. Smiley who stated to the plaintiff, "Who's the nigger now; huh?" "Who's the nigger now—you punk motherfucker. You do or say anything about what I did to you and your punk-ass celly, (referring to the August 31st, 2001 incident) I'm going to make your life miserable. Don't you know I can get away with murder if I wanted to." Thereafter, defendant Smiley spat in the face of the plaintiff while still choking the plaintiff and slapped the back of the plaintiff's head extremely forcefully.

36. Co-defendant C.O. Farley just watched and did nothing to intervene to assist the plaintiff, but instead operated as a look out for co-defendant C.O. Smiley in an effort to assist C.O. Smiley.

37. At this time, the plaintiff is still handcuffed in the back and thus defenseless.

38. As plaintiff remained in the kneeling position on the bench as co-defendant C.O. Smiley repeatedly spat in the plaintiff's face while choking him.

39. Co-defendant C.O. Farley was present not more than 10 feet away from this assault and he simply watched and did nothing to intervene to protect me.

40. Thereafter, the co-defendant C.O. Smiley, after forcefully slapping the plaintiff in the back of the head, choking him, spitting on the plaintiff and threatening him, C.O. Farley exited the cell at or around 08:24:42 hours and at or around 08:25:56 hours leaving the plaintiff in the kneeling position with spittle on his face and in pain from his ear, facial area and throat. Once the cell door closed and the plaintiff was alone in the cell, he got up.

41. The plaintiff then went to the cell door to have the handcuffs removed were co-defendant C.O. Smiley was located awaiting the plaintiff to remove the handcuffs. The handcuffs were never removed.

42. The plaintiff approached the cell door and noticed defendant Lt. Salius standing behind defendant C.O. Smiley.

43. Upon information and belief, co-defendant Lt. Salius watched the entire incident and did nothing to intervene and protect the plaintiff and/or discipline co-defendants Smiley and Farley, his subordinates.

44. The plaintiff, thereupon informed defendant Lt. Salius of C.O. Smiley's attack

11

upon him and Lt. Salius ignored the plaintiff's complaint and his demand for medical attention.

45. From the locked cell door, the plaintiff, still handcuffed behind his back, spat in defendant C.O. Smiley's face.

46. Thereafter, co-defendant Lt. Salius in complete dereliction of his duty, allowed defendant C.O. Smiley to reenter the cell and violently lunge at the plaintiff, then bang the handcuffed plaintiff's head into the wall while repeatedly punching his body and head as the plaintiff was taken to the floor, picked up off of the floor and while being placed on a cell bench.

47. All the while, the plaintiff yelled for Lt. Salius to help him as defendant C.O. Smiley jammed his knee into the handcuffed plaintiff's back, while ramming his fingers into the plaintiff's neck and throat not in a manner, which was not consistent with a good faith attempt to maintain or restore discipline.

48. Defendant Lt. Salius covered up the incident as if the plaintiff's life meant nothing by falsely reporting the incident.

49. Lt. Salius falsely stated in his report that he never saw defendant C.O. Smiley assault the plaintiff.

50. Defendant C.O.'s Smiley, Farley, Galinsky and/or Stewart who allegedly witnessed the plaintiff spit on defendant C.O. Smiley, failed to notify defendant Lt. Salius, nor did C.O. Smiley seek immediate medical treatment.

12

51. Defendant Salius did not relieve C.O. Smiley immediately to obtain medical treatment nor did he stop C.O. Smiley from reentering the cell to further assault the plaintiff, who suffered injuries.

52. Co-defendant Lt. Salius falsely reports that the plaintiff spat in defendant C.O. Smiley's face in retribution for the August 31, in his attempt to cover up the assault which C.O. Smiley perpetrated upon the plaintiff that occurred in cell four.

53. Upon information and belief, co-defendant Major Coates prior to and/or on August 1, 2002, conspired and combined with other defendants in an attempt to minimize C.O. Smiley's exposure to liability for this incident.

54. On September 5, 2001 Lt. Salius authored a report which concluded with the following paragraph: "Officer C.O. Smiley did unsecure, and acting on his own accord without direction entered the cell without first notifying this supervisor. Had he notified this supervisor a planned use of force reaction to incident could have been implemented. This supervisor recommends further review of this incident." When the plaintiff first got this report the aforementioned paragraph was deliberately covered to hide the incriminating evidence. On July 29, 2002, the plaintiff wrote Major Coates about the fact that the report he had had been redacted. On August 1, 2002, Maj. Coates falsely replied in writing that, "Items may be redacted for safety and security reasons." This false answer was simply an attempt to thwart the plaintiff's constitutional rights to fully publish and protest his grievances consistent with his free speech rights and harm his reputation for reporting DOC employee abuse of prisoners.

55. Defendants Galinsky and Stewart both provided falsified statements that they watched the plaintiff spit in defendant C.O. Smiley's face.

13

56. Further, both co-defendants C.O. Galinsky and Stewart failed to stop defendant C.O. Smiley from reentering the cell to assault the plaintiff and failed to notify their superior, co-defendant Lt. Salius, who was in the A/P room that he should intervene.

57. Defendant Young also submitted a false statement to cover up the incident in violation of the above.

58. Defendant Capt. Zacharewicz who was not in the A/P room at the time of the assaults upon the plaintiff, submitted a false report of the incident in an effort to illegally assist the co-defendants with whom he was in conspiracy.

59. Capt. Zacharewicz's report stated among other things; that a spit mask was used and justified the assault upon the plaintiff, however his report contradicted that of co-defendant Lt. Salius, who reported that no spit net/mask was available. This, upon information and belief, illustrates co-defendant Capt. Zacharewicz's effort to combine with the other co-defendants to cover up the misconduct of the of the other correction officers and co-defendants.

60. The plaintiff, for no justifiable reason, was beaten so severely and with such force and impact that he was left with no strength and was reduced to a state of semi-consciousness.

61. Co-defendants Nurse Practioner Feinberg and Medical Supervisor Wollenhaupt failed to provide the plaintiff with adequate medical care as to both the August 31, 2001 and the September 5, 2001 incidents.

62. Co-defendants Nurse Practioner Feinberg and Medical Supervisor Wollenhaupt

falsified medical incident reports and medical charts to down play and minimize the injuries inflicted on the restrained plaintiff by defendant C.O. Smiley and staff.

63. Pictures of the plaintiff's injuries clearly show contusions and abrasions to parts of the plaintiff's body while defendant Wollenhaupt and Feinberg fabricated their reports in conspiracy with the other co-defendants.

64. On September 5, 2001, one or more of the co-defendant correction officers, spat and rammed their fingers into the neck and throat of the handcuffed plaintiff; while they delivered body blows upon the restrained plaintiff.

65. The plaintiff informed co-defendant Majors Lajoie, Whidden, and Coates of C.O. Smiley's and the other co-defendant C.O.'s misconduct, however, in complete dereliction of their supervisory duties, failed to rectify the incident by ignoring the matter despite the fact that, upon information and belief, they were aware of C.O. Smiley's history of abusive misconduct toward other individuals in the custody of the Department of Corrections, such as inmate Kenneth Pladsen.

66. Co-defendant Majors Coates, Whidden, Lajoie and Myers conspired to deny free speech rights and due process to the plaintiff and participated in an ongoing attempt to conspire to cover-up the defendants' physical abuse of the plaintiff, by not allowing the plaintiff to defend himself in the disciplinary court; that is the denial of the opportunity to fight the conspiratorially planned disciplinary action that also resulted in severe administrative sanctions.

67. The plaintiff filed a grievance on the September 5, 2001 beating which was denied by co-defendant Myers in a flagrant attempt to cover up the beating.

68. Defendant Oulette since taking over as grievance coordinator has deliberately "lost" or denied receiving the plaintiff's level I or level II grievances submitted after being denied by co-defendant Myers, hence, upon information and belief, Oulette conspired with the defendants to hamper the plaintiff's efforts to exhaust his administrative remedies and illegally suppress his rights to free speech.

69. The plaintiff repeatedly wrote co-defendant Deputy Commissioner Matos concerning grievance "141-01-531" that went unanswered, hence manifested an attempt minimize and cover-up the assaults upon the plaintiff and represented an infringement of the plaintiff's free speech rights.

70. As a consequence of the actions of the defendants herein described, and the omissions of the defendants, the plaintiff suffered humiliation, degradation, injury to his head, noise, sinuses, impairment of vision, right knee, back, neck, chest, ribs, shoulders, wrists, ankles, Achilles tendon, memory lapses, abrasions, a black eye, lacerations, bruises, swelling to his head and to the side of his face and back, and contusions about his body, physical pain and disability and fear for his life, creating mental and emotional anguish.

71. In the manner described above, the defendants, by uniting in an act which constituted a wrong to the plaintiff, and by performing it under the aforementioned circumstances which fairly charge them with the consequences which follow, incurred a joint and several liability for the acts of each and all of the joint participants as they were acting in furtherance of a conspiracy to deprive the plaintiff of his civil rights. All of the defendants actively participated in the above-described wrongful acts and misconduct by cooperation,

conspiracy and/or request, and as to each act complained of, lent aid or encouragement to the wrongdoer, thus ratifying and adopting each wrongful act for their own.

72. In the manner described in this Complaint, the defendants and each of them, separately, in concert and/or in conspiracy, deprived the plaintiff of his rights to be free from illegally inflicted physical injury, to freedom of speech, freedom to petition for redress of grievances, right to privacy, right to bodily integrity, the right to be free from the conspiracy to conceal the abuse to which the plaintiff was subjected and otherwise deprive him of his civil rights and due process of law. All of these rights are secured to the plaintiff by the provisions of the First, Fourth, and Fourteenth Amendments to the United States Constitution and by Title 42 U. S. C. §1983.

73. The misconduct attributed to each of the defendants was a misuse of his authority that was personal to him and was not primarily employer rooted or reasonably incidental to the performance of employment duties, further, said misconduct was not designed to advance any interest of his employer, the State, and did not serve any legitimate State interest, rather the defendants' misconduct was motivated by purely personal considerations entirely extraneous to the employer's interest.

## COUNT TWO
## STATE LAW CLAIMS

1. Pursuant to the provisions of 28 U. S. C. §1367, the supplemental jurisdiction of this Court is invoked as to the claims of this count, which arise under the common law of the State of Connecticut.

2. This is an action for money damages to redress the deprivation by the

17

defendants of rights secured to the plaintiff by the State of Connecticut. Moreover, the co-defendants with the assistance, complicity and in conspiracy with each other subjected the plaintiff to battery, the intentional infliction of emotional distress, and/or negligent infliction of emotional distress.

3-73. Paragraphs 3 through 73 of Count One are hereby incorporated as paragraphs 3-73 of Count Two.

74. In the manner described above, the defendants and each of them committed battery, in that they attempted with force and violence to do corporeal offense to the plaintiff, and were successful in that attempt, by inflicting upon the plaintiff's person severe physical injury without justification or excuse with respect to both the August 31, 2001 and September 5, 2001 incidents. The acts and omissions of the defendants, as outlined above, were the proximate cause of damages to the plaintiff as set out in paragraphs 66 through 73 in Count One, above. The plaintiff is protected against such conduct by the defendants under Connecticut law, the provisions of which are invoked under this Court's supplemental jurisdiction.

75. In the manner described above, the defendants further committed the tort of intentional and/or negligent infliction of emotional distress, in that they intentionally and/or recklessly caused the plaintiff severe emotional distress by their intentional, extreme and outrageous conduct, as described above. The acts and omissions of the defendants, as outlined above, were the proximate cause of damages to the plaintiff as set out in paragraphs 66 through 73 in Count One, above. Therefore, the plaintiff is entitled to relief under the laws of Connecticut, and provision of which are invoked under this Court's supplemental jurisdiction.

**WHEREFORE**, the plaintiff, claims judgment against the defendants and each of them jointly and severally, as follows:

    A.    Compensatory damages;

    B.    Punitive damages;

    C.    Attorney fees and costs of this action;

    D.    Issue the following prospective injunctive relief, as follows:

        1.    Remove the plaintiff from MacDougall CI immediately, place him in Webster C.I. in general population with all restored privileges.

        2.    Remove all disciplinary action taken against the plaintiff for his alleged conduct stemming from the August 31st and the September 5th, 2001 incidents from his institutional record and reinstate any and all credit, privileges and/or other rights he might have lost as a result of said discipline.

        3.    Immediately install a functioning video camera in cell number 4 of the AP room of NCI no later than 4 business days from the issuance of this order.

        4.    The Department of Corrections is ordered to institute a system of recorded receipts for all grievance stages, and,

    E.    Issue Declaratory relief pursuant to 28 U.S.C §§2201 and 2202, as follows:

        1.    The August 31st and the September 5th, 2001 physical assaults upon the plaintiff by C.O. Smiley constituted a violation of the plaintiff's rights under the 1st, 4th, 5th and 14th Amendments to the U.S. Constitution and constituted a battery, the intentional infliction of emotional distress and/or negligent infliction of emotional distress, and

        2.    That the co-defendants' misconduct pleaded herein violated plaintiff's rights under the 1st, 4th, and 14th Amendments to the U.S. Constitution and constituted a battery, the intentional infliction of emotional distress through their physical assault upon

19

the plaintiff, their failure to protect the plaintiff, their failure to provide medical care to the plaintiff, their concerted efforts to cover up the violations of the plaintiff's rights by suppressing his grievance rights and by other means previously pled herein; and

F.   Such further relief as this Court deems appropriate to award.

```
                    RAMON A. LOPEZ
                    THE PLAINTIFF

            BY:     _____
                    ATTY. ERSKINE D. McINTOSH
                    FEDERAL BAR NO. CT/09743
                    THE LAW OFFICES OF ERSKINE D. McINTOSH, P.C.
                    3129 WHITNEY AVENUE, SECOND FLOOR
                    HAMDEN, CT 06518-2364
                    (203) 787-9994
                    FAX (203) 848-1213

                    COUNSEL FOR THE PLAINTIFF
```

## CERTIFICATION

This is to certify that a copy of the foregoing was sent by first-class mail, postage prepaid on this the ___ day of July, 2005 to:

Atty. Robert F. Vacchelli
Assistant Attorney General
110 Sherman Street
Hartford, Conn. 06105

_____
ATTY. ERSKINE D. McINTOSH

19 Complaint-(Conforming)-Lopez